ACCEPTED
12-14-00344-CV
TWELFTH COURT OF APPEALS
TYLER, TEXAS
4/27/2015 1:58:05 PM
CATHY LUSK
CLERK

NO. 12-14-00344-CV

IN THE TWELFTH COURT OF APPEALS

FILED IN
12th COURT OF APPEALS
TYLER, TEXAS
4/27/2015 1:58:05 PM
CATHY S. LUSK
Clerk

AT TYLER, TEXAS

**VICTOR LISSIAK, JR.,**

*Appellant*

V.

**SW LOAN OO, L.P.,**

*Appellee*

*On Appeal from the 7th Judicial District Court, Smith County, Texas*
*The Honorable Kyle Russell Presiding in Trial Court Case Number* 12-0384-A

**APPELLANT'S BRIEF**

THE HOLMES LAW FIRM, INC.
Robert H. Holmes
SBN 09908400
3401 Beverly Drive
Dallas, Texas 75205
Telephone: 214-384-3182
Facsimile: 214-522-3526
Email: rhholmes@swbell.net

ATTORNEYS FOR APPELLANT

## IDENTITY OF PARTIES AND COUNSEL

Appellant submits the following list of all parties to the trial court's judgment, and the names and addresses of all trial and appellate counsel pursuant to Tex, R. App. P. 38.1(a)

Appellant (defendant in the trial court):   Victor Lissiak, Jr.

Represented by (In Trial and On Appeal):   The Holmes Law Firm, Inc.
Robert H. Holmes
SBN 09908400
3401 Beverly Drive
Dallas, Texas 75205
Telephone: 214-384-3182
Email: rhholmes@swbell.net

Appellee (Plaintiff in Trial Court):   S.W. LOAN OO, L.P.

Represented by (In Trial and On Appeal):   Stephen Sakonchick II
Stephen Sakonchick II, P.C.
6501 Canon Wren Drive
Austin, Texas 78746
Telephone: 512-329-0375
Facsimile: 512-697-2859
Email: sakon@flash.net

## APPELLANT'S REQUEST FOR ORAL ARGUMENT

Appellant, Victor Lissiak, Jr., respectfully request the opportunity to present oral argument in connection with this appeal.

TABLE OF CONTENTS

IDENTITY OF PARTIES AND COUNSEL . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  ii

APPELLANT'S REQUEST FOR ORAL ARGUMENT. . . . . . . . . . . . . . . . . . . .  ii

TABLE OF CONTENTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  iii

TABLE OF AUTHORITIES.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  vi

ISSUES PRESENTED FOR REVIEW.. . . . . . . . . . . . . . . . . . . . . . . . . . . . .  xi

STATEMENT OF THE NATURE OF THE CASE.. . . . . . . . . . . . . . . . . . . . . .  xii

INDEX OF ABBREVIATIONS.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  xiii

STATEMENT OF FACTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1
    A. Underlying Transaction. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1
    B. Underlying Litigation.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  5

SUMMARY OF ARGUMENT.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  7
    A. Appellee did not meet its Burden of Proof on the Elements
of its Claim; Therefore, the Burden Never Shifted to Appellant .. . . . . . . . . . . . .  7
    B. Alternatively, Appellant Raised Disputed Issues of Material Fact on
Elements of Appellee's Claim. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  8
    C. Appellant Pled Affirmative Defenses, Supported by Competent Summary
Judgment Proof, to Which Appellee did not Submit Competent Summary
Judgment Proof to Disprove at Least One Element of All Affirmative Defenses
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  8
    D. Appellee's Summary Judgment Proof was not Competent Summary
Judgment Evidence. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  8
    E. The Trial Court Abused its Discretion. . . . . . . . . . . . . . . . . . . . . . . . . . . .  9

ARGUMENT AND AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  9
    A. STANDARD OF REVIEW. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  9
    B. ISSUES PRESENTED FOR REVIEW. . . . . . . . . . . . . . . . . . . . . . . . . .  12

ISSUE NO. 1. The trial court erred in granting a summary judgment
because the were disputed fact issues on elements of Appellee's
claim; therefore, the burden never shifted to Appellant. . . . . . . . . . . . . . . . . . . . . 14

    ISSUE NO. 1A. Holder in Due Course. . . . . . . . . . . . . . . . . . . . . . . . 15

    ISSUE NO. 1B. Validity/Authenticity of Signature. . . . . . . . . . . . . . . . . 16

    ISSUE NO. 1C. Failure of Consideration.. . . . . . . . . . . . . . . . . . . . . . 20

    ISSUE NO. 1D. Cancellation of Note. . . . . . . . . . . . . . . . . . . . . . . . . 22

    ISSUE NO. 1E. Doctrine of Estoppel.. . . . . . . . . . . . . . . . . . . . . . . . . 23

ISSUE NO. 2. Alternatively, The trial court erred in granting a
summary judgment because Appellant raised disputed issues
of material fact on elements of Appellee's claim. . . . . . . . . . . . . . . . . . . . . . . . 24

    ISSUE NO. 2A Holder in Due Course Status. . . . . . . . . . . . . . . . . . . . . 24

    ISSUE NO. 2B. Authenticity/Genuineness of Appellant's Signature. . . . . . . 24

    ISSUE NO. 2C. Failure of Consideration.. . . . . . . . . . . . . . . . . . . . . . 25

ISSUE NO. 3. The trial court erred in granting a summary judgment
because Appellant submitted competent summary judgment proof
to create issue of the affirmative defenses pled by Appellant. . . . . . . . . . . . . . . 25

    ISSUE NO. 3A. Appellee Was Not a Holder in Due Course.. . . . . . . . . . . . 26

    ISSUE NO. 3B. Authenticity/Genuineness of Appellant's Signature. . . . . . . 26

    ISSUE NO. 3C. Failure of Consideration.. . . . . . . . . . . . . . . . . . . . . . 26

    ISSUE NO. 3D. §3.401, Texas Business & Commerce Code,
    Cancellation of Debt. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

iv

ISSUE NO. 3E. <u>Promissory Estoppel</u>. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

ISSUE NO. 3F. <u>Material Alteration/Cancellation by Payment Extension</u>. . . 28

ISSUE NO. 3G. <u>§3.401, Texas Business & Commerce Code,
Discharge of Liability</u>. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

ISSUE NO. 4. <u>The trial court erred in granting a summary judgment
because Appellee's summary judgment proof was not competent
summary judgment evidence</u>. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

ISSUE NO. 5. <u>The trial court erred in granting a summary judgment
because the trial court abused its discretion</u>. . . . . . . . . . . . . . . . . . . . . . . . 33

ISSUE NO. 5A. <u>By Failing to Rule on Appellant's Objections to
the Summary Judgment Proof Offered by Appellee</u>. . . . . . . . . . . . . . . . . . 34

ISSUE NO. 5B. <u>By Failing to Require Appellee to meet Its Burden of Proof</u>.34

ISSUE NO. 5C. <u>By Granting a Summary Judgment in the Face of
Fact Issues Supporting the Elements of Appellant's Affirmative defenses</u>. 35

CONCLUSION AND PRAYER FOR RELIEF. . . . . . . . . . . . . . . . . . . . . . . . . 35

CERTIFICATE OF SERVICE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

CERTIFICATE OF COMPLIANCE.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

APPENDIX - Filed Separately

TABLE OF AUTHORITIES

A. TABLE OF CASES

*1001 McKinney Ltd. v. Credit Suisse First Boston Mortg. Capital,*
192 S.W.3d 20, 27 (Tex.App.–Houston [14th Dist.] 2005, pet. denied). . . . . . . . 32

*Advance Components, Inc. v. Goodstein,* 608 S.W.2d 737, 739
(Tex.App.–Dallas 1980, writ ref'd n.r.e.). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

*Alejandro v. Bell,* 84 S.W.3d 383, 388
(Tex.App.–Corpus Christi 2002, no pet.). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Amedisys, Inc. v. Kingwood Home Health Care, LLC*, 437 S.W.3d 507, 511
(Tex.2014). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13

*Austin Hardwoods Inc. v. Vanden Berqhe,* 917 S.W.2d at 320, 325
(Tex.App.–El Paso 1995, writ denied). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

*Bastida v. Aznaran,* 444 S.W.3d 98, 105 (Tex.App.–Dallas 2014, no pet.). . . . . . 14

*Belew v. Rector,* 202 S.W.3d 849, 854 n. 4 (Tex.App.–Eastland 2006, no pet.). . 20

*Boerschig v. Southwestern Holdings, Inc.,* 322 S.W.3d 752, 762–63
(Tex.App.–El Paso 2010, no pet.). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

*Bowen v. Briscoe,* 453 S.W.2d 287, 289 (Tex.1970). . . . . . . . . . . . . . . . . . . . . . 30

*Braugh v. Corpus Christi Bank & Trust,* 605 S.W.2d 691, 696
(Tex.Civ.App.–Corpus Christi 1980, writ ref'd n.r.e.). . . . . . . . . . . . . . . . . . . . . 22

*Brownlee v. Brownlee,* 665 S.W.2d 111, 112 (Tex.1984). . . . . . . . . . . . . . . . 25, 35

*Bullock v. Kehoe,* 678 S.W.2d 558, 559
(Tex.App.–Houston [14th Dist.] 1984, writ ref'd n.r.e.). . . . . . . . . . . . . . . . . . . 28

*Burges v. Mosley,* 304 S.W.3d 623, 628 (Tex.App.–Tyler 2010, no pet.). . . . . . . 22

*Burns v. Gonzalez,* 439 S.W.2d 128, 133
(Tex.Civ.App.–San Antonio 1969, writ ref'd n.r.e.).. . . . . . . . . . . . . . . . . . . . . . 16

*Canfield v. Bank One, Texas, N.A.* 51 S.W.3d 828
(Tex.App. 6 Dist. 2001pet. denied).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Casso v. Brand*, 776 S.W.2d 551, 556 (Tex.1989).. . . . . . . . . . . . . . . . . . . . . . . 12

*City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 n.5
(Tex.1979). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12

*Cont'l Dredging, Inc. v. De–Kaizered, Inc.,* 120 S .W.3d 380, 394–95
(Tex.App.–Texarkana 2003, pet. denied). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

*Diversicare Gen. Partner, Inc. v. Rubio,* 185 S.W.3d 842, 846 (Tex.2005). . . . . 13

*Dolcefino v. Randolph,* 19 S.W.3d 906, 926-27
(Tex.App.–Houston [14th Dist.] 2000, pet. denied).. . . . . . . . . . . . . . . . . . . . . . 14

*Downer v. Aquamarine Operators, Inc.,* 701 S.W.2d 238, 241–42 (Tex.1985). . 34

*Eli Lilly & Co. v. Marshall*, 829 S.W.2d 157, 158 (Tex.1992). . . . . . . . . . . . . . . 34

*Federal Deposit Insurance Corp. v. Attayi,* 745 S.W.2d 939, 944
(Tex.App.–Houston [1st Dist.] 1988, no writ). . . . . . . . . . . . . . . . . . . . . . . . . . 28

*Food Mach. Corp. v. Moon,* 165 S.W.2d 773, 775
(Tex.Civ.App.–Amarillo 1942, no writ).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Gibbs v. General Motors Corp.*, 450 S.W.2d 827 (Tex.1970). . . . . . . . . . . . . . . 11

*Gooch v. Am. Sling Co.,* 902 S.W.2d 181, 185
(Tex.App.–Fort Worth 1995, no writ).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Goode v. Shoukfeh*, 943 S.W.2d 441, 446 (Tex.1997). . . . . . . . . . . . . . . . . . . . . 34

*Goodyear Tire & Rubber Co. v. Mayes,* 236 S.W.3d 754, 755 (Tex.2007). . . . . . 13

*Hanks v. GAB Bus. Servs., Inc.,* 644 S.W.2d 707, 708 (Tex.1982). . . . . . . . . . . . 29

*Harvey v. Harvey* 40 S. W. 185  (Tex.Civ.App.1897). . . . . . . . . . . . . . . . . . . . . . 16

*Haynes v. City of Beaumont,* 35 S.W.3d 166, 178
(Tex.App.–Texarkana 2000, no pet.). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

*Hays v. First State Bank of Dell City*, Tex.Civ.App., 377 S.W.2d 210, 212
(Tex.App.–Amarillo, 1964 writ ref., n.r.e.). . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Hiles v. Arnie & Co., P.C.,* 402 S.W.3d, 820, 832
(Tex.App.–Houston [14th Dist.], 2013, pet. denied). . . . . . . . . . . . . . . . . . . . . . 30

*Hudspeth v. Investor Collection Serv. Ltd. P'ship,* 985 S.W.2d 477, 479
(Tex.App.–San Antonio 1998, no pet.). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*In re Kleven*, 100 S.W.3d 643, 644
(Tex. App–Texarkana 2003 orig. proceeding). . . . . . . . . . . . . . . . . . . . . . . . . . 34

*In re Shredder Co.*, 225 S.W.3d 676, 679
(Tex. App–El Paso 2006 orig. proceeding). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

*In re Weekley Homes, L.P.,* 180 S.W.3d 127, 133 (Tex.2005). . . . . . . . . . . . . . . . 23

*Lear Siegler, Inc. v. Perez*, 819 S.W.2d 470, 471-72 (Tex.1991). . . . . . . . . . . . 11

*LeBlanc v. Lamar State College,* 232 S.W.3d 294, 301
(Tex.App.–Beaumont 2007, no pet.). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32, 33

*Lee v. McCormick,* 647 S.W.2d 735, 738 (Tex.App.–Beaumont 1983, no writ). . 16

*Limestone Prods. Distrib. v. McNamara*, 71 S.W.3d 308, 311 (Tex.2002). . . . . . 11

*McGraw v. Brown Realty Co.,* 195 S.W.3d 271, 276
(Tex.App.–Dallas 2006, no pet.). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Mack Trucks, Inc. v. Tamez,* 206 S.W.3d 572, 582 (Tex.2006). . . . . . . . . . . . . . . 13

*Maykus v. Tex. Bank & Trust Co. of Dallas*, 550 S.W.2d 396, 398
(Tex.Civ.App.–Dallas 1977, no writ). . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*M.D. Anderson Hosp. & Tumor Inst. v. Willrich*, 28 S.W.3d 22, 23
(Tex.2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 30

*MMP, Ltd. v. Jones*, 710 S.W.2d 59, 60 (Tex.1986).. . . . . . . . . . . . . . . . . . . . 12

*Mustang Pipeline Co. v. Driver Pipeline Co.,* 134 S .W.3d 195, 196 & 199
(Tex.2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28, 30

*Neely v. Wilson*, 418 S.W.3d 52, 59-60 (Tex.2013). . . . . . . . . . . . . . . 11, 12, 13

*MMP, Ltd. v. Jones*, 710 S.W.2d 59, 60 (Tex.1986).. . . . . . . . . . . . . . . . . . . . 12

*Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548-49 (Tex.1985). . . . . . . 12, 15

*Old Colony v. City of Quitman,* 352 S.W.2d 452, 456 (Tex.1962). . . . . . . . . . . . 28

*Park Place Hosp. v. Estate of Milo*, 909 S.W.2d 508, 511 (Tex.1995). . . . . . . . . 11

*Priest v. First Mortgage Company of Texas, Inc.,* 659 S.W.2d 869, 871
(Tex .Civ.App.–San Antonio 1983, writ ref'd n.r.e.). . . . . . . . . . . . . . . . . . . . 22

*Provident Life & Acc. Ins. v. Knott*, 128 S.W.3d 211, 215 (Tex.2003). . . . . 12, 35

*Reliance Ins. Co. v. Dahlstrom Corp.,* 568 S.W.2d 733, 736
(Tex.Civ.App.–Eastland 1978, writ ref'd n.r.e.). . . . . . . . . . . . . . . . . . . . . . . 28

*Roark v. Stallworth Oil & Gas, Inc.,* 813 S.W.2d 492, 496 (Tex.1991).. . . . . . . 20

*Shah v. Moss*, 67 S.W.3d 836, 842 (Tex.2001).. . . . . . . . . . . . . . . . . . . . . . . . 11

*State v. $90,235*, 390 S.W.3d 289, 292 (Tex.2013). . . . . . . . . . . . . . . . . . . . . 13

*Steiner v. Jester*, 25 S. W. 411, (Tex.1894). . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Swilley v. Hughes*, 488 S.W.2d 64 (Tex.1972). . . . . . . . . . . . . . . . . . . . . . . . 11

*Town N. Nat'l Bank v. Broaddus*, 569 S.W.2d 489, 491 (Tex.1978). . . . . 16, 19, 20

*Truestar Petroleum Corp. v. Eagle Oil & Gas Co.,* 323 S.W.3d 316, 319
(Tex.App.–Dallas 2010, no pet.). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*United Concrete Pipe Corp.v. Spin-Line Co.,* 430 S.W.2d 360, 365
(Tex.1968). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

*US Bank, N.A. v. Prestige Ford Garland Ltd. P'ship,* 170 S.W.3d 272, 279
(Tex.App.–Dallas 2005, no pet.). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Wal–Mart Stores, Inc. v. Gonzalez,* 968 S.W.2d 934, 936 (Tex.1998). . . . . . . . . 32

*Wesson v. Jefferson S&L Ass'n*, 641 S.W.2d 903, 906 (Tex.1982). . . . . . . . . . . . 12

*Wheeler v. White*, 398 S.W.2d 93, 96–97 (Tex. 1965). . . . . . . . . . . . . . . . . . . . . 23

*Wilcox v. Hempstead,* 992 S.W.2d 652, 656–57
(Tex.App.–Fort Worth 1999, no pet.). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Willis v. Nucor Corp.,* 282 S.W.3d 536, 547 (Tex.1980). . . . . . . . . . . . . . . . . . . 14

*Wilson v. Skaggs*, 10 Tex. 298, 1853 WL 4340 (Tex.1853). . . . . . . . . . . . . . . . . 16

*Wright v. Robert & St. John Motor Co.,* 58 S.W.2d 67, 69 (Tex.1933). . . . . . . . . 21

B. TABLE OF STATUTES

Tex.Bus. & Com. Code § 1.201(8). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Tex.Bus. & Com. Code § 1.201 (21).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Tex.Bus. & Com. Code § 1.202(a)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Tex.Bus. & Com. Code § 1.206. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Tex.Bus. & Com. Code§ 3.302(a)(2)(iii). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Tex.Bus. & Com. Code § 3.306. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 19

Tex.Bus. & Com. Code § 3.308. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 19

Tex.Bus. & Com. Code § 3.401(a). . . . . . . . . . . . . . . . . . . . . . . 10, 12, 19, 22, 27

Tex.Bus. & Com.C. § 3.605. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 29

Tex.R. Civ. P. 93(7).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Tex.R. Civ. P. 166a(f). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32, 33

## ISSUES PRESENTED FOR REVIEW

Issue No. 1. Whether the trial court erred in granting a summary judgment because the were disputed fact issues on elements of Appellee's claim?

Issue No. 2. Alternatively, whether the trial court erred in granting a summary judgment because Appellant raised disputed issues of material fact on elements of Appellee's claim?

Issue No. 3. Whether the trial court erred in granting a summary judgment because Appellant submitted competent summary judgment proof to create issue of the affirmative defenses pled by Appellant?

Issue No. 4. Whether the trial court erred in granting a summary judgment because Appellee's summary judgment proof was not competent summary judgment evidence?

Issue No. 5. Whether the trial court erred in granting a summary judgment because the trial court abused its discretion?

## STATEMENT OF THE NATURE OF THE CASE

This appeal arising out of a cross-claim (CR238) filed by Appellee against

Appellant, who were both defendants in a suit brought by J. Randolph Light against the predecessor of Appellee, Stillwater National Bank ("SNB") for "lender abuse" and breach of contract. The cross-claim involves the suit for collection under a promissory note, the 2008 Note (CR215-217), allegedly executed by Appellant.

What is ironic and inconsistent about the facts of the case is that Light sought contribution from Appellant (CR1¶31-33) under a note dated the same date as the 2008 Note but not executed by Appellant (CR95), and alleged that he had paid Appellant's obligations to SNB (CR1¶32) and Appellee sought collection from Appellant under the 2008 Note, allegedly paid by Light (CR1¶32).

The Appellant denied the authenticity of his purported signature on the 2008 Note (CR242¶4.14) under which collection is sought. In addition, Appellant raised affirmative defenses of holder in due course, failure of consideration, cancellation under §3.401, Texas Business & Commerce Code, promissory estoppel, and discharge of liability under §3.401, Texas Business & Commerce Code. (CR242¶¶4.1-4.13)

Appellee filed a Motion for Summary Judgment with summary judgment proof (CR203),. Appellant filed objections to the summary judgment proof (CR245-254) and a Response. (SCR2-422). Appellant also submitted competent controverting summary judgment proof by way of affidavits of Appellant (SCR24-27), Larry Don

(CR29-61) and Robert H. Holmes (SCR63-215).

The Trial Court granted Plaintiff's motion for summary judgment without ruling on Appellant's objections to summary judgment submitted by the Appellee. (CR634).

Appellee's summary judgment proof was not competent. (CR245-254) The Trial Court abused its discretion in failing to rule on Appellant's objections to Appellee's summary judgment proof.

Moreover, the Trial Court erred in granting the summary judgment in the face of sworn allegations of the authenticity of Appellant's signature on the 2008 Note and summary judgment proof supporting that allegation as well as supporting the other affirmative defenses of Appellant.

## INDEX OF ABBREVIATIONS

The record will be referred to herein as follows:

Clerk's Record.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . CR ___

Supplemental Clerk's Record. . . . . . . . . . . . . . . . . . . . . . . . . . . . SCR ___

By way of example, a reference to:
pages 14-17 of the Clerk's Record will be cited as CR14-17.
pages 14-17 of the Supplemental Clerk's Record will be cited as SCR14-17.

## STATEMENT OF FACTS

### A. UNDERLYING TRANSACTION

The Stretford at the Cascades Limited Partnership ("Stretford") was organized to be the development and marketing entity for a 72 unit high rise condominium residential building in Tyler, Texas ("Project") in 2005. (CR56¶¶9; SCR29¶2) The developer was Lawrence C. Don ("Don"), who arranged for the purchase and financing for the Project; organized the group of investors in the Stretford; and engaged Appellant's engineering firm be a part of the team to develop and construct the Project. (SCR29¶3)

Tyler-Stretford General Partner, LLC ("Tyler-Stretford") whose members were Don, and J. Randolph Light, Jr. ("Light") was organized to be the general partner of the Stretford. (SCR29¶4) The primary investors in the Stretford were Light and Carl Black ('Black"). (SCR29¶4) Don and Light jointly requested Appellant be the tie-breaking member of Tyler-Stretford management team, to which Appellant agreed. However, Appellant's role was limited to engineering and construction matters. (SCR29¶9; SCR24¶6)

Tyler-Stretford owned a 1.129% no profits or equity limited partnership in Stretford. (SCR30¶¶7-9) Appellant held a 25% membership interest in the Tyler-Stretford, giving him a .28225% no profits or equity interest in Stretford. (SCR30¶¶7-

1

8) Appellant's only financial interest in the Project was compensation for providing engineering services through his engineering firm, Viewtech, Inc. (SCR24¶9; SCR30¶9)

Construction financing for the Project was arranged and funded with a loan from Stillwater National Bank & Trust Company ("SNB"). (SCR25¶5; SCR29¶5) Capital was invested by Light and Black, who were also guarantors, along with Don on the notes to SNB. (SCR29¶5)

In January 2008, it was realized additional funds were required to complete the Project. Several budget estimates were generated for the cost of completion of the Project, both by SNB's advisors and by third-party's engaged by Stretford. Interim funds were required for the Project to continue while the budget analyses and refinancing options were being reviewed, SNB agreed to provide short-term loans in amounts matching cash contributions made by Stretford. Stretford agreed to provide the additional capital. (SCR30¶¶11-12)

During the first ten months of 2008, Stretford funded an additional $2,500,000, in cash. (SCR30¶13) While dealing with the need for interim funds, Black, one of the two Stretford principals who had provided personal guarantees for portions of Stretford's $20,956,000.00 debt to SNB, challenged the validity of his signature on one of the guaranty agreements bearing his signature. (SCR30¶14)

2

As a result of Black's disputing the validity of his signature on the guaranty agreement, SNB changed courses, stating it could not make the short-term matching loans directly to Stretford. (SCR30¶14-15) Without the additional loan funds construction on the Project would be stopped for lack of funds. As an alternative, SNB agreed to make short-term loans to Light, Don and Appellant, evidenced by promissory notes executed by Light, Don and Appellant. SNB required no security for the loans, no loan applications, no proof of credit worthiness and no financial statement from the makers of these short term notes. (SCR30¶16)

February 20, 2008, SNB made the first short-term loan, in the amount of $1,200,000.00. (SCR30¶17; SRC 34) Two additional short-term loans, one March 28, 2008 in the amount of $500,000.00 (SCR30¶18; SRC38) and another July 7, 2008 in the amount of $800,000.00 (SCR30¶18; SRC42) were made. (cumulatively "Short-Term Notes"). Light, Don and Appellant executed the Short-Term Notes. (SCR34, 38, 42)

SNB told Light, Don and Appellant the Short-Term Notes would be satisfied and paid in full by consolidating and restructuring the Stretford loans, as soon as the budget analyses and refinancing options were completed. (SCR24¶19; SCR31¶20) March 28, 2008, SNB advised Appellant and Don it would not be necessary to renew the Short-Term Notes because the debts would be paid from the proceeds of a new

3

loan to the Stretford. (SCR26¶20; SCR31¶21)

The Short-Term Notes were set up as "personal" loans to Light, Don and Appellant; however, Light, Don and Appellant received neither directly nor indirectly and did authorize the use of any proceeds advanced on the Short-Term Notes. (SCR26¶23; SCR31¶24) Contrary to the affirmative statements of SNB to the contrary, without authorization from Light, Don or Appellant, SNB solely controlled the use and disbursement of all loan proceeds from the Short-Term Notes. (SCR26¶¶24, 25; SCR31¶¶24, 25) Neither Light, Don nor Appellant received or had use or benefit of the proceeds advanced under the Short-Term Notes. (SCR26¶¶24, 25; SCR31¶¶24, 25)

SNB extended the due dates on the Short-Term Notes to September 31, 2008, without Appellant's or Don's knowledge or approval. (SCR25¶18; SCR31¶19)

In September 2008 Lissiak received a document titled Omnibus Agreement, an agreement between negotiated between SNB and Light, apparently contemplated to be an agreement between Stretford, Light, Lissiak and Don, and SNB detailing the consolidation and restructuring of all debts related to the Project ("Omnibus Agreement"). (CR365-401; 424-427) The Omnibus Agreement removed Appellant and Don from any future management role of the Project. (CR365-401; 424-427) Along with the Omnibus Agreement, Appellant received a debt instrument

consolidating the Short-Term Notes into one new note in the amount of $2,500,000, "effective" September 30, 2008 ("2008 Note"). (CR424-427) Appellant did not sign the Omnibus Agreement or the 2008 Note, his name was struck from the Omnibus Agreement in pen. (CR365-401; 424-427)

While a likeness of Appellant's signature appears on the 2008 Note, Appellant does not recall signing that debt instrument and disputes the authenticity/genuineness of his signature thereon in sworn pleadings. (SCR26¶26; SCR31¶27) While it is clear Appellant did not execute the Omnibus Agreement, a document of equal date of the 2008 Note and related to the Omnibus Agreement, Appellant would not have executed the 2008 Note when Appellant was no longer a participant in the Project. (CR365-401, 424-427; 429-432)

Appellant was unaware his name had been appended to the 2008 Note until Light brought suit against Appellant and listed the 2008 Note in the petition as a note he had discussions with SNB about. (SCR26¶¶26-28) Moreover, although Light mentions the 2008 Note in the fact section of his Petition, (CR1-49), Light avers in his petition, Light paid the 2008 Note and the Short-Term Notes, and was bring suit against Appellant for contribution under the $2,500,000.00 note appended as Exhibit "E" to Light's petition which was executed by Light alone. (CR1-49) That note of equal date did not reference Appellant or Don as makers and there were no blank

spaces for Appellant or Don on the signatory page. (CR42-43) Neither Light nor SNB ever sought collection from Appellant for liability under the Short-Term Notes or the 2008 Note. (CR 424-427; 429-432)

In the lawsuit filed by Light on January 11, 2012 in the U.S. District Court, Eastern District (Cause No. 4-11- CV-833), the predecessor of this lawsuit, Light attached copies of correspondence from and to SNB wherein Light requested SNB's assistance with collections from Appellant on the Short-Term Notes; however, no action was taken by SNB. (CR424-427; 429-432)

SNB renewed and extended the 2008 Note numerous times without Appellant's knowledge, joinder, or approval, with "effective" dates of June 30, 2009, March 31, 2010, and July 31, 2010, executed only by Light as new debt instruments. ("Renewal Notes"). (CR424-427; 429-432)

SNB assigned eight debt instruments related to the Project to SWOO on or about December 13, 2011, which did not include the Short-Term Notes. (CR103¶¶8-16)

SWOO marked paid and delivered all debt instruments executed by Stretford and/or Light, payable to SNB, assigned to SWOO, except the 2008 Note, which included the Renewal Notes. (SCR65-76)

## A. UNDERLYING LITIGATION

February 20, 2012, Light and Stretford filed a First Amended Petition naming

6

Starwood Capital Group, LLC as additional defendant and deleting Don. (CR-1)

April 30, 2012, Light and Stretford filed a Second Amended Petition naming SWOO as a defendant in place of Starwood, (CR54) stating:

"On that same date, [Appellant], Don, and Light entered into a Promissory Note consolidating the two previous Notes wherein the three of them, jointly and severally, promised to pay SNB the principal sum of $2,500,000.00, together with interest (the "2.5 Note"). This 2.5 Note was executed in conjunction with a second amendment to the Omnibus Agreement pertaining to the Tyler Project. [Appellant] has wholly failed to meet his obligations under the 2.5 Note, leaving Light as the sole individual making payments. As such, Light is entitled to contributions from [Appellant] for the payments he has made on [Appellant]'s behalf pursuant to said Promissory Note."

Light goes on in ¶¶ 17-19 to explain how he was forced to acquire Note 6721400 dated 9/30/08 in the amount of $2,500,000.00, allegedly executed by Light, Don, and Appellant. (CR59¶¶17-19"). Then Light states:

"The 2.5 Note purports to be a joint and several Note signed by Light, Don and [Appellant]. See Exhibit 'E.' By virtue of the payments made by Light on the 2.5 Note in connection with the Tyler project, [Appellant] received valuable benefits equal to at least the amount of payments made by Light. . . . As a result

7

of [Appellant]'s breach of his contribution obligations . . . ."

(CR63,¶32) Light goes on to allege in the alternative:

" . . . . [Appellant] accepted Light's assistance in meeting his obligations in connection with the Tyler Project Note, all while knowing he would have to repay the funds advanced. Light has provided such assistance, and made payments to date in the amount of not less than $2.5 million. . . ."

(CR64,¶35)

May 21, 2012, SWOO filed counterclaims/cross actions (CR103) against Light and Stretford on various debt obligations, suing Light and Appellant under the "Principals Note" (CR106, ¶12) the 2008 Note. (CR109, ¶21)

June 11, 2012, Suggestion of Don's bankruptcy proceeding filed.

January 15, 2013, Light Nonsuits Appellant. (CR156)

January 28, 2013, Stretford Nonsuits SNB and SWOO. (CR163)

January 29, 2013, SWOO Nonsuits Stretford. (CR164)

September 12, 2013, Light Nonsuits SWOO. (CR174)

September 12, 2013, SWOO Nonsuits Light. (CR175)

November 15, 2013, Light Nonsuits SNB. (CR183)

January 13, 2014, SWOO filed a Motion for Summary Judgment. (CR198)

January 24, 2014, Appellant Answer to SWOO Crossclaim. (CR226)

February 7, 2014, SWOO's Supplemental Crossclaim against Appellant. (CR233)

February 10, 2014, Appellant Amended Answer to SWOO's Supplemental Crossclaim. (CR237)

### SUMMARY OF ARGUMENT

Appellant brings this appeal on the granting of the Appellee's Motion for Summary Judgment.

**A. APPELLEE DID NOT MEET ITS BURDEN OF PROOF; THEREFORE, THE BURDEN NEVER SHIFTED TO APPELLANT:**

1. Appellee was a holder in due course; and

2. Appellant signed the 2008 Note.

**B. ALTERNATIVELY, APPELLANT RAISED DISPUTED ISSUES OF MATERIAL FACT ON ELEMENTS OF APPELLEE'S CLAIM, TO WIT:**

1. holder in due course status of Appellee;

2. authenticity/genuineness of Appellant's signature on the 2008 Note; and

3. failure of consideration.

**C. APPELLANT PLED AFFIRMATIVE DEFENSES, SUPPORTED BY COMPETENT SUMMARY JUDGMENT PROOF, APPELLEE DID NOT SUBMIT COMPETENT SUMMARY JUDGMENT PROOF TO DISPROVE AT LEAST ONE ELEMENT OF ALL AFFIRMATIVE DEFENSES, TO WIT:**

1. holder in due course status of Appellee;

2. authenticity/genuineness of Appellant's signature on the 2008 Note;

3. failure of consideration;

4. § 3.401, Texas Business & Commerce Code, cancellation of debt instrument;

5. promissory estoppel;

6. material alteration/cancellation by payment extension; and

7. § 3.605, Texas Business & Commerce Code, discharge of liability.

**D. APPELLEE'S SUMMARY JUDGMENT PROOF WAS NOT COMPETENT SUMMARY JUDGMENT EVIDENCE.**

Appellee's summary judgment was from affiants who were not knowledgeable about the facts they were testifying about, there was no foundation in the affidavits to show the affiants to have the knowledge of the facts to which they ere testifying. Appallant filed proper objections which were first not ruled upon, then over-ruled as a matter of law when the trial court denied the Appemmant's Motion for New Trial.

**E. THE TRIAL COURT ABUSED ITS DISCRETION.**

The trial court's ruling in granting the summary judgment was arbitrary, unreasonable, and without reference to guiding principles:

1. The trial court failed to consider the objections to summary judgment proof made by the Appellant.

2. The trial court failed to require the Appellee to meet its burden of proof.

3. By granting a summary judgment in the face of fact issues supporting the elements of Appellant's affirmative defenses.

**ARGUMENTS AND AUTHORITIES**

10

## A. STANDARD OF REVIEW.

The purpose of the summary judgment procedure is to permit the trial court to promptly dispose of cases involving unmeritorious claims or untenable defenses. *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 n.5 (Tex.1979). However, a Court may not grant a properly contested summary judgment if there exists any genuine issue of material fact. *Swilley v. Hughes*, 488 S.W.2d 64 (Tex.1972); *Gibbs v. General Motors Corp.*, 450 S.W.2d 827 (Tex.1970).

When a movant files a motion for summary judgment based on the summary judgment evidence, the court can grant the motion only when the movant's evidence, as a matter of law, either proves all the elements of the movant's claim or disproves the facts of at least one element of each of the nonmovant's claims or defenses. *Park Place Hosp. v. Estate of Milo*, 909 S.W.2d 508, 511 (Tex.1995); *Lear Siegler, Inc. v. Perez*, 819 S.W.2d 470, 471-72 (Tex.1991). Even if the nonmovant does not file a response and the motion for summary judgment is uncontroverted, the movant must still carry the burden of proof. *Clear Creek*, 589 S.W.2d at 678. When evaluating a motion for summary judgment based on summary judgment proof, the trial court must:

Assume all the nonmovant's proof is true. *Limestone Prods. Distrib. v. McNamara*, 71 S.W.3d 308, 311 (Tex.2002); *Shah v. Moss*, 67 S.W.3d 836, 842

(Tex.2001); *M.D. Anderson Hosp. & Tumor Inst. v. Willrich*, 28 S.W.3d 22, 23 (Tex.2000); *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548-49 (Tex.1985).

Make every reasonable inference in favor of the nonmovant. *Neely v. Wilson*, 418 S.W.3d 52, 59-60 (Tex.2013); *Provident Life & Acc. Ins. v. Knott*, 128 S.W.3d 211, 215 (Tex.2003); *M.D. Anderson*, 28 S.W.3d at 23; *Nixon*, 690 S.W.2d at 548-49.

Resolve doubts about the existence of a genuine issue of a material fact against the movant. *Neely*, 418 S.W.3d at 59-60; *M.D. Anderson*, 28 S.W.3d at 23; *Nixon*, 690 S.W.2d at 548-49.

When the plaintiff moves for summary judgment on its own cause of action, the plaintiff must prove it is entitled to summary judgment by establishing each element of its claim as a matter of law. *MMP, Ltd. v. Jones*, 710 S.W.2d 59, 60 (Tex.1986). If the plaintiff does not conclusively establish all the elements necessary to its cause of action, summary judgment is improper. *Wesson v. Jefferson S&L Ass'n*, 641 S.W.2d 903, 906 (Tex.1982).

When the movant does not meet its burden of proof, the burden does not shift to the nonmovant and the summary judgment must be denied. *Amedisys, Inc. v. Kingwood Home Health Care, LLC*, 437 S.W.3d 507, 511 (Tex.2014); *M.D. Anderson*, 28 S.W.3d at 23; *Clear Creek*, 589 S.W.2d at 678. The burden shifts to the

12

nonmovant only after the movant has established it is entitled to summary judgment as a matter of law. *Amedisys, Inc, 437 S.W.3d at 511; State v. $90,235*, 390 S.W.3d 289, 292 (Tex.2013); *Casso v. Brand*, 776 S.W.2d 551, 556 (Tex.1989). At that point, the nonmovant must produce summary judgment evidence to raise a fact issue. *Amedisys*, 437 S.W.3d at 511.

A motion for summary judgment is reviewed *de novo. Neely,* 418 S.W.3d at 59. Furthermore, "[i]n reviewing a summary judgment, we consider all grounds presented to the trial court and preserved on appeal in the interest of judicial economy." *Diversicare Gen. Partner, Inc. v. Rubio,* 185 S.W.3d 842, 846 (Tex.2005).

In the *de novo* review of a trial court's summary judgment, the appellate court considers all the evidence in the light most favorable to the nonmovant, crediting evidence favorable to the nonmovant if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not. *Mack Trucks, Inc. v. Tamez,* 206 S.W.3d 572, 582 (Tex.2006). The evidence raises a genuine issue of fact if reasonable and fair-minded jurors could differ in their conclusions in light of all of the summary judgment evidence. *Goodyear Tire & Rubber Co. v. Mayes,* 236 S.W.3d 754, 755 (Tex.2007).

In the context of a summary judgment, if a party does not get a ruling on an objection to summary judgment proof or object to the court's refusal to rule and have

either the ruling, or the objection to the refusal to rule, included in the appellate record, the objections are waived. *Wilcox v. Hempstead,* 992 S.W.2d 652, 656–57 (Tex.App.–Fort Worth 1999, no pet.). However, a trial court implicitly rules on objections to summary judgment evidence where a party complained in his motion for new trial of the trial court's refusal to rule on his objections. *Alejandro v. Bell,* 84 S.W.3d 383, 388 (Tex.App.–Corpus Christi 2002, no pet.); *Dolcefino v. Randolph,* 19 S.W.3d 906, 926-27 (Tex.App.–Houston [14th Dist.] 2000, pet. denied).

Defects in the substance of an affidavit or its attachments can be raised for the first time on appeal. *Willis v. Nucor Corp.,* 282 S.W.3d 536, 547 (Tex.1980). A conclusion in an affidavit unsupported by evidence is a defect in substance and an objection in the trial court is not required to preserve the complaint for appellate review. See *id.* at 548. *See also Bastida v. Aznaran,* 444 S.W.3d 98, 105 (Tex.App.–Dallas 2014, no pet.).

## B. ISSUES PRESENTED FOR REVIEW

**ISSUE NO. 1. THE TRIAL COURT ERRED IN GRANTING A SUMMARY JUDGMENT BECAUSE THE WERE DISPUTED FACT ISSUES ON THE FOLLOWING ELEMENTS OF APPELLEE'S CLAIM; THEREFORE, THE BURDEN NEVER SHIFTED TO APPELLANT:**

To prevail in a suit on a promissory note, a plaintiff must prove: (1) the note in question; (2) the defendant signed the note; (3) the plaintiff was the legal owner or holder of the note; and (4) a certain balance was due and owing on the note. *Truestar*

*Petroleum Corp. v. Eagle Oil & Gas Co.,* 323 S.W.3d 316, 319 (Tex.App.–Dallas 2010, no pet.); *Hudspeth v. Investor Collection Serv. Ltd. P'ship,* 985 S.W.2d 477, 479 (Tex.App.–San Antonio 1998, no pet.).

**ISSUE NO. 1A. HOLDER VS. HOLDER IN DUE COURSE.**

The holder of an instrument is a holder in due course if the holder takes the instrument: (1) for v–Dallas, 2008, pet. denied).

A person has "notice of a fact" when he has knowledge of it. *Id.*; Tex. Bus. & Com. Code § 1.202(a)(1).

To be a holder in due course, one must take without notice that an instrument is overdue. Tex. Bus. & Com. Code§ 3.302(a)(2)(iii).

A "holder" is:

(A) the person in possession of a negotiable instrument that is payable either to bearer or to an identified person that is the person in possession;

(B) the person in possession of a negotiable tangible document of title if the goods are deliverable either to bearer or to the order of the person in possession; or

(C) a person in control of a negotiable electronic document of title.

Tex. Bus. & Com. Code § 1.201 (21).

Where a sworn pleading denies that a party is a holder in due course the burden to prove the contrary is on the party claiming to be a holder in due course. *Nixon*, 690

S.W.2d at 548; *Lee v. McCormick,* 647 S.W.2d 735, 738 (Tex.App.–Beaumont 1983, no writ).

It is undisputed, the 2008 Note was past due when SWOO acquired the 2008 Note; therefore, SWOO is a holder, not a holder in due course.

The defenses that can be asserted against a holder include all defenses of any party which would be available in an action on a simple contract, including without limitation, want or failure of consideration, non-performance of any condition precedent, delivery for a special purpose, and payment or satisfaction to such holder would be inconsistent with the terms of a restrictive endorsement. Tex. Bus. & Com. Code § 3.306; *Town N. Nat'l Bank v. Broaddus*, 569 S.W.2d 489, 491 (Tex.1978).

**ISSUE NO. 1B. VALIDITY/AUTHENTICITY OF SIGNATURE.** A Rule 93(7) verified denial challenges the authenticity of the document and addresses the document's admissibility as an evidentiary issue. Tex.R. Civ. P. 93(7). A sufficient sworn denial of the execution of a note, such as filed by Appellant in this case, imposes upon a plaintiff seeking to enforce payment on the note, the burden of establishing its execution by the defendant or by one authorized to bind him. *Burns v. Gonzalez,* 439 S.W.2d 128, 133 (Tex.Civ.App.–San Antonio 1969, writ ref'd n.r.e.); *Wilson v. Skaggs*, 10 Tex. 298, 1853 WL 4340 (Tex.1853); *Steiner v. Jester*, 25 S. W. 411, (Tex.1894); *Harvey v. Harvey* 40 S. W. 185 (Tex.Civ.App.1897).

16

The UCC has codified that law, stating:

"In an action with respect to an instrument, the authenticity of, and authority to make, each signature on the instrument are admitted unless specifically denied in the pleadings. If the validity of a signature is denied in the pleadings, the burden of establishing validity is on the person claiming validity, but the signature is presumed to be authentic and authorized unless the action is to enforce the liability of the purported signer and the signer is dead or incompetent at the time of trial of the issue of validity of the signature."

Tex. Bus. & Com. Code § 3.308 (a).

Under the UCC, the "burden of establishing" a fact means the burden of persuading the trier of fact that the existence of the fact is more probable than its nonexistence. Tex. Bus. & Com. Code § 1.201 (8).

The UCC defines "presumption" with respect to a fact, or that a fact is "presumed," to mean the trier of fact must find the existence of the fact unless and until evidence is introduced that supports a finding of its nonexistence. Tex. Bus. & Com. Code § 1.206.

In salient part, the UCC Comment to § 3.308 states:

". . . . The purpose of the requirement of a specific denial in the pleadings is to give the plaintiff notice of the defendant's claim of forgery or lack of authority

as to the particular signature, and to afford the plaintiff an opportunity to investigate and obtain evidence. . . . In the absence of such specific denial the signature stands admitted, and is not in issue. . . . The question of the burden of establishing the signature arises only when it has been put in issue by specific denial. "Burden of establishing" is defined in Section 1-201. The burden is on the party claiming under the signature, but the signature is presumed to be authentic and authorized except as stated in the second sentence of subsection (a). "Presumed" is defined in Section 1-201 and means that until some evidence is introduced which would support a finding that the signature is forged or unauthorized, the plaintiff is not required to prove that it is valid. The presumption rests upon the fact that in ordinary experience forged or unauthorized signatures are very uncommon, and normally any evidence is within the control of, or more accessible to, the defendant. The defendant is therefore required to make some sufficient showing of the grounds for the denial before the plaintiff is required to introduce evidence. The defendant's evidence need not be sufficient to require a directed verdict, but it must be enough to support the denial by permitting a finding in the defendant's favor. Until introduction of such evidence the presumption requires a finding for the plaintiff. Once such evidence is introduced the burden of establishing

the signature by a preponderance of the total evidence is on the plaintiff. The presumption does not arise if the action is to enforce the obligation of a purported signer who has died or become incompetent before the evidence is required, and so is disabled from obtaining or introducing it. "Action" is defined in Section 1-201 and includes a claim asserted against the estate of a deceased or an incompetent."

Tex. Bus. & Com. Code § 3.308 cmt. 1.

A person is not liable on an instrument unless the person:

(1) signed the instrument; or

(2) is represented by an agent or representative who signed the instrument and the signature is binding on the represented person under Section 3.402.

Tex. Bus. & Com. Code § 3.401(a)

Where the maker's signature was forged, the maker cannot be liable since his valid signature does not appear on the instrument. *Canfield v. Bank One, Texas, N.A*. 51 S.W.3d 828 (Tex.App. 6 Dist. 2001pet. denied).

When the holder of the note is not the payee and not a holder in due course the party holds the note subject to all defenses available in an action on a simple contract. *Broaddus*, 569 S.W.2d at 491; Tex. Bus. & Com. Code § 3.306. Therefore, evidence is admissible that tends to prove a defense to the action on the promissory note, such

as failure of consideration, non-performance of a condition precedent, delivery for a special purpose, fraud in the inducement, or other defenses which would be available in an action on a simple contract. *Broaddus*, 569 S.W.2d at 491.

As shown in the uncontroverted sworn summary judgment proof presented by Appellant, Appellant disputed the authenticity of his signature on the Note under sworn pleadings as well as sworn summary judgment proof.

**ISSUE NO. 1C. FAILURE OF CONSIDERATION.**

The affirmative defense of failure of consideration defeats a summary judgment if the nonmovant presents evidence he did not receive the consideration set forth in the agreement. *McGraw v. Brown Realty Co.,* 195 S.W.3d 271, 276 (Tex.App.–Dallas 2006, no pet.). A failure of consideration may be either partial or total. A total failure of consideration is grounds for cancellation or recission of the contract. *Food Mach. Corp. v. Moon,* 165 S.W.2d 773, 775 (Tex.Civ.App.–Amarillo 1942, no writ).

Consideration is a present exchange bargained for in return for a promise."*Roark v. Stallworth Oil & Gas, Inc.,* 813 S.W.2d 492, 496 (Tex.1991). "It consists of either a benefit to the promisor or a detriment to the promisee." *Id.* Failure of consideration is distinct from lack of consideration. *Belew v. Rector,* 202 S.W.3d 849, 854 n. 4 (Tex.App.–Eastland 2006, no pet.). Failure of consideration generally "occurs when,

because of some supervening cause after an agreement is reached, the promised performance fails." *US Bank, N.A. v. Prestige Ford Garland Ltd. P'ship,* 170 S.W.3d 272, 279 (Tex.App.–Dallas 2005, no pet.).

When parties reduce their agreement to writing, the "written contract presumes that there was consideration given for its execution."*Gooch v. Am. Sling Co.,* 902 S.W.2d 181, 185 (Tex.App.–Fort Worth 1995, no writ) (citing *Wright v. Robert & St. John Motor Co.,* 58 S.W.2d 67, 69 (Tex.1933)).

Appellant is not contesting consideration in the execution of the Short-Term Notes, but the failure of consideration thereafter.

Because there is a presumption  the Short-Term Notes were supported by consideration, the burden was on Appellant to show  none was actually received, thus there was a failure of consideration. *Maykus v. Tex. Bank & Trust Co. of Dallas*, 550 S.W.2d 396, 398 (Tex.Civ.App.–Dallas 1977, no writ). Appellant did this (SCR26¶¶23-25; SCR31¶¶23-25)

Appellant executed the Short-Term Notes in his individual capacity and SNB agreed to advance Appellant and the other makers of those notes, in their individual capacities, the amount of money specifically delineated in each note; however, SNB did not do that. As shown in the uncontroverted summary judgment proof presented by Appellant, Appellant received no consideration from advances on the Short-Term

21

Notes. (SCR26¶¶23-25; SCR31¶¶23-25)

Appellee presented no evidence to raise a disputed fact issue on the elements of this affirmative defense. (CR203)

There was a total failure of consideration in the Short-Term Notes because SNB did not advance the funds to Appellant or as directed by Appellant after the Short-Term Notes were executed - a supervening cause arising after the execution of the Short-Term Notes. *Burges v. Mosley,* 304 S.W.3d 623, 628 (Tex.App.–Tyler 2010, no pet.). Thus, the 2008 Note fails likewise.

### ISSUE NO. 1D. CANCELLATION OF NOTE.

Tex.Bus. & Com.Code § 3.401(a) provides: "[n]o person is liable on an instrument unless his signature appears thereon."

An agreement to extend the time of payment of a negotiable instrument constitutes a new contract between the parties. *Priest v. First Mortgage Company of Texas, Inc.,* 659 S.W.2d 869, 871 (Tex .Civ.App.–San Antonio 1983, writ ref'd n.r.e.). The execution of a renewal note is generally treated as a new contract, evidencing the existing debt. *Priest,* 659 S.W.2d at 871; *Braugh v. Corpus Christi Bank & Trust,* 605 S.W.2d 691, 696 (Tex.Civ.App.–Corpus Christi 1980, writ ref'd n.r.e.).

It is clear from the record shown in the CSA, Light alone renewed and

22

extended the 2008 Note at least three times; therefore, whether the Renewal Notes, notes which Appellant undisputed did sign as a co-maker, extinguished the Short-Term Notes and/or the 2008 Note, are disputed fact issues, questions of fact for the jury. *Hays v. First State Bank of Dell City*, Tex.Civ.App., 377 S.W.2d 210, (Tex.App.–Amarillo, 1964 writ ref., n.r.e.).

Moreover, The Short-Term Notes were not transferred to SWOO and they no longer exist - they were deemed to have been marked paid in full and returned to Light in the CSA (SCR65); therefore, it is a disputed fact issue to whether the 2008 Note was extinguished by the terms of the Omnibus Agreement and/or the Renewal Notes. *Id*.

**ISSUE NO. 1E. DOCTRINE OF ESTOPPEL**

Promissory estoppel is an equitable doctrine ordinarily used defensively to prevent "a party from insisting upon [its] strict legal rights when it would be unjust to allow [it] to enforce them." *Wheeler v. White*, 398 S.W.2d 93, 96–97 (Tex. 1965)*; In re Weekley Homes, L.P.,* 180 S.W.3d 127, 133 (Tex.2005).

SWOO is estopped by the acts of its predecessor, SNB, as SWOO is not a holder-in-due-course. SNB promised Appellant and the other co-makers of the Short-Term Notes that if Appellant and the co-makers would execute the Short-Term Notes in their individual capacities, SNB would: (i) disburse the funds

23

advanced on the Short-Term Notes to the co-makers for their use on the Project as the co-makers deemed fit in their sole discretion, as set forth in the Short-Term Notes; and (ii) SNB would not seek payment from the co-makers, but would pay the Short-Term Notes by rolling the balances due on the Short-Term Notes into the refinancing of the Stretford debt. (SCR25-26¶¶19, 20; SCR25-26¶¶20, 21).

**ISSUE NO. 2. ALTERNATIVELY, APPELLANT RAISED DISPUTED ISSUES OF MATERIAL FACT ON ELEMENTS OF APPELLEE'S CLAIM.**

Legal arguments and disputed fact issues raised by Appellant on these issues are:

**ISSUE NO. 2A. HOLDER IN DUE COURSE.**

Legal arguments in §1A above.

Fact issues raised:

a. Appellant provided competent summary judgment evidence showing the 2008 Note was past due when acquired by SWOO. (CR104-106¶¶8-16)

b. Appellee had knowledge the 2008 Note was in default when acquired by SWOO. (CR104-106¶¶8-16)

**ISSUE NO. 2B. AUTHENTICITY/GENUINENESS OF SIGNATURE.**

Legal arguments in §1B above.

Fact issues raised:

a. Appellant did not execute the 2008 Note. (SCR26¶¶27, 28; SCR31¶¶27, 28)

b. Appellant was no longer a partner, member or participant in the Stretford

Project when the 2008 Note was executed. (SCR181-216)

c. Appellant did not execute the Omnibus Agreement. (SCR181-216)

**ISSUE NO. 2C. FAILURE OF CONSIDERATION.**

Legal arguments in § 1C above.

Fact issues raised:

a. Appellant did not receive any funds from advances under the Short-Term Notes. (SCR26¶¶24, 25; SCR31¶¶24, 25)

b. Appellant did not receive any funds from advances under the 2008 Note. (SCR26¶¶24, 25; SCR31¶¶24, 25; CR365-401; 424-427)

**ISSUE NO. 3. THE TRIAL COURT ERRED IN GRANTING A SUMMARY JUDGMENT BECAUSE APPELLANT SUBMITTED COMPETENT SUMMARY JUDGMENT PROOF TO CREATE ISSUES ON THE AFFIRMATIVE DEFENSES PLED BY APPELLANT.**

If the party opposing a summary judgment relies on an affirmative defense, he must come forward with summary judgment proof sufficient to raise an issue of fact on each element of the defense to avoid summary judgment. *Brownlee v. Brownlee,* 665 S.W.2d 111, 112 (Tex.1984). A defendant is not required to prove his affirmative defense as a matter of law, he is only required to raise fact issue on each element of the affirmative defense. *Id.* Appellant filed a response to the Motion identifying his affirmative defenses, the law related thereto and provided competent summary-judgment evidence raising a fact issue on each element of his affirmative defenses.

(SCR1-216 Specifically those fact issues raised by Appellant are:

**ISSUE NO. 3A. APPELLEE WAS NOT A HOLDER IN DUE COURSE.**

Fact issues raised.

Appellant raised the following fact issues:

a. the 2008 Note was in default when acquired by SWOO. (CR104-106¶¶8-16)

b. SWOO had knowledge that the 2008 Note was in default when acquired by SWOO. (CR104-106¶¶8-16)

**ISSUE NO. 3B. AUTHENTICITY/GENUINENESS OF APPELLANT'S SIGNATURE ON THE 2008 NOTE.**

Legal arguments in §1B above.

Fact issues raised:

a. Appellant did not execute the 2008 Note. (SCR26¶¶27, 28; SCR31¶¶27, 28)

b. Appellant was no longer a participant in the Stretford Project when the 2008 Note was executed. (SCR181-216)

c. Appellant did not execute the Omnibus Agreement. (SCR181-216)

**ISSUE NO. 3C. FAILURE OF CONSIDERATION.**

Legal arguments in §1C above.

Fact issues raised:

a. Appellant received no funds or benefits from advances under the Short-Term Notes. (SCR26¶¶24, 25; SCR31¶¶24, 25)

26

b. Appellant received no funds or benefits from advances under the 2008 Note.

(SCR26¶¶24, 25; SCR31¶¶24, 25; CR365-401; 424-427)

**ISSUE NO. 3D. § 3.401, TEXAS BUSINESS & COMMERCE CODE, CANCELLATION OF DEBT INSTRUMENT.**

Legal arguments in §1D above.

Appellant raised the following fact issues:

a. Appellant did not execute the Renewal Notes - three of them as shown in the second full paragraph of the renewal dated July 11, 2011. (SCR91@92 2nd paragraph)

b. Appellant was not consulted about the Renewal Notes - none of them. (SCR27¶30; SCR31¶19)

c. The Short-Terms Notes were marked paid and returned to Light. (SCR65-167)

**ISSUE NO. 3E. PROMISSORY ESTOPPEL.**

Legal arguments in §1E above.

Fact issues raised:

a. Appellant was told by SNB the Short-Term Notes would be paid by new notes issued to the Stretford. (SCR25-27¶¶19, 20, 21; SCR31¶¶20, 21)

b. Appellant relied on that representation. (SCR25-27¶¶19, 20, 21; SCR31¶¶20, 21)

c. Appellee reliance on the representations caused Appellant injury - Appellant raised the following fact issues: (SCR25-27¶¶19, 20, 21, 33; SCR31¶¶20, 21)

**ISSUE NO. 3F. MATERIAL ALTERATION/CANCELLATION BY PAYMENT EXTENSION.**

Whether the note is materially altered by a payment extension is a question of law. *Austin Hardwoods Inc. v. Vanden Berghe,* 917 S.W.2d 320, 325 (Tex.App.–El Paso 1995, writ denied); *Federal Deposit Insurance Corp. v. Attayi,* 745 S.W.2d 939, 944 (Tex.App.–Houston [1st Dist.] 1988, no writ).

A material alteration of a contract between a creditor and principal debtor is one that either injures or enhances the risk of injury to the guarantor/co-maker. *United Concrete Pipe Corp.v. Spin-Line Co.,* 430 S.W.2d 360, 365 (Tex.1968); *Attayi,* 745 S.W.2d at 944. Material alteration is an affirmative defense. *Bullock v. Kehoe,* 678 S.W.2d 558, 559 (Tex.App.–Houston [14th Dist.] 1984, writ ref'd n.r.e.); *Reliance Ins. Co. v. Dahlstrom Corp.,* 568 S.W.2d 733, 736 (Tex.Civ.App.–Eastland 1978, writ ref'd n.r.e.). The elements of the defense are threefold: (1) a material alteration of the underlying contract; (2) made without a guarantor's/co-maker's consent; (3) which is to his detriment (i.e., is prejudicial to his interest). *Old Colony v. City of Quitman,* 352 S.W.2d 452, 456 (Tex.1962); *Austin Hardwoods,* 917 S.W.2d at 326; *Attayi,* 745 S.W.2d at 944.

28

Fact issues raised:

a. There was a material alteration in the Short-Term Notes by the extension of the due date. (SCR27¶¶18-21, 28-31; SCR31¶¶19-23)

b. Appellant was not consulted about the renewal and extension of the Short-Term Notes or the 2008 Note or any of the Renewal Notes. (SCR27¶30; SCR31¶19)

c. The various renewals were to Appellant's detriment. (SCR26¶22; CR1; CR238)

**ISSUE NO. 3G. § 3.605, TEXAS BUSINESS & COMMERCE CODE, DISCHARGE OF LIABILITY.**

Tex.Bus. & Com.C. § 3.605 sets forth the acts by a holder that discharge a party to an instrument is intended to discharge a co-maker of note only to the extent of his right of recourse against his fellow co-maker.

When one party to a contract commits a material breach of contract, the other party is discharged or excused from further performance. *Mustang Pipeline Co. v. Driver Pipeline Co.,* 134 S .W.3d 195, 196 (Tex.2004). The covenant breached must be part of mutually dependent promises in order to excuse further performance by the non-breaching party. *Hanks v. GAB Bus. Servs., Inc.,* 644 S.W.2d 707, 708 (Tex.1982). Generally, the issue of whether a breach rises to the level of a material breach that will render the contract unenforceable presents a

29

dispute for resolution by the trier of fact. *Hiles v. Arnie & Co., P.C.,* 14–12–00088–CV, 2013 WL 2120658, \*8 (Tex.App.–Houston [14th Dist.] Apr. 25, 2013, pet. filed) (citing *Cont'l Dredging, Inc. v. De–Kaizered, Inc.,* 120 S.W.3d 380, 394–95 (Tex.App.–Texarkana 2003, pet. denied). 13.3. The determination of whether a breach is a material breach of the contract necessarily turns on the facts of each case. *Advance Components, Inc. v. Goodstein,* 608 S.W.2d 737, 739 (Tex.App.–Dallas 1980, writ ref'd n.r.e.) ( *citing Bowen v. Briscoe,* 453 S.W.2d 287, 289 (Tex.1970)). Citing the Restatement (Second) of Contracts, section 241 (1981), the Texas Supreme Court noted five circumstances significant in determining whether a failure to perform is material: (a) the extent to which the injured party will be deprived of the benefit which he reasonably expected; (b) the extent to which the injured party can be adequately compensated for the part of that benefit of which he will be deprived; (c) the extent to which the party failing to perform or to offer to perform will suffer forfeiture; (d) the likelihood the party failing to perform or to offer to perform will cure his failure, taking account of the circumstances including any reasonable assurances; (e) the extent to which the behavior of the party failing to perform or to offer to perform comports with standards of good faith and fair dealing. *Mustang Pipeline,* 134 S.W.3d at 199.

Another factor relevant to assessing the materiality of the breach is the extent to which it reasonably appears to the injured party that delay may prevent or hinder him in making reasonable substitute arrangements. *Id.* (citing Restatement (Second) of Contracts § 242 (1981)).

Fact issues raised:

a. SNB and Light jointly breached the agreement the Short-Term Notes would be rolled into new debt of the Stretford. (SCR26¶¶20, 21, SCR31¶¶19, 20, 21)

b. SNB and Light conspired to keep Appellant liable by the renewal of the Short-Term Notes into the 2008 Notes, instead of rolling that debt into new debt of the Stretford. (SCR83)

c. Had SNB followed through with its agreement, Light would have sole liability under his guaranty agreements to SNB for all debts of the Stretford. (SCR65-167)

**ISSUE NO. 4. THE TRIAL COURT ERRED IN GRANTING A SUMMARY JUDGMENT BECAUSE APPELLEE'S SUMMARY JUDGMENT PROOF WAS NOT COMPETENT SUMMARY JUDGMENT EVIDENCE.**

Competent summary judgment proof must be clear, positive, direct, credible, free from contradiction, and susceptible of being readily controverted. Tex.R. Civ. P. 166a(c); *Haynes v. City of Beaumont,* 35 S.W.3d 166, 178 (Tex.App.–Texarkana 2000, no pet.). Conclusory statements in affidavits are not competent evidence to

support a summary judgment. *Id.* A conclusory statement is one not providing the underlying facts to support the statements. *Id.* Speculative evidence is not competent summary judgment evidence. *Wal–Mart Stores, Inc. v. Gonzalez,* 968 S.W.2d 934, 936 (Tex.1998). Moreover, an to be competent summary judgment proof an affidavit must be made on personal knowledge, and are conclusory as a matter of law if the affiant fails to provide underlying facts supporting the affiant's statements. Tex.R. Civ. P. 166a(f); *LeBlanc v. Lamar State College,* 232 S.W.3d 294, 301 (Tex.App.–Beaumont 2007, no pet.) (citing *1001 McKinney Ltd. v. Credit Suisse First Boston Mortg. Capital,* 192 S.W.3d 20, 27 (Tex.App.–Houston [14th Dist.] 2005, pet. denied)).

Appellee's summary judgment evidence consists of four affidavits: Brent A Bates, L. Read Mortimer, Anson Lang and Kyle A. Owens. (CR208-225)

Bates, an employee of SNB, is merely a custodian of records, and not familiar with the Stretford loan transactions other than in a custodial manner. The Affidavit of Bates provides no underlying facts supporting the conclusions in his affidavit that Appellant signed the 2008 Note, and he proffers no evidence on the issue of failure of consideration. (CR219) The statements in Affidavit of Bates about Appellant's signature and liability are conclusory as a matter of law. Tex.R. Civ. P. 166a(f); *LeBlanc,* 232 S.W.3d at 301.

Mortimer, an employee of SWOO, is merely a custodian of records, and not familiar with the Stretford transactions at SNB in any manner. The Affidavit of Mortimer provides no underlying facts to support the conclusion in his affidavit that Appellant signed the 2008 Note, and he proffers no evidence on the issue of failure of consideration. (CR208) The statements in Affidavit of Mortimer about Appellant's signature and liability are conclusory as a matter of law. Tex.R. Civ. P. 166a(f); *LeBlanc,* 232 S.W.3d at 301.

Lang, an employee of Situs Asset Management, is even more remote to the Stretford transactions at SNB and his statements are hearsay and conclusions. The Affidavit of Lang provides no underlying facts to support the conclusion in his affidavit that Appellant signed the 2008 Note, and he proffers no evidence on the issue of failure of consideration. (CR213) The statements in Affidavit of Mortimer about Appellant's signature and liability are conclusory as a matter of law. Tex.R. Civ. P. 166a(f); *LeBlanc,* 232 S.W.3d at 301.

Owens an attorney with Hunton & Williams only has knowledge about the litigation, and offers no evidence on the issues of liability of the Appellant. (CR224)

**ISSUE NO. 5. THE TRIAL COURT ERRED IN GRANTING A SUMMARY JUDGMENT BECAUSE THE TRIAL COURT ABUSED ITS DISCRETION.**

A trial court abuses its discretion if its decision "is arbitrary, unreasonable, and without reference to guiding principles." *Boerschig v. Southwestern Holdings, Inc.,*

322 S.W.3d 752, 762–63 (Tex.App.–El Paso 2010, no pet.); *Goode v. Shoukfeh*, 943 S.W.2d 441, 446 (Tex.1997); *Downer v. Aquamarine Operators, Inc.,* 701 S.W.2d 238, 241–42 (Tex.1985). Specifically, the Trial Court abused its discretion in the follow matters:

**ISSUE NO. 5A. BY FAILING TO RULE ON THE APPELLANT'S OBJECTIONS TO THE AFFIDAVIT OF BRENT A. BATES; OBJECTIONS TO THE AFFIDAVIT OF ANSON LANG; AND OBJECTIONS TO THE AFFIDAVIT OF READ MORTIMER.**

A trial court does not have the discretion to refuse to rule on objections filed. *In re Shredder Co.*, 225 S.W.3d 676, 679 (Tex. App–El Paso 2006 orig. proceeding). The trial court must consider and rule on objections within a reasonable time. *In re Kleven*, 100 S.W.3d 643, 644 (Tex. App–Texarkana 2003 orig. proceeding). It is error and abuse of discretion to refuse to rule on a pending objections. *Eli Lilly & Co. v. Marshall*, 829 S.W.2d 157, 158 (Tex. 1992). However, since the trial court implicitly ruled on the Objections by overruling the Motion for New Trial the Trial Court's implicit overruling was  an abuse of discretion not founded in reference to guiding principles.

**ISSUE NO. 5B. BY FAILING TO REQUIRE APPELLEE TO MEET HIS BURDEN OF PROOF.**

When a plaintiff fails to meet its burden of proof on its , thus the burden did not shift to Appellant. *M. D. Anderson*, 28 S.W.3d at 23; therefore, since SWOO was required to show there was no genuine issue of material fact and it was entitled to

judgment as a matter of law and did not, Rule 166a(c); *Knott*, 128 S.W.3d at 215-16, thus the Trial Court's granting the summary judgment was an abuse of discretion not founded in reference to guiding principles.

### ISSUE NO. 5C. BY GRANTING A SUMMARY JUDGMENT IN THE FACE OF FACT ISSUE SUPPORTING THE ELEMENTS OF APPELLANT'S AFFIRMATIVE DEFENSES.

Appellee pled affirmative defenses and provided summary judgment proof in support of his affirmative defenses, which evidence was not controverted by the Appellee as required by law; therefore, Appellee was not entitled to summary judgment, *Brownlee*, 665 S.W2d at 112, thus the Trial Court's granting the summary judgment was an abuse of discretion not founded in reference to guiding principles.

### CONCLUSION & PRAYER

The Trial Court erred as set forth herein, Appellant respectfully request this Honorable Court to:

1. Reverse the Summary Judgment and render judgment in favor of Appellant that Appellee take nothing.

2. Alternatively, reverse the Summary Judgment and:
    a. remand this case for a new trial on all issues;
    b. remand the case to the Trial Court with instructions to conduct a jury trial on the disputed fact issues determined by this Honorable Court; or
    c. remand the case to the Trial Court with instructions to conduct a jury trial on the issues of misapplication of law by the Trial Court, as determined by this Honorable Court.

35

Respectfully submitted,
THE HOLMES LAW FIRM, INC.

By: /s/ Robert H. Holmes
      Robert H. Holmes
State Bar No. 09908400
3401 Beverly Drive
Dallas, Texas 75205
Telephone: 214-384-3182
email: rhholmes@swbell.net
ATTORNEY FOR APPELLANT


### APPELLANT'S RULE 9.4 CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitations of Rule 9.4 because it contains words 7,463, excluding the parts of the brief exempted by the rule.

/s/ Robert H. Holmes
Robert H. Holmes

### CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing instrument has been delivered to the attorney of record for, by electronic service using eFileTexas, on April 27, 2015.

/s/ Robert H. Holmes
Robert H. Holmes

NO. 12-14-00344-CV

IN THE TWELFTH COURT OF APPEALS

AT TYLER, TEXAS

---

**VICTOR LISSIAK, JR.,**

*Appellant*

V.

**SW LOAN OO, L.P.,**

*Appellee*

*On Appeal from the 7th Judicial District Court, Smith County, Texas*
*The Honorable Kyle Russell Presiding in Trial Court Case Number 12-0384-A*

---

**APPENDIX TO APPELLANT'S BRIEF**

---

THE HOLMES LAW FIRM, INC.
Robert H. Holmes
SBN 09908400
3401 Beverly Drive
Dallas, Texas 75205
Telephone: 214-384-3182
Email: rhholmes@swbell.net

ATTORNEYS FOR APPELLANT

# INDEX TO APPENDIX

1. Order Granting Summary Judgment.

2. Amended Motion for New Trial.

3. Omnibus Agreement.

4. Settlement Agreement between Appellee and J. Randolph Light.

5. Tex. Bus. & Com. Code § 1.201 (8) & (21).

6. Tex. Bus. & Com. Code § 1.202(a)(1).

7. Tex. Bus. & Com. Code § 1.206.

8. Tex. Bus. & Com. Code§ 3.302(a)(2)(iii).

9. Tex. Bus. & Com. Code § 3.306

10. Tex. Bus. & Com. Code § 3.308

11. Tex. Bus. & Com. Code § 3.401(a)

12. Tex.Bus. & Com.C. § 3.605

EXHIBIT "1"

Submission Dot. 4/14/14

Cause No. 12-0384-A

| | | |
|---|---|---|
| J. Randolph Light Jr. and The Stretford at Cascades Limited Partnership | § § § § | In the District Court of |
| Plaintiffs | § § | |
| v. | § § | Smith County, Texas |
| Stillwater National Bank and Trust Company, SW Loan OO, L.P., and Victor Lissiak, Jr. | § § § § | |
| Defendants | § § | 7th Judicial District |

| | | |
|---|---|---|
| SW Loan OO, L.P. | § § | |
| Cross-Plaintiff | § § | |
| v. | § | Cross-Claim |
| Victor Lissiak, Jr. | § § | |
| Cross-Defendant | § § | |

## FINAL SUMMARY JUDGEMENT

Came on for consideration, *SW Loan OO, L.P.'s Motion for Summary Judgment Against Victor Lissiak, Jr.* ("Motion"), whereby cross-plaintiff, SW Loan OO, L.P., sought judgment against the cross-defendant, Victor Lissiak, Jr. ("Lissiak"), on all relief requested by cross-plaintiff in its cross-claim. It appears to the Court that the Motion has been made in proper form and time, that proper service of the Motion has been made upon Lissiak, and he has been properly notified of the hearing on the Motion. The Court, having considered the Motion, the pleadings, summary judgment evidence, and other papers on file herein, is of the opinion that the cross-plaintiff is entitled to the summary judgment prayed for

in the Motion. It is accordingly

ORDERED, ADJUDGED AND DECREED that SW Loan OO, L.P., recover from Victor Lissiak, Jr., judgment for

1.  $3,047,983.92 as of September 4, 2013;

2.  Pre-judgment interest from September 4, 2013, through the date of judgment at the per diem rate of $1,041.67;

3.  Attorney's fees, as part of the judgment hereby rendered as follows:

    a.  For the prosecution of the lawsuit $3,325.00;

    b.  an additional $1,050.00 in the event a motion for new trial is filed;

    c.  an additional $10,000.00 in the event of an appeal to the Court of Appeals;

    c.  an additional $7,000.00 in the event a petition for review is filed with the Supreme Court of Texas; and

    d.  an additional $7,000.00 in the event the Supreme Court of Texas grants the petition.

It is further ORDERED, ADJUDGED and DECREED that the judgment hereby rendered shall bear interest at a rate of 15% per annum from the date of this judgment until paid.

All costs of Court expended or incurred in this cause are hereby adjudged against defendant. All writs and processes for the enforcement and collection of this judgment or the costs of court may issue as necessary. All other relief not expressly granted is denied.

Dated: February 21, 2014.

Judge Presiding

2

EXHIBIT "2"

CASE NO. 12-0384-A

| | | |
|---|---|---|
| J. RANDOLPH LIGHT, JR. and | § | IN THE DISTRICT COURT OF |
| THE STRETFORD AT THE CASCADES | § | |
| LIMITED PARTNERSHIP, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | SMITH COUNTY, TEXAS |
| | § | |
| STILLWATER NATIONAL BANK AND | § | |
| TRUST COMPANY, SW LOAN OO, L.P., | § | |
| and VICTOR LISSIAK, JR., | § | |
| | § | |
| Defendants. | § | 7th JUDICIAL DISTRICT |

## AMENDED MOTION FOR NEW TRIAL

TO THE HONORABLE JUDGE OF SAID COURT:

Pursuant to Rule 320 of the Texas Rules of Civil Procedure, Victor Lissiak, Jr., ("Lissiak")

Defendant and Counter-Plaintiff in the above cause, within the time allowed, files this Amended

Motion for New Trial ("Motion") and in support shows the court as follows:

### INTRODUCTION

This Court condoned, by the entry of a summary judgement, allowed the assignee, only a

holder, to obtain judgment as if the holder was the original payee and a holder-in-due course.

Moreover the court ignored the denial of execution and receipt of the expressed consideration in

underlying notes not before the Court. The Court had disputed fact issues raised by competent

controverting summary judgment proof, which the Court denied.

This Court should grant a new trial to reconsider its ruling on the disputed fact issues before

the Court.

### A. FACTS AND PROCEDURAL HISTORY

Lissiak submits the following procedural history related to this Motion, to wit:

1. This Cross Claim arises out of a lawsuit filed by J. Randolph Light, Jr. related to the frauds of Stillwater National Bank & Trust Company ("SNB") in connection with a construction and development loan to The Stretford at the Cascades Limited Partnership ("Stretford") which was organized to develop and market a 72 unit high rise condominium residential building in Tyler, Texas ("Project").

2. As part of that financing, SNB required Lissiak to execute as a co-maker three promissory notes - February 20, 2008, in the amount of $1,200,000.00; March 28, 2008 in the amount of $500,000.00; and on July 7, 2008 in the amount of $800,000.00. ("Short-Term Notes.")

3. Thereafter Lissiak was removed from the Project and Stretford and the Short-Term Notes were renewed and consolidated into a new note in the amount of $2,500,000.00 ("Note").

4. Lissiak denies signing the Note, as he was no longer part of the Project or Stretford when it was executed. Moreover, SNB agreed that the Note would be liquidated by new funds advanced to Stretford.

5. SNB never sought collection from Lissiak under the Note. Light in his pleading in this suit brought suit against Lissiak on the Short-Term Notes.

6. SNB renewed and extended the Note numerous times thereafter without Lissiak's knowledge, joinder, or approval. As a result of the renewal of the Short-Term Notes, Lissiak was damaged. The Short-Term Notes were not assigned to SWOO, and they were subsequently cancelled and marked paid in a compromise and settlement agreement between Light, SNB and SWOO.

7. This Court granted a Summary Judgment on February 21, 2014, in the face of substantial disputed fact issues.

*Amended Motion for New Trial of Lissiak, Page 2*

**B. REQUEST FOR NEW TRIAL**: Lissiak seeks a new trial of this action on the following grounds:

1. THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN REFUSING TO RULE ON

OBJECTIONS FILED BY LISSIAK IN THE CASE AND RESPONSIVE TO THE MOTION, TO WIT:

    A. OBJECTIONS TO THE AFFIDAVIT OF BRENT A. BATES;

    B. OBJECTIONS TO THE AFFIDAVIT OF ANSON LANG; AND

    C. OBJECTIONS TO THE AFFIDAVIT OF READ MORTIMER.

*(Specifically erring by the Court granting SWOO a final summary judgment without ruling on these pending motions.)*

1.1. A trial court does not have the discretion to refuse to rule on motions and/or objections filed. *In re Shredder Co.*, 225 S.W.3d 676, 679 (Tex. App–El Paso 2006 orig. proceeding). The trial court must consider and rule on motions and objections within a reasonable time. *In re Kleven*, 100 S.W.3d 643, 644 (Tex. App–Texarkana 2003 orig. proceeding). It is error and abuse of discretion to refuse to rule on a pending motion or objections. *Eli Lilly & Co. v. Marshall*, 829 S.W.2d 157, 158 (Tex. 1992).

1.2. Lissiak hereby re-urges and adopts, as if restated herein in verbatim: (i) the Objections to the Affidavit of Brent Bates filed in the papers of this cause; (ii) the Objections to the Affidavit of Anson Lang filed in the papers of this cause; and (iii) the Objections to the Affidavit of Read Mortimer filed in the papers of this cause.

1.3. Lissiak respectfully requests the Court to grant a new trail and sustain the Objections to the Affidavit of Brent Bates, Objections to the Affidavit of Anson Lang, and Objections to the Affidavit of Read Mortimer.

2. THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN GRANTING THE MOTION FOR

SUMMARY JUDGMENT OF SWOO BECAUSE SWOO DID NOT MEET ITS BURDEN OF PROOF. (*Specifically erring by the Court's granting SWOO a final summary judgment in the amount of $3,047,983.92 with pre-judgment interest in the amount of $1,041.67, and post-interest at the rate of 15% per annum from, February 21, 2014 without competent summary judgment proof.*)

2.1. SWOO did not meet its burden of proof, so the burden did not shift to Lissiak. *M.D. Anderson Hosp. & Tumor Inst. v. Willrich*, 28 S.W.3d 22, 23 (Tex.2000). The burden of proof is on the movant in a summary judgment; therefore, SWOO was required to show there was no genuine issue of material fact and it was entitled to judgment as a matter of law. Rule 166a(c); *Provident Life & Acc. Ins. Co. v. Knott*, 128 S.W.3d 211, 215-16 (Tex.2001).

2.2. Lissiak pled affirmative defenses and provided summary judgment proof in support of his affirmative defenses. *Brownlee v. Brownlee*, 655 S.W.2d 665 S.W2d 111, 112 (Tex.1984). A trial court abuses its discretion if its decision "is arbitrary, unreasonable, and without reference to guiding principles." *Boerschig v. Southwestern Holdings, Inc.*, 322 S.W.3d 752, 762–63 (Tex.App.–El Paso 2010, no pet.); *Goode v. Shoukfeh*, 943 S.W.2d 441, 446 (Tex.1997).

2.3. The trial court's decision in this case in granting the summary judgment was arbitrary, unreasonable, and without reference to guiding principles; moreover, it was over judicial admissions and based solely on conclusory evidence.

2.4. Lissiak respectfully requests the Court to grant a new trial and withdraw the Summary Judgment.

3. THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN AWARDING THE SUMMARY JUDGMENT TO SWOO WITHOUT ALLOWING LISSIAK TO PRESENT EVIDENCE TO THE TRIER OF FACT

TO DETERMINE THE GENUINENESS OF HIS SIGNATURE. (*Specifically erring by the Court's granting SWOO a final summary judgment without regard to the verified denial and summary judgment proof of the genuineness of Lissiak's signature.*)

3.1. Abuse of discretion occurs when a trial court acts "without reference to any guiding rules and principles." *Downer v. Aquamarine Operators, Inc.,* 701 S.W.2d 238, 241–42 (Tex.1985).

3.2. The trial court acted without reference to guiding principles when it awarded the summary judgment to SWOO without reference to, and allowing Lissiak to present evidence to the trier of fact so the jury could determine the genuineness of his signature.

3.3. A trial court abuses its discretion if its decision "is arbitrary, unreasonable, and without reference to guiding principles." *Boerschig,* 322 S.W.3d at 762–63; *Goode,* 943 S.W.2d at 446. The trial court's decision in this case was arbitrary, unreasonable, and without reference to guiding principles; moreover, it was based on conclusory evidence.

3.4. Lissiak respectfully requests the Court to grant a new trial and allow Lissiak to present evidence related to the genuineness of his signature.

4.THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN AWARDING THE SUMMARY JUDGMENT TO SWOO WITHOUT ALLOWING LISSIAK TO PRESENT EVIDENCE TO THE TRIER OF FACT TO DETERMINE WHETHER THERE WAS A FAILURE OF CONSIDERATION. (*Specifically erring by the Court's granting SWOO a final summary judgment in the amount of $3,047,983.92 with pre-judgment interest in the amount of $1,041.67, and post-interest at the rate of 15% per annum from, February 21, 2014 with competent summary judgment proof there was a failure of consideration.*)

4.1. The affirmative defense of failure of consideration defeats a summary judgment

if the nonmovant presents evidence that he did not receive the consideration set forth in the agreement. *McGraw v. Brown Realty Co.,* 195 S.W.3d 271, 276 (Tex.App.–Dallas 2006, no pet.). A failure of consideration may be either partial or total. A total failure of consideration is ground for cancellation or recission of the contract. *See Food Mach. Corp. v. Moon,* 165 S.W.2d 773, 775 (Tex.Civ.App.–Amarillo 1942, no writ).

4.2. Because there is a presumption that the Short-Term Notes were supported by consideration, the burden is on Lissiak to show that none was actually received - there was a failure of consideration. *Maykus v. Tex. Bank & Trust Co. of Dallas,* 550 S.W.2d 396, 398 (Tex.Civ.App.–Dallas 1977, no writ).

4.3. Lissiak executed the Short-Term Notes in his individual capacity and SNB agreed to advance Lissiak and the other makers of those notes, in their individual capacities, the amount of money specifically delineated in each note; however, SNB did not do that. As shown in the summary judgment proof presented by Lissiak, Lissiak received no consideration from advances on the Short-Term Notes.

4.4. There was a total failure of consideration in the Short-Term Notes because SNB did not advance the funds to Lissiak after the Short-Term Notes were executed - a supervening cause that arose after the execution of the Short-Term Notes. *Burges v. Mosley,* 304 S.W.3d 623, 628 (Tex.App.–Tyler 2010, no pet.).

4.5. A trial court abuses its discretion if its decision "is arbitrary, unreasonable, and without reference to guiding principles." *Boerschig,* 322 S.W.3d at 762–63; *Goode,* 943 S.W.2d at 446. The trial court's decision in this case was arbitrary, unreasonable, and without reference to guiding principles; moreover, it was based on conclusory evidence.

4.6. Lissiak respectfully requests the Court to grant a new trial and allow Lissiak to present evidence related to the failure of consideration.

5. THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN AWARDING THE SUMMARY JUDGMENT TO SWOO WITHOUT ALLOWING LISSIAK TO PRESENT EVIDENCE TO THE TRIER OF FACT TO DETERMINE WHETHER THE NOTE SUED UPON WAS A NEW NOTE WHICH LISSIAK DID NOT EXECUTE AND/OR THE RENEWAL NOTES WERE NOTES LISSIAK DID NOT EXECUTE. *(Specifically erring by the Court's granting SWOO a final summary judgment in the amount of $3,047,983.92 with pre-judgment interest in the amount of $1,041.67, and post-interest at the rate of 15% per annum from, February 21, 2014 with competent summary judgment proof that under Tex.Bus. & Com.Code § 3.401(a) Lissiak was not liable.)*

5.1. Tex.Bus. & Com.Code § 3.401(a) provides that "[n]o person is liable on an instrument unless his signature appears thereon."

5.2. An agreement to extend the time of payment of a negotiable instrument constitutes a new contract between the parties. *Priest v. First Mortgage Company of Texas, Inc.,* 659 S.W.2d 869, 871 (Tex .Civ.App.–San Antonio 1983, writ ref'd n.r.e.). The execution of a renewal note is generally treated as a new contract, evidencing the existing debt. *Priest,* 659 S.W.2d at 871; *Braugh v. Corpus Christi Bank & Trust,* 605 S.W.2d 691, 696 (Tex.Civ.App.–Corpus Christi 1980, writ ref'd n.r.e.).

5.3. It is clear from the record shown in the CSA that Light alone renewed and extended the 2008 Note at least three times. It is further disputed whether or not Lissiak was a signatory on the 2008 Note. Whether new notes which Lissiak did sign as a co-maker extinguished the Short-Term Notes, which Lissiak had signed as a co-maker were taken in

lieu of original notes is a jury question. *Hays v. First State Bank of Dell City*, Tex.Civ.App., 377 S.W.2d 210, (Tex.App.–Amarillo, 1964 writ ref., n.r.e.).

5.4. The Short-Term Notes were not transferred to SWOO and they no longer exist - they were deemed to have been marked paid in full and returned to Light in the CSA; therefore, it is a jury question as to whether the 2008 Note was extinguished by the terms of the Omnibus Agreement and the Renewal Notes.

5.5. A trial court abuses its discretion if its decision "is arbitrary, unreasonable, and without reference to guiding principles." *Boerschig,* 322 S.W.3d at 762–63; *Goode,* 943 S.W.2d at 446. The trial court's decision in this case was arbitrary, unreasonable, and without reference to guiding principles; moreover, it was based on conclusory evidence.

5.6. Lissiak respectfully requests the Court to grant a new trial and allow Lissiak to present evidence related to whether the Note sued upon had been cancelled under §3.401 and the cases cited by Lissiak.

6. THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN AWARDING THE SUMMARY JUDGMENT TO SWOO WITHOUT ALLOWING LISSIAK TO PRESENT EVIDENCE TO THE TRIER OF FACT TO DETERMINE WHETHER SWOO WAS PREVENTED FROM COLLECTING UNDER THE NOTE BECAUSE OF THE DOCTRINE OF ESTOPPEL. (*Specifically erring by the Court's granting SWOO a final summary judgment in the amount of $3,047,983.92 with pre-judgment interest in the amount of $1,041.67, and post-interest at the rate of 15% per annum from, February 21, 2014 with competent summary judgment proof that SWOO was estopped by the actions of its predecessor in title.*)

6.1. Promissory estoppel is an equitable doctrine that ordinarily is used defensively to prevent "a party from insisting upon [its] strict legal rights when it would be unjust to

allow [it] to enforce them." *Wheeler v. White*, 398 S.W.2d 93, 96–97 (Tex. 1965); *In re Weekley Homes, L.P.*, 180 S.W.3d 127, 133 (Tex.2005).

6.2. SWOO is estopped by the acts of its predecessor, SNB, as SWOO is not a holder-in-due-course. SNB promised Lissiak and the other co-makers of the Short-Term Notes that if Lissiak and the co-makers would execute the Short-Term Notes in their individual capacities, SNB would: (i) disburse the funds advanced on the Short-Term Notes to the co-makers for their use on the Project as the co-makers deemed, as set forth in the notes; and (ii) SNB would not seek payment from the co-makers, but would pay the Short-Term Notes by rolling the balances due on the Short-Term Notes into the refinancing of the Stretford debt.

6.3. A trial court abuses its discretion if its decision "is arbitrary, unreasonable, and without reference to guiding principles." *Boerschig*, 322 S.W.3d at 762–63; *Goode*, 943 S.W.2d at 446. The trial court's decision in this case was arbitrary, unreasonable, and without reference to guiding principles; moreover, it was based on conclusory evidence.

6.4. Lissiak respectfully requests the Court to grant a new trial and allow Lissiak to present evidence related to whether SWOO is estopped by the actions of SNB from collecting on the Note sued upon.

7. THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN AWARDING ATTORNEYS' FEES TO SWOO. (*Specifically erring by the Court's granting SWOO a final summary judgment awarding attorney's fees in the amount of $3,325.00 without competent summary judgment proof.*)

7.1. Abuse of discretion occurs when a trial court acts "without reference to any guiding rules and principles." *Downer*, 701 S.W.2d at 241–42.

7.2. Whether the fees are reasonable and necessary are questions of fact, whereas whether the fees are equitable and just are questions of law. An abuse of discretion in awarding attorney's fees may be shown if there is insufficient evidence that the fees were reasonable and necessary, or if the award was inequitable or unjust. *Bocquet v. Herring*, 972 S.W.2d 19, 21 (Tex.1998). "Unreasonable fees cannot be awarded, even if the court believed them just . . . ." *Id.*

7.3. A trial court abuses its discretion if its decision "is arbitrary, unreasonable, and without reference to guiding principles." *Boerschig*, 322 S.W.3d at 762–63; *Goode*, 943 S.W.2d at 446. The trial court's decision in this case related to attorney's fees was arbitrary, unreasonable, and without reference to guiding principles; moreover, it was based on conclusory evidence.

7.4. Lissiak respectfully requests the Court to grant a new trial and deny the award of attorney's fees in the Summary Judgment.

8. THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN AWARDING THE SUMMARY JUDGMENT TO SWOO WITHOUT ALLOWING LISSIAK TO PRESENT EVIDENCE TO THE TRIER OF FACT TO DETERMINE WHETHER SWOO WAS PREVENTED FROM COLLECTING UNDER THE NOTE BECAUSE THERE WAS A MATERIAL ALTERATION OF THE 2008 NOTE BY SNB'S BY SNB'S NUMEROUS RENEWALS OF THE 2008 NOTE WITHOUT THE SIGNATURE OF OR KNOWLEDGE AND/OR CONSENT OF LISSIAK; AND SWOO'S RELEASE OF LIGHT FROM LIABILITY ON THE 2008 NOTE. *(Specifically erring by the Court's granting SWOO a final summary judgment in the amount of $3,047,983.92 with pre-judgment interest in the amount of $1,041.67, and post-interest at the rate of 15% per annum from, February 21, 2014 with competent summary judgment proof that was a material alteration in the*

*Note which precludes SWOO from collecting on the Note.)*

8.1. Whether the note was **materially altered by the payment extension is a question of law**. *Austin Hardwoods Inc.,* 917 S.W.2d at 320, 325 (Tex.App.–El Paso 1995, writ denied); *Federal Deposit Insurance Corp. v. Attayi,* 745 S.W.2d 939, 944 (Tex.App.–Houston [1st Dist.] 1988, no writ).

8.2. A material alteration of a contract between a creditor and principal debtor is one that either injures or enhances the risk of injury to the guarantor/co-maker. *United Concrete Pipe Corp. v. Spin-Line Co.,* 430 S.W.2d 360, 365 (Tex.1968); *Attayi,* 745 S.W.2d at 944.

8.3. Material alteration is an affirmative defense. *Bullock v. Kehoe,* 678 S.W.2d 558, 559 (Tex.App.–Houston [14th Dist.] 1984, writ ref'd n.r.e.); *Reliance Ins. Co. v. Dahlstrom Corp.,* 568 S.W.2d 733, 736 (Tex.Civ.App.–Eastland 1978, writ ref'd n.r.e.). The elements of the defense are threefold: (1) a material alteration of the underlying contract; (2) made without a guarantor's/co-maker's consent; (3) which is to his detriment (i.e., is prejudicial to his interest). *Old Colony,* 352 S.W.2d 452, 456 (Tex.1962); *Austin Hardwoods,* 917 S.W.2d at 326; *Attayi,* 745 S.W.2d at 944.

8.5. Lissiak by way of his summary judgment proof and the absolute absence of controverting evidence provided sufficient proof that a material alteration of the underlying contract occurred; without a his consent; and which was prejudicial to his interest; therefore, the trial court abused its discretion in granting a summary judgment.

8.6. A trial court abuses its discretion if its decision "is arbitrary, unreasonable, and without reference to guiding principles." *Boerschig,* 322 S.W.3d at 762–63; *Goode,* 943 S.W.2d at 446. The trial court's decision in this case was arbitrary, unreasonable, and without

reference to guiding principles; moreover, it was based on conclusory evidence and/or absence of controverting summary judgment proof.

8.7. Lissiak respectfully requests the Court to grant a new trial and allow Lissiak to present evidence related to whether there was a material alteration in the Note and thus SWOO is prevented from collecting on the Note.

9.THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN AWARDING THE SUMMARY JUDGMENT TO SWOO WITHOUT ALLOWING LISSIAK TO PRESENT EVIDENCE TO THE TRIER OF FACT TO DETERMINE WHETHER SWOO WAS PREVENTED FROM COLLECTING UNDER THE NOTE BECAUSE TEX.BUS. & COM.C. § 3.605 PROVIDES THAT A HOLDER DISCHARGES A PARTY TO AN INSTRUMENT BY THE DISCHARGE OF A CO-MAKER. (*Specifically erring by the Court's granting SWOO a final summary judgment in the amount of $3,047,983.92 with pre-judgment interest in the amount of $1,041.67, and post-interest at the rate of 15% per annum from, February 21, 2014 with competent summary judgment proof that Lissiak was discharged from liability on the Note by the actions of SNB.*)

9.1. When one party to a contract commits a material breach of that contract, the other party is discharged or excused from further performance. *Mustang Pipeline Co. v. Driver Pipeline Co.,* 134 S .W.3d 195, 196 (Tex.2004). The covenant breached must be part of mutually dependent promises in order to excuse further performance by the non-breaching party. *Hanks v. GAB Bus. Servs., Inc.,* 644 S.W.2d 707, 708 (Tex.1982). Generally, the issue of whether a breach rises to the level of a material breach that will render the contract unenforceable presents a dispute for resolution by the trier of fact. *Hiles v. Arnie & Co., P.C.,* 14–12–00088–CV, 2013 WL 2120658, *8 (Tex.App.–Houston [14th Dist.] Apr. 25, 2013,

pet. filed) (citing *Cont'l Dredging, Inc. v. De–Kaizered, Inc.,* 120 S .W.3d 380, 394–95 (Tex.App.–Texarkana 2003, pet. denied).

9.2. The determination of whether a breach is a material breach of the contract necessarily turns on the facts of each case. *Advance Components, Inc. v. Goodstein,* 608 S.W.2d 737, 739 (Tex.App.–Dallas 1980, writ ref'd n.r.e.) ( *citing Bowen v. Briscoe,* 453 S.W.2d 287, 289 (Tex.1970)). Lissiak provided competent summary judgment proof of the five circumstances significant in determining whether a failure to perform is material set forth by Texas Supreme Court noted : (a) he was deprived of the benefit which he reasonably expected - to collect against Light; (b) Lissiak can not be adequately compensated for the being deprived of his right to collect against Light; (c) SWOO did not suffer forfeiture, it collected $1.5 million from Light; (d) there is no likelihood that SWOO will cure the release of Light; (e)SWOO's behavior does not comport with standards of good faith and fair dealing. *Mustang Pipeline,* 134 S.W.3d at 199.

9.3. Lissiak provided proof of yet another factor relevant to assessing the materiality of the breach is the extent to which it reasonably appears to the injured party that delay may prevent or hinder him in making reasonable substitute arrangements. *Id.* (citing Restatement (Second) of Contracts § 242 (1981)).

9.4. Here, SNB and Light jointly breached the agreement that the Short-Term Notes would be rolled into new debt of the Stretford, they conspired to keep Lissiak liable by the renewal of the Short-Term Notes and the 2008 Notes, instead of rolling that debt into new debt of the Stretford, which Light would have sole liability under his guaranty agreements to SNB - thus the agreement between Lissiak and SNB that the Short-Term Notes would be

paid by the issuance of new debt to another borrower was materially altered and the Short-Term Notes are rendered unenforceable as to Lissiak.

## C. REQUESTS

1. The Court conduct a hearing of the issues presented herein and grant a new trial;

2. The Court reverse its rulings in the Summary Judgment/withdraw the Summary Judgment;

3. The Court grant the relief requested herein; and

4. The Court grant such other and further relief as the Court may deem Lissiak to be justly entitled.

<div align="right">

THE HOLMES LAW FIRM, INC.

By:   /s/robert h. holmes

Robert H. Holmes
State Bar No. 09908400
3401 Beverly Drive
Dallas, Texas 75205
Telephone: 214-748-7172
Facsimile: 214-748-0396
ATTORNEY FOR LISSIAK

</div>

<div align="center">

UNSWORN DECLARATION

</div>

My name is Vistor Lissiak, Jr., my birth date is August 4, 1943, and my business address is 4205 Beltway Drive, Addison, Texas 75001-3704. I declare under the penalty of perjury that the statements contained in the foregoing Motion for New Trial are true and correct.

Executed in Dallas County, Texas on March 12, 2014.

Victor Lissiak, Jr.

<div align="center">

CERTIFICATE OF SERVICE

</div>

I hereby certify that a true and correct copy of the foregoing instrument has been delivered to the attorney of record for SWOO pursuant to Rule 21a and by agreement, by email transmission,

Amended Motion for New Trial of Lissiak, Page 14

on March **12**, 2014, to sakon@flash.net

<div align="right">

/s/robert h. holmes

Robert H. Holmes
</div>

## SUBMISSION DATE

Pursuant to the local rules, this case is set for submission on **April 4**, 2014, being the first Monday after the expiration of fifteen days from the filing of this Amended Motion for new Trial.

<div align="right">

/s/robert h. holmes

Robert H. Holmes
</div>

EXHIBIT "3"

OMNIBUS AGREEMENT

THIS OMNIBUS AGREEMENT (this "Agreement") is entered into effective the 30th day of September, 2008 (the "Effective Date"), by and between THE STRETFORD AT THE CASCADES LIMITED PARTNERSHIP, a Texas limited partnership (the "Borrower"), J. RANDOLPH LIGHT, JR., an individual ("Light"), ~~LAWRENCE G. DON, an individual ("Don"), VICTOR LISSIAK, JR., an individual ("Lissiak"),~~ and STILLWATER NATIONAL BANK AND TRUST COMPANY (the "Lender"). (Light, Don and Lissiak are sometimes hereinafter collectively referred to as the "Principals." The Borrower, Light, ~~Don and Lissiak~~ are sometimes hereinafter collectively referred to as the "Borrowers.") Land ph BRCk

WITNESSETH:

WHEREAS, the Borrower and the Lender previously entered into a Construction Loan Agreement dated August 10, 2005 (the "Original Loan Agreement"), pursuant to which the Lender extended credit to the Borrower in the principal amount of $14,100,000.00 in order to finance the Borrower's acquisition of certain real property in Tyler, Texas, more particularly described on Exhibit "A" attached hereto (the "Real Property"), and the construction of a multi-story residential condominium building and amenities thereon (the "Improvements") (the Real Property and the Improvements are collectively referred to as the "Project"); and

WHEREAS, pursuant to the Original Loan Agreement, the Borrower executed and delivered to the Lender: (i) a Promissory Note in the principal face amount of $14,100,000.00 signed by the Borrower in favor of the Lender as amended by an Amended and Restated Promissory Note dated June 19, 2008 and a Deferral Agreement dated effective as of August 10, 2008 (the "First Note"); (ii) a Deed of Trust, Assignment of Rents and Security Agreement dated August 10, 2005 (the "First Deed of Trust"); and (iii) an Assignment of Lessor's Interest in Rents and Lease Agreements dated August 10, 2005 (the "Original Assignment of Rents"); and

WHEREAS, on April 12, 2007, the Lender extended a short term loan to the Borrower in the amount of $1,000,000.00 to provide additional financing in connection with the Project, as evidenced by a Promissory Note dated April 12, 2007, in the principal face amount of $1,000,000.00 signed by the Borrower in favor of the Lender (the "Bridge Note"); and

WHEREAS, on June 11, 2007, the Borrower and the Lender entered into a Supplemental Construction Loan Agreement (the "Supplemental Loan Agreement") pursuant to which the Lender extended additional credit to the Borrower in the principal amount of $8,273,000.00 in order to: (i) finance cost overruns and additional finish-out in connection with the Project; (ii) expand the Project to include two additional floors for a total of fourteen floors (the "Floors") and eighty-two units (the "Units"); and (iii) satisfy

the Bridge Note. (The Original Loan Agreement and the Supplemental Loan Agreement are collectively referred to as the "Prior Loan Agreements."); and

WHEREAS, pursuant to the Supplemental Loan Agreement, the Borrower executed and delivered to the Lender (i) a Promissory Note in the principal face amount of $8,273,000.00 as amended by an Amended and Restated Promissory Note dated June 19, 2008 and a Deferral Agreement dated effective as of August 10, 2008 (the "Second Note"); (ii) a Supplemental Deed of Trust, Assignment of Rents and Security Agreement dated June 11, 2007 (the "Second Deed of Trust"); and (ii) a Supplemental Assignment of Lessor's Interest in Rents and Lease Agreements dated June 11, 2007 (the "Second Assignment of Rents"). (The First Deed of Trust and the Second Deed of Trust are collectively referred to as the "Prior Deeds of Trust." The First Assignment of Rents and the Second Assignment of Rents are collectively referred to as the "Prior Assignments of Rents."); and

WHEREAS, pursuant to the Original Loan Agreement, Light and Carl Black each executed and delivered to the Lender a Limited Guaranty Agreement dated August 10, 2005 (Light and Black are collectively referred to as the "Guarantors"). To guarantee the Bridge Note, Light and Black executed and delivered Limited Guaranty Agreements dated April 12, 2007. Pursuant to the Supplemental Loan Agreement, the Guarantors each executed and delivered to the Lender a Limited Guaranty Agreement dated June 11, 2007 (the guaranties executed by Light are hereafter referred to as the "Light Guaranties" and the guaranties executed by Carl Black are hereafter referred to as the "Black Guaranties"); and

WHEREAS, the First Note and the Second Note each matured on September 30, 2008, and the outstanding and unpaid principal and interest thereunder as of the Effective Date is:

| Note | Date | Original Principal | Current Principal | Interest | Total |
|------|------|--------------------|-------------------|----------|-------|
| First Note | 08/10/05 | $14,100,000.00 | $9,997,211.03 | 102,649.18 | 10,099,860.21 |
| Second Note | 06/11/07 | $8,273,000.00 | $8,273,000.00 | 67,263.77 | 8,340,263.77 |

WHEREAS, on February 20, 2008, the Lender extended credit to the Principals in the principal amount of $1,200,000.00 (the "First Principals Loan") as evidenced by a Promissory Note dated February 20, 2008, in the principal face amount of $1,200,000.00 signed by the Principals in favor of the Lender and modified by that Amended and Restated Promissory Note dated June 19, 2008, in the principal face amount of $1,200,000.00 and that certain Deferral Agreement dated effective July 31, 2008 (the "First Principals Note") to enable the Principals to extend a loan to the Borrower for additional construction costs in connection with the Project and the payment of interest on the First Note and the Second Note; and

WHEREAS, on March 28, 2008, the Lender extended additional credit to the Principals in the principal amount of $500,000.00 (the "Second Principals Loan") as

-2-

evidenced by a Promissory Note dated March 28, 2008, in the principal face amount of $500,000.00 signed by the Principals in favor of the Lender as modified by that certain Amended and Restated Promissory Note dated June 19, 2008, in the principal face amount of $500,000.00 and that certain Deferral Agreement dated effective July 31, 2008 (the "Second Principals Note") to enable the Principals to extend a loan to the Borrower for additional construction costs in connection with the Project; and

WHEREAS, on July 7, 2008, the Lender extended additional credit to the Principals in the amount of $800,000.00 (the "Third Principals Loan") as evidenced by a Promissory Note dated July 7, 2008, in the principal face amount of $800,000.00 signed by the Principals in favor of the Lender and that certain Deferral Agreement dated effective July 31, 2008 (the "Third Principals Note") to enable the Principals to extend a loan to the Borrower for the satisfaction of trade payables, and the payment of operating expenses and additional construction costs in connection with the Project.  (The First Principals Note, the Second Principals Note, and the Third Principals Note are collectively referred to as the "Principals Notes."  The First Principals Loan, the Second Principals Loan and the Third Principals Loan are collectively referred to as the "Principals Loans."); and

WHEREAS, the outstanding and unpaid principal and interest of the Principals Notes as of the Effective Date is:

| Note | Date | Original Principal | Current Principal | Interest | Total |
|------|------|--------------------|-------------------|----------|-------|
| First Principals Note | 06/19/08 | $1,200,000.00 | $1,200,000.00 | | 1,200,000.00 |
| Second Principals Note | 06/19/08 | $ 500,000.00 | $ 500,000.00 | | 500,000.00 |
| Third Principals Note | 07/07/08 | $ 800,000.00 | $ 800,000.00 | | 800,000.00 |

WHEREAS, the Project has not been completed and the Borrowers have requested that the Lender (i) reinstate, renew and modify the obligations evidenced by the First Note, the Second Note and the Principals Notes; (ii) extend additional credit to Light which Light will contribute to the Borrower to fund additional construction costs in connection with the Project; (iii) extend additional credit to the Borrower to finance additional construction costs in connection with the Project (as hereafter defined); and (iv) accept a deed in lieu of foreclosure covering Floors 13 and 14 of the Project ("Floors 13 and 14") in partial satisfaction of the Second Note.  (References to the "Project" hereafter will exclude Floors 13 and 14, except to the extent such floors or units on such floors are repurchased by the Borrower.); and

NOW, THEREFORE, IN CONSIDERATION of the recitals set forth above which constitute material terms and conditions hereof, and the mutual covenants contained herein, it is agreed as follows:

- 3 -

1.   **LENDING STRUCTURE**. Subject to the terms and conditions hereinafter set forth, the Parties agree as follows:

1.1.   Amendment and Restatement of Prior Loan Agreements. The Parties acknowledge and agree that the Prior Loan Agreements are hereby amended and restated in their entirety by the terms and conditions of this Agreement, but that the liens and security interests previously granted to secure the obligations of the Borrower to the Lender shall continue unabated and uninterrupted hereby.

1.2.   Reinstatement and Renewal of the First Note and Second Note. The Lender agrees to extend credit to the Borrower in the aggregate principal amount of $18,440,123.98 (the "Renewal Loan") in order to reinstate and renew the First Note and the Second Note, which extension of credit will be upon the terms and conditions set forth herein and as evidenced by the Amended First Note (as hereafter defined) and the Amended Second Note (as hereafter defined).

1.3.   Loan to Light. The Lender agrees to lend to Light up to principal amount of $2,500,000.00 (the "Light Loan") upon the terms and conditions set forth herein and as evidenced by the Light Note (as hereafter defined), which Light Loan shall be used by Light for the sole purpose of extending a loan to the Borrower in the principal amount of $2,500,000.00 (the "Light/Borrower Loan") for use by the Borrower for the sole purpose of financing the continued construction of the Project in accordance with the Plans and Specifications (as hereafter defined) and the Borrower Construction Budget attached hereto as Exhibit "B" (the "Borrower's Budget").

1.4.   Loan to Borrower. The Lender agrees to lend to the Borrower from time to time up to the principal amount of $2,575,000.00 (the "Third Loan") upon the terms and conditions set forth herein and as evidenced by the Third Note (as hereafter defined) which Third Loan shall be used by the Borrower for the sole purpose of financing the continued construction of the Project in accordance with the Plans and Specifications (as hereafter defined) and the Borrower's Budget.

1.5.   Consolidation, Reinstatement and Renewal of Principals Notes. The Lender agrees to extend credit to the Principals in the aggregate principal amount of $2,500,000.00 (the "Consolidated Principals Loan") in order to consolidate, reinstate and renew the Principals Notes, which extension of credit will be upon the terms and conditions set forth herein and as evidenced by the Consolidated Principals Note (as hereafter defined).

1.6.   Earned Interest Waiver. If: (i) the Project is completed and certificates of occupancy are duly issued therefore on or before April 30, 2008; and (ii) forty-two additional Units on Floors 6 - 12 are sold before September 30,

- 4 -

2009, and the Lender has received the Net Sales Proceeds from such sales, Lender shall on September 30, 2009, waive the interest accrued from August 8, 2008 through September 30, 2009 on the Borrower's Notes (defined below).

2. **PROMISSORY NOTES**. The extensions of credit contemplated hereby will be evidenced as follows:

2.1. Amended First Note and Amended Second Note. The Renewal Loan will be evidenced by (i) an Amended and Restated Promissory Note of even effective date herewith in the principal face amount of $9,997,211.03, in form and substance satisfactory to the Lender (the "Amended First Note"); and (ii) an Amended and Restated Promissory Note of even effective date herewith in the principal face amount of $8,273,000.00, in form and substance satisfactory to the Lender (the "Amended Second Note"). In addition to the specific terms and conditions set forth therein, the Amended First Note and the Amended Second Note shall have the following material terms and conditions:

2.1.1. Interest Rate. The Amended First Note and the Amended Second Note shall bear interest at the interest rate equal to the Prime Rate plus one percent (1.0%) per annum, adjusted on each day on which a change in the Prime Rate occurs; provided that the interest rate shall never be less than six percent (6.0%) per annum (the "Interest Rate"). "Prime Rate means the prime rate as published in the "Money Rates" section of the *Wall Street Journal*, which rate is not necessarily the lowest rate of interest charged by the Lender. All interest on the Amended First Note and the Amended Second Note shall be calculated for the actual number of days elapsed at a per diem charge based on a year consisting of 360 days.

2.1.2. Payment. In addition to the receipt and application by the Lender of Net Sales Proceeds (as hereafter defined), interest on the Amended First Note and the Amended Second Note will be payable monthly commencing on the date which is twelve (12) months after the Effective Date and continuing monthly on the same day of each month thereafter until the Maturity Date (as hereafter defined).

2.1.3. Maturity Date. The entire unpaid principal balances of the Amended First Note and the Amended Second Note, together with all accrued interest owing thereon, shall be due and payable on March 31, 2010 (the "Maturity Date").

2.2.    Third Note. The Borrower Third Loan will be evidenced by a Promissory Note of even effective date herewith in the principal face amount of $2,575,000.00, in form and substance satisfactory to the Lender (the "Third Note"). In addition to the specific terms and conditions set forth therein, the Third Note shall have the following material terms and conditions:

2.2.1.  Interest Rate. The Third Note shall bear interest at the Interest Rate with all interest thereon calculated for the actual number of days elapsed at a per diem change based on a year consisting of 360 days.

2.2.2.  Payment. In addition to the receipt and application by the Lender of Net Sales Proceeds (as hereafter defined), interest on the Third Note will be payable monthly commencing on the date which is twelve (12) months after the effective date hereof and continuing monthly on the same day of each month thereafter until the Maturity Date.

2.2.3.  Maturity Date. The entire unpaid principal balance of the Third Note, together with all accrued interest owing thereon, shall be due and payable on the Maturity Date.

(The First Note, the Second Note and the Third Note are sometimes referred to as the "Borrower Notes.")

2.3.    Light Note. The Light Loan will be evidenced by a Promissory Note of even effective date herewith in the principal face amount of $2,500,000.00 in form and substance satisfactory to the Lender (the "Light Note"). In addition to the specific terms and conditions set forth therein, the Light Note shall have the following material terms and conditions:

2.3.1.  Interest Rate. The Light Note shall bear interest at the Interest Rate with all interest thereon calculated for the actual number of days elapsed at a per diem change based on a year consisting of 360 days.

2.3.2.  Maturity. The entire unpaid principal balance of the Light Note, together with all accrued interest owing thereon, shall be due and payable on the earlier of (i) March 30, 2010 or (ii) ten business days prior to the expiration date of the letter of credit issued to secure the Light Note as set forth in ¶ 4.12 below.

2.3.3.  Payment. Interest on the Light Note will be payable quarterly commencing on December 30, 2008, and on the 30th day of each third month thereafter.

2.4.   Consolidated Principals Note.   The Consolidated Principals Loan will be evidenced by an Amended and Restated Consolidation and Renewal Promissory Note of even effective date herewith in the principal face amount of $2,500,000.00 in form and substance satisfactory to the Lender (the "Consolidated Principals Note") (the Amended First Note, the Amended Second Note, the Light Note, the Third Note, and the Consolidated Principals Note are sometimes hereinafter collectively referred to as the "Notes").   In addition to the specific terms and conditions set forth therein, the Consolidated Principals Note shall have the following material terms and conditions:

2.4.1.   Interest Rate.   The Consolidated Principals Note shall bear interest at the Interest Rate with all interest thereon calculated for the actual number of days elapsed at a per diem change based on a year consisting of 360 days.

2.4.2.   Payment.   Interest on the Consolidated Principals Note will be payable quarterly commencing on December 30, 2008, and on the same day of each third month thereafter until the Maturity Date.

2.4.3.   Maturity Date.   The entire unpaid principal balance of the Consolidated Principals Note, together with all accrued interest owing thereon, shall be due and payable on the Maturity Date.

3.   **RECOURSE**.   The Notes will be full recourse to the Borrowers and the Principals, as applicable, and to the Guarantors as set forth in the Light Guaranties and the Black Guaranties.

4.   **COLLATERAL SECURITY**.   The performance of all covenants and agreements contained in this Agreement and in the other documents executed or delivered as a part of this transaction and the payment of the Notes and all renewals, amendments and modifications thereof shall be secured as follows:

4.1.   Prior Deeds of Trust.   The Prior Deeds of Trust shall remain in full force and effect, which shall be amended by a Modification and Amendment to Deeds of Trust for the purpose of conforming the legal descriptions therein to the condominium regime covering the Property.

4.2.   Third Deed of Trust.   The Borrower shall grant Lender a third priority Deed of Trust and Security Agreement covering the Project (the "Third Deed of Trust") and a UCC Financing Statement and a Fixture Filing Financing Statement (the "Financing Statements") in order to further secure the Light Note and the Third Note.   (The Prior Deeds of Trust and

- 7 -

the Third Deed of Trust, are collectively referred to as the "Deeds of Trust")

4.3. **Prior Assignments.** The First Note and the Second Note shall continue to be secured by the Prior Assignments of Rents, which shall be amended by a Modification and Amendment to Assignments for the purpose of conforming the legal descriptions therein to the condominium regime covering the Property.

4.4. **Third Assignment of Purchase and Sale Agreements and Sales Proceeds.** The Borrower shall execute a third Assignment of Purchase and Sale Agreements and Sales Proceeds assigning to Lender all rights to sales agreements and other contracts relating to the Project (the "Third Assignment of Proceeds") (the Prior Assignments of Rents, as amended by the First Amendment to Prior Assignments, and the Third Assignment of Proceeds, are collectively referred to as the "Assignments of Proceeds") in order to further secure the Light Note and the Third Note.

4.5. **Assignments of Construction Contract.** The prior Assignments of Construction Contract previously executed by the Borrower in connection with the Prior Loan Agreements assigning its interest under all agreements entered into between Borrower and third parties for the development and construction of the Project (the "Construction Contract Assignment") are hereby amended in order to further secure the Light Note and the Third Note.

4.6. **Assignments of Architectural Agreement.** The prior Assignments of Contract between Owner and Architect previously executed by the Borrower in connection with the Prior Loan Agreements assigning its interest in all architectural agreements and engineering agreements (the "Architectural Assignments") are hereby amended in order to further secure the Light Note and the Third Note.

4.7. **Assignment of Plans and Specifications.** The prior Assignments of Plans and Specifications and Consent previously executed by the Borrower in connection with the Prior Loan Agreements assigning the Plans and Specifications (as hereinafter defined) (the "Assignments of Plans") are hereby amended in order to further secure the Light Note and the Third Note.

4.8. **Existing Limited Guaranty Agreements.** The First Note and the Second Note shall continue to be guaranteed by the Light Guaranties and the Black Guaranties.

4.9. **New Guaranty Agreement.** Light shall execute and deliver to Lender a Guaranty Agreement (the "New Guaranty Agreement"), under which

Light guarantees the full and faithful payment and performance by the Borrower under the Third Note.

4.10.  Environmental Indemnification. The prior Environmental Indemnification Agreements previously executed by the Borrower in connection with the Prior Loan Agreements (the "Environmental Indemnities") are hereby amended in order to further secure the Light Note and the Third Note.

4.11.  Building Laws Indemnification. The prior Building Laws Indemnification Agreements previously executed by the Borrower in connection with the Prior Loan Agreements (the "Building Laws Indemnities") are hereby amended in order to further secure the Light Note and the Third Note.

4.12.  Additional Security. In order to secure the Light Note and the Consolidated Principals Note, Light, ~~Don and Lissiak~~ will execute and deliver to Lender at Closing the Ownership Interest Pledge Agreement. In addition, Light shall within 12 months of Closing cause to be issued in favor of the Lender a Letter of Credit in the stated amount of $1,500,000.00 to be issued by a financial institution acceptable to the Lender and in form and substance satisfactory to the Lender (the "Letter of Credit") as further security for the Light Night. In the alternative to the Letter of Credit, Light or the Borrower may secure the Light Note with substitute collateral having a readily determinable liquidated value of not less than $1,500,000.00, in the sole determination of Lender.

4.13.  Security Agreement. The Borrower shall execute a Security Agreement granting the Lender a first priority security interest in the Account (as hereafter defined) which Security Agreement will be in form and substance satisfactory to the Lender (the "Account Security Agreement").

4.14.  Assignment of Principals/Borrower Note. In order to secure the Consolidated Principals Note, the Principals shall assign to the Lender the Principals/Borrower Note (as hereafter defined) and the Principals Deed of Trust (as hereafter defined).

5.  **DEED-IN-LIEU.** On the Effective Date, the Borrower shall execute and deliver to Lender's nominee, CRK Stretford, LLC, an Oklahoma limited liability company ("CRK"), a deed in lieu of foreclosure conveying Floors 13 and 14 to CRK (the "Deed") for payment of $2,450,000 which all parties agree is fair and reasonable consideration. Lender's payment shall be made by a credit by the Lender on the Effective Date to the principal face amount of the Second Note.

6.  **REPRESENTATIONS AND WARRANTIES.** The Borrowers represent and warrant that:

6.1.  Borrower's Existence. The Borrower is, and will continue to be a limited partnership, duly organized and validly existing under the laws of the State

of Texas; the Borrower has adequate power, authority and legal right to own and hold the Real Property and the Project when completed; the Borrower is duly authorized, qualified and licensed under all applicable laws, regulations, ordinances and orders of public authorities to carry on its business in the development, construction, equipping and operation of the Project, and is duly authorized, qualified and licensed under all applicable laws, regulations, ordinances and orders of public authorities to carry on its business in the management, operation and control of the Project as a residential high-rise condominium building; the Borrower has adequate authority, power and legal right to enter into and carry out the provisions of this Agreement and the other documents contemplated herein and to consummate the transactions contemplated hereby.

6.2. Litigation. To the current and actual knowledge of the Borrowers, there are no actions, suits proceedings or investigations pending, or threatened against any of the Borrowers, or any of the partners of the Borrower, which, if adversely determined, would adversely affect the Borrowers or the Project or impair the ability of the Borrower to carry on its business substantially as now conducted or contemplated or result in any substantial liability not adequately covered by insurance.

6.3. No Default. The making and performance by the Borrowers of this Agreement or the documents to be executed in connection herewith will not violate any provision or constitute a default under any indenture, agreement or instrument to which the Borrower or the Project is bound or affected.

6.4. Ownership. The Borrower owns good marketable fee title to the Real Property, and Borrower has good title to all of its other properties and assets, real or personal, tangible or intangible, which are or are to be constructed, owned, installed, or used in connection with the Project, except for those title exceptions reflected on (a) the existing mortgagee's title insurance policy previously issued by Lawyers Title Insurance Corporation insuring the first priority status of the First Deed of Trust; (b) the existing mortgagee's title insurance policy previously issued by Lawyers Title Insurance Corporation insuring the second priority status of the Supplemental Deed of Trust; and (c) the mortgagee's title insurance policy issued by Lawyers Title Insurance Corporation insuring the third priority status of the Third Deed of Trust, which are approved by the Lender, and none of such properties or assets is or will be subject to any mortgage, pledge, security interest, encumbrance, lien or charge of any kind excluding only: (i) liens for property taxes not yet due; (ii) encumbrances in favor of the Lender; and (iii) the subordinated indebtedness evidenced by the Principals/Borrower Note (as hereafter defined).

6.5.   Financial Statements.   The Borrowers' financial statements heretofore delivered or to be delivered hereafter to Lender are and will be true and correct in all respects, have been prepared in accordance with generally accepted accounting principles consistently applied, and fully and accurately present the financial condition reflected therein without material change since the dates thereof.

6.6.   Full Disclosure.   To the current and actual knowledge of the Borrowers, neither this Agreement, nor any statements or documents referred to herein or delivered by the Borrowers pursuant to this Agreement, contain any untrue statement or omits to state a material fact necessary to make the statement herein or therein not misleading.

6.7.   Survival of Representations and Warranties.   All covenants, representations and warranties made herein and under all documents executed pursuant hereto shall survive the making of the loans hereunder and the delivery of the Notes and other instruments executed in connection therewith until complete repayment of the Notes and all renewals and modifications thereof, and all other indebtedness of Borrowers to Lender under the terms of this Agreement.   Each request by Borrowers for an advance hereunder shall constitute an affirmation that the foregoing representations and warranties remain true and correct as of the date of such request.

7.   **CONDITIONS PRECEDENT TO LOAN**.   Borrowers shall perform the following covenants and deliver or cause to be delivered to the Lender the following items, all of which will be in form and substance reasonably satisfactory to Lender, and, where necessary, duly executed and acknowledged, all of which are conditions precedent hereunder:

7.1.   Loan Documents.   This Agreement, the Notes, the Deeds of Trust, the First Amendment to DOT, the Construction Contract Assignments, the Assignments of Proceeds, the First Amendment to Prior Assignments, the Security Agreement, the Letter of Credit, the Subordination Agreement (as hereafter defined), the Assignments of Plans, the Light Guaranties, the Black Guaranties, the New Guaranty Agreement, the Environmental Indemnity, the Building Laws Indemnity, the Financing Statements, and all other documents executed pursuant thereto or in connection therewith as might be required by the Lender (all of the foregoing are referred to herein as the "Loan Documents") shall have been duly authorized, issued, executed, and delivered to Lender.

7.2.   Authority.   Borrower shall have delivered to Lender a Certificate of Limited Partnership Authority for the Borrower and a Certificate from the General Partner, authorizing the execution of all of the Loan Documents, as applicable, and all other documents evidencing the organization,

existence and good sta ling of the Borrower and General Partner shall have been delivered to ι ι Lender.

7.3.    Title.  Borrower shal lave the Title Insurer (as hereinafter defined) deliver (i) endorsem ts for the existing policies of title insurance insuring the First Deed ⁀Trust and the Supplemental Deed of Trust; and (ii) a title commitmen or a $2,575,000.00 mortgagee's title insurance policy covering the P ject shall have been issued to the Lender by Independence Title C npany, as agent for Lawyers Title Insurance Corporation (the "Title ιsurer") satisfactory to the Lender reflecting only those title exceptions ιρproved by the Lender and providing for the following coverages ι endorsements:   TLTA T-2 mortgage title insurance policy, with ɩndard pending disbursement exception coverage, plus endorsements T-1 T-33, T-39, including encroachments as to the other property and as tc ɩsements and rights-of-way on the Real Property, and the removal of any editors' rights exclusion, if available.

7.4.    Insurance.  Borrower w ɩ continue to maintain with the Lender throughout the term of the loan o ɩinal or certified copies of policies of insurance, premiums prepaid, wiι ι insurance companies satisfactory to Lender, in such amounts and agaι ιt such risks as shall be required by the Lender, including, but not limit to, the following:

7.4.1.    appropriate "Bι Jers Risk," worker's compensation and any other insurance carrɩ by Borrower's general contractor against liability arising from co. ruction of the Improvements;

7.4.2.    comprehensive ιblic liability insurance which designates Lender as an additional ɩsured;

7.4.3.    property damaɡ insurance applicable to the Project for 100% of full replacemen cost of the Project, exclusive of the foundation, without deduct ɩn for depreciation, and with a replacement cost endorsement, ɩ ich insurance designates the Lender as a loss payee (i.e., "Sp ιal Form" all-risk property insurance); and

7.4.4.    if the Project is ɩ a flood plain which requires the Lender to have insurance there ι, the Borrower will maintain flood insurance in an amount and th a company satisfactory to Lender; and

Borrower will also ca ɩe Borrower's insurance agent to provide Lender with a letter certifying at all insurance requirements set forth herein have been satisfied and certɩ ɩ other matters as may be required by Lender. All insurance policies shaιl name the Borrower and Lender as insureds and loss payees, as their ɩ ɩpective interests may appear.  Upon a Default, Borrower will be re ɩired to make monthly deposits for insurance premiums equal to on welfth (1/12) of the annual charges as estimated

- 12 -

by Lender to accumula: : with Lender sufficient funds to pay the insurance premiums thirty (30) d. ys prior to their due date, such deposits to be held by Lender without inter st.

7.5. Deed. The Borrower sl all have executed and delivered to CRK the Deed.

7.6. Financial Statements. The current financial statements of the Borrowers shall have been deliver d to and approved by Lender.

7.7. Condition of Project. nder shall have been provided with satisfactory evidence that all repre ntations and warranties made in this Agreement continue to be true an accurate, and no conditions exist which would cause a default under th s Agreement or any of the Loan Documents.

7.8. Organization and Management. The ownership structure and organizational docume.is of Tyler-Stretford General Partner, LLC, a Texas limited liability company, the General Partner of the Borrower (the "General Partner") sha l be duly modified and amended to provide that Light shall be in exclu ve and irrevocable control of the General Partner. Light shall establish th future role, if any, of Don, Lissiak and/or Cindy Featherstone ("Feathe: tune") in connection with the Project and each will, if applicable, repc t directly to Light.

7.9. Opinion of Borrower's Counsel. An opinion from Borrower's counsel to the Lender shall have b en delivered to the Lender which is satisfactory to the Lender in all respec ts, which opinion shall include, but not be limited to: (i) due authorizaticn and enforceability of the Loan Documents; (ii) that the change in conti ol of the General Partner of the Borrower vesting control in Light is bii Jing and enforceable against all members of the General Partner and in : vocable absent the consent of Light; and (iii) that the limited partners of 1 Borrower may not alter the ownership or control of the General Partne of the Borrower absent the consent of all of the members of the Gener: Partner of the Borrower.

7.10. Inspector. The agr ment among the Lender, the Lender's Inspector, ~~FAS Construction Management, Inc.~~ ("Lender's Inspector"), the Borrower, and the Bor ower's contractor, ~~Messer Group, Inc.~~ shall have been ratified and reaffi ned. *New* Stretford Project, LLC

7.11. Project Manager. Th Borrower shall have employed Greg Williams ("Williams") as the P ject Manager to manage the completion of the Project.

7.12. Plans and Specificatio : The final plans and specifications relating to the Project initialed by t Borrower, the Borrower's Architect, and the Borrower's general co tractor (the "Plans and Specifications") shall have been delivered to a d approved by the Lender. The Plans and

- 13 -

Specifications shall no be changed in any material respect without the prior written consent of he Lender.

7.13. Construction Budget. All advances requested by the Borrower and made by the Lender under the Third Note and the Light Note shall only be for up to the itemized amounts as set forth on the Borrower's Budget.

7.14. Site Inspections. The Project shall have been inspected and approved by the Lender.

7.15. Termination of Pending Contracts. Any existing and unclosed contracts between the Borrower and any third party for or relating to the sale of a Unit, including without limitation options, listing agreements, commission agreements, deal sheets and letters of intent ("Contracts"), shall have been terminated. No further Contracts will be entered into between the Borrower and any third party, including Featherstone, without the prior written approval of the Lender.

7.16. Principals/Borrower Loans; Subordination. Each prior or concurrent loan or other extension of credit by one or more of the Principals to the Borrower, including but not limited to the Light/Borrower Loan (collectively, the "Principals/Borrower Loans"), shall be documented in form and substance satisfactory to the Lender (the "Principals/Borrower Note"). The Borrower may execute and deliver to the Principals a deed of trust to secure that portion of the Principals/Borrower Note representing credit extended by the Principals to the Borrower since November 1, 2007 (the "Principals Deed of Trust"), which Principals Deed of Trust shall be (i) inferior in priority and payment to the Deeds of Trust, the Assignments of Rents and Leases, the Security Agreement, and any other instrument securing the Notes; and (ii) in form and substance satisfactory to the Lender. The Principals shall execute and deliver to the Lender a Subordination Agreement in form and substance satisfactory to the Lender (the "Subordination Agreement") subordinating the Principals/Borrower Loans and any future extension of credit by any of the Principals to the Borrower to the prior payment of all indebtedness of the Borrowers to the Lender.

7.17. Account. A restricted account shall have been established with the Lender into which the proceeds of the Light Note shall be deposited (the "Account").

7.18. Amendment of Condo Declarations. The Borrower and CRK shall have entered into an amendment to the existing Condominium Declarations covering the Project in form and substance satisfactory to the Borrower and the Lender.

7.19. <u>Depletion of Account</u>. The Account shall have been fully depleted in the payment of approved costs in connection with the construction of the Project and in accordance with the Borrower's Budget and the conditions and requirements set forth in Section 9 hereof.

7.20. <u>Advance Conditions</u>. Prior to the funding of any advance under the Light Loan or the Borrower Third Loan, all of the conditions and requirements set forth in Section 9 hereof must also be satisfied and performed.

8.   **COVENANTS**.   Until payment in full of the Notes and all renewals and modifications thereof, and performance of all obligations owing to Lender under this Agreement and the instruments executed pursuant hereto, the Borrowers covenant and agree as follows:

8.1. <u>Performance of Obligations</u>. The Borrowers will promptly and punctually perform all of the obligations hereunder and under the Loan Documents, as applicable, and under all other instruments executed or delivered pursuant thereto, and under the terms of any other contract or agreement entered into by the Borrower in connection with the construction of the Project.

8.2. <u>Information</u>. The Borrowers will promptly furnish to the Lender all reasonably requested information concerning the Project, the progress of the construction of the Project and the financial status of the Borrowers, and shall furnish on request updated budgets and disbursement schedules relating to the Project. Commencing on October 31, 2008, the Borrower shall provide Lender with Borrower prepared quarterly financial statements covering the Project within thirty (30) days after the end of each quarter for the immediately preceding quarter. In addition, the Borrower will provide the Lender with Borrower prepared financial statements covering the operation of the Project (consisting of a balance sheet, income statement, statement of changes in financial position, and such other financial statements as may be required by the Lender) within one hundred twenty (120) days after the end of each calendar year, commencing with the year ending December 31, 2008. The Borrower will also provide the Lender with copies of Borrower's tax returns for each of the Borrower's taxable years within fifteen (15) days after the filing thereof.

8.3. <u>Litigation</u>. The Borrowers will promptly furnish to the Lender written notice of any litigation in which any of the Borrowers, is involved and litigation affecting the Project.

8.4. <u>Construction Standards</u>. The Borrower will construct the Project in compliance with the Plans and Specifications approved by the Lender, and in material compliance with applicable ordinances, building codes, zoning

regulations and other governmental requirements, including but not limited to the Americans With Disabilities Act, and free from encroachment upon building lines, easements and property lines, except as noted in and approved by Lender in the title policy issued by the Title Insurer.

8.5. No Liens. The Borrower shall not create, assume or suffer to exist any mortgage, pledge, lien, charge or encumbrance on the Project, excluding only encumbrances to the Lender contemplated by this Agreement and the Principals Deed of Trust.

8.6. Use of Loan Proceeds. The Borrowers shall not permit any funds advanced to Borrower under this Agreement to be used for any items other than those disclosed in the Borrower's Budget or expenses approved by the Lender in writing, and no advances will be requested by, or made to, the Borrowers for the reimbursement of costs previously incurred by the Borrower in connection with the acquisition, development or construction of the Project.

8.7. Estoppel Certificates. On request by Lender, either verbally or in writing, Borrowers shall furnish promptly a written statement or affidavit, in such form as shall be satisfactory to Lender, stating the unpaid balances of the Notes and that there are no offsets or defenses against full payment of the Notes, or if there are such offsets and defenses, specifying the same.

8.8. Payment of Taxes. All taxes, assessments and governmental charges or levies imposed on the Borrower or on Borrower's assets, income or profits will be paid prior to the date on which penalties attach thereto. Upon a Default and on Lender's request, Borrower will be required to make monthly deposits for real estate taxes, assessments and similar charges equal to one-twelfth (1/12) of the annual charges estimated by Lender or accumulate authorized funds with Lender to pay such impositions thirty (30) days prior to their due dates, such deposits to be held by Lender without interest being payable to Borrower.

8.9. Tax on Indebtedness. The Borrower hereby agrees to pay any and all taxes which may be levied or assessed directly or indirectly on the Notes, the Deeds of Trust, any of the Loan Documents, or the debt secured thereby, without regard to any law which may be hereafter enacted imposing payment of the whole or any part thereof upon the Lender, its successors or assigns; and, upon violation of this Agreement, or upon the rendering by any court of competent jurisdiction of a decision that such an agreement by a Borrower is legally inoperative, or if the rate of said tax, when added to the rate of interest provided for in the Notes, shall exceed the then legal rate of interest, then, and in any such event, the debt hereby secured, without deduction, shall, at the option of the Lender, become immediately due and payable, anything contained in the Loan Documents

notwithstanding; provided that the Borrower's obligation to pay such taxes shall exclude United States or any state's franchise taxes and United States taxes imposed on or measured by Lender's net income or net receipts. The additional amounts which may become due and payable hereunder shall be regarded as interest, and shall be part of the debt secured by the Deeds of Trust, and this Agreement.

8.10. <u>Books and Records</u>. The Borrower will keep and maintain accurate books and records of accounts in regard to the Project, which will be kept in accordance with sound accounting practices consistently applied.

8.11. <u>Lender's Access</u>. Borrower will at all reasonable times and as often as Lender may reasonably request, permit any of Lender's officers and employees, and any authorized representative of Lender, to visit and inspect the Project, to enter upon the The Project, during and after construction, to inspect the construction progress of the Project and all materials to be used in the construction of the Project, to examine the current Plans and Specifications, to examine and request copies of Borrower's books of account, records or other papers relating to the Project, and to be advised of the business and financial affairs of the Borrower by appropriate representatives of the Borrower.

8.12. <u>Bank Accounts</u>. So long as any indebtedness is owing by Borrowers to Lender, Borrower will maintain with the Lender all of Borrower's bank accounts, including but not limited to the operating account for the Project.

8.13. <u>No Distributions</u>. The Borrower will not make any distributions of cash, or anything else of value, to any of the partners of the Borrower.

8.14. <u>Partial Releases</u>. Borrower may not sell or convey any interest in the Project during the term of this Agreement, provided, however, Borrower may sell Units within the Project and obtain partial releases of the Deeds of Trust for the same provided the following conditions are met: (a) the proposed sales contract shall have been reviewed and approved by the Lender; provided that the Lender will not withhold Lender's approval of the sales price of a Unit which equals or exceeds the fair market value of such Unit as set forth in an appraisal in form and substance approved by the Lender; and (b) 100% of the net sales proceeds for such Unit shall be disbursed to the Lender for application towards the Notes. Net sales proceeds shall be confirmed by the Lender through review of the contract for said unit and the closing statement for the sale; "Net Sale Proceeds" shall be defined as the gross sales price less customary costs and expenses including closing fees, title insurance, brokerage commissions, real property tax and condominium fee prorations, and recording fees. With respect to any units repurchased from CRK Stretford LLC pursuant to an Option Agreement among those parties, the amount equal to the Strike

Price paid to CRK for such unit shall be deducted from the sales proceeds for the purpose of determining the Net Proceeds under this ¶ 8.14. SNB may apply Net Sales Proceeds received, in its sole discretion, first in payment of interest accrued on the Second Note, and second in payment of interest accrued on the First Note, third in payment of principal on the Second Note and fourth in payment of principal on the First Note and thereafter as the Lender may further elect.

8.15.  <u>Organization and Management</u>  Light shall remain in exclusive and irrevocable control of the General Partner.

8.16.  <u>Project Manager</u>. The Borrower shall continue to employ Williams as the Project Manager to manage the completion of the Project.

9.  **ADMINISTRATION OF CONSTRUCTION LOAN**. As soon as all of the conditions set forth at Sections 7.1 through 7.10 of this Agreement have been satisfied (which shall be no later than the date of this Agreement), and so long as no Default has occurred hereunder, the Lender will advance to Light the amount of the Light Loan to be deposited in the Account. As soon as all of the conditions set forth at Section 8.1 through 8.20 have been satisfied, and so long as no Default has occurred hereunder, the Lender will (i) advance to the Borrower from time to time the proceeds of the Light Loan from the Account and, upon depletion of the Account, (ii) loan to the Borrower from time to time up to the amount of the Third Note, all to provide financing for the development and construction of the Project, pursuant to the terms of the Loan Documents. Lender shall make disbursements from the Account and under the Third Note, subject to the following additional conditions.

9.1.  <u>Purpose</u>. The amounts to be disbursed from the Account and under the Third Note shall be used for the purpose of paying contractors, mechanics, materialmen and suppliers pursuant to the terms of the contracts for the construction of the Project, for services in fact performed and materials purchased for and either incorporated into the Project or suitably stored on the Real Property for later incorporation, reimbursement of Lender for expenses incurred in connection with the negotiation and preparation of the Loan Documents (including, but not limited to, attorneys' fees and expenses) and for payment of other costs which are incidental or related to the costs of construction of the Project, all in accordance with the Borrower's Budget delivered to the Lender.

9.2.  <u>Request for Advance</u>. For each advance, the Borrower shall deliver to Lender's Inspector, a Request for Advance, in form satisfactory to the Lender, and stating the amount of disbursement requested, at least ten (10) business days before the requested date of disbursement. Each Request for Advance shall be signed and notarized by the Borrower, Borrower's

-18-

architect or engineer approved by the Lender and the general contractor and shall be accompanied by billing statements, vouchers and invoices as required by Lender or Lender's Inspector. Each Request for Advance will expressly warrant that the work for which the advance is requested has been performed in accordance with the Plans and Specifications approved by the Lender and is for actual costs incurred for the construction of the Project within the estimates set forth in the Borrower's Budget. Each Request for Advance shall constitute an affirmation that all representations and warranties made by Borrower remain true and correct as of the date of such Request.

9.3. Conditions. The following conditions must be satisfied before the Lender will be obligated to fund a Request for Advance:

9.3.1. proof, satisfactory to the Lender, that all invoices for labor and materials have been paid, except those contained in the current Request for Advance;

9.3.2. if requested by Lender, lien waivers from payees under previous Requests for Advances; Scot Baker XMLK.

9.3.3. a report signed by ~~Borrower's Architect~~ and by Lender's Inspector, which shall specify the estimated percentage of completion of the construction of the Project, together with detailed comments on the specific work performed since the date of the last report rendered to the Lender, and which will certify that all work previously performed in constructing the Improvements has been completed in accordance with the Plans and Specifications;

9.3.4. an endorsement to the Lender's Mortgagee's title insurance policy, extending the effective date of the policy to the date of the endorsement, showing no liens of record or additional encumbrances not acceptable to Lender, and increasing the effective amount of the coverage to the total amount outstanding under the Note;

9.3.5. verification that the actual The Project costs do not exceed the budgeted costs on an itemized basis as shown in the Borrower's Budget, and such other itemization and information with respect to such costs as may be requested by Lender;

9.3.6. if requested by the Lender, a schedule, satisfactory to Lender, of the estimated amount and time of disbursements of the cash advances to be made hereunder;

9.3.7. if requested by the Lender, evidence, satisfactory to Lender, that Borrower has sufficient financial resources to complete the

construction and equipping of the Project to any extent by which the costs shall exceed the balance in the Account and/or undisbursed amount of the Third Note; and

9.3.8.  if requested by the Lender, proof that all materials, equipment and fixtures incorporated in the Improvements have been purchased so that absolute ownership is vested in Borrower; and

All of the above information shall be obtained and submitted to the Lender at the Borrower's expense.

9.4.  Lender's Inspection.  Lender may, at Lender's option, cause the Project to be inspected, at Borrower's expense, before making any advance for a reasonable time prior to making such advance, and the Lender shall not be required to make any advance until such examination has been made.

9.5.  Disbursements.  The Lender shall, on the date the requested advance is to be made or as soon thereafter as all conditions precedent to such advance have been satisfactorily met, deposit such advance in the Borrower's special account with the Lender into which all advances hereunder may be deposited, and against which only checks shall be drawn for payment of the approved costs of construction of the Project and other costs incidental thereto and approved herein, or, at the discretion of the Lender, such advance may be made by delivering checks to approved payees whose invoices are entitled to be paid from the proceeds of the advance. Advances from the Account or disbursements under the Third Note shall not be made more often than monthly and advances under the Third Note may, at the option of the Lender, be recorded on the Third Note and/or by deposits to the foregoing account, and such records shall be conclusive evidence of all advances made under the Third Note. Notwithstanding the foregoing disbursement procedure, in the event of an uncured default hereunder or under the terms of any of the Loan Documents executed pursuant hereto, the Lender may, at its discretion, make all disbursements to a title company escrow account, and such title company will draw checks on such account for payment of the items approved by the Lender. Any expense incurred because of the disbursement through a controlled title company escrow account shall be paid by the Borrower.

9.6.  Retainage.  An amount equal to 10% of that portion of each requested disbursement which is payable to Borrower's contractor or any subcontractor for work performed on construction of the Project or materials delivered to the Real Property shall be retained by the Lender (herein called the "Retainage"); provided, however, Lender shall withhold Retainage only to the extent the Borrower has withheld retainage. The Retainage shall be disbursed by the Lender to the Borrower upon the expiration of thirty (30) days after the completion of the Improvements in

accordance with the plans and specifications as certified by the Lender's engineer, provided:

9.6.1.   a Request for Advance shall have been submitted with respect to the Retainage;

9.6.2.   all governmental requirements shall have been satisfied, and a certificate of occupancy and other certificates evidencing completion of the Project shall have been issued, if appropriate;

9.6.3.   final endorsements to the Lender's title insurance policy shall have been issued without reflecting any liens or encumbrances as exceptions to coverage, and which provides affirmative coverage against liens;

9.6.4.   the representations and warranties made in this Loan Agreement shall be true and correct on the date of disbursement of the Retainage;

9.6.5.   there shall be no default under this Agreement or any of the Loan Documents, and all other conditions enumerated in this Loan Agreement shall have been strictly satisfied.

9.7.   <u>Termination of Advances</u>. Advances shall not be made from the Account or under the Third Note if: (i) this Agreement, the Notes, the Loan Documents, the Deeds of Trust, or any other instruments securing performance and payment of Borrowers' obligations hereunder are not all valid and in full force and effect; or (ii) a Default exists under the terms of this Agreement or any of the Loan Documents.

10.   **DEFAULT**. Each of the following shall constitute a default hereunder and under each of the Loan Documents ("Default"):

10.1.   <u>Nonpayment of Notes</u>. Failure to make payment when due of any interest on or principal of any of the Notes or any renewals or modifications thereof; or

10.2.   <u>Other Nonpayment</u>. Failure to make payment when due of any other amount payable to the Lender under the terms of this Agreement or any of the Loan Documents; or

10.3.   <u>Breach of Covenants</u>. Breach by any of the Borrowers in the performance or observance of any covenant made under this Agreement or any of the Loan Documents, or under the terms of any other instrument delivered to Lender in connection with this Agreement, provided that with respect to any such covenants which are non-monetary in nature, the Borrowers will

- 21 -

have thirty (30) days to cure the breach of such covenant after the occurrence thereof before such occurrence will constitute a default hereunder; or

10.4.   Creation of Liens.  The creation or enforcement of any lien, mortgage, pledge, security interest, encumbrances or other lien (including a lien of attachment, judgment or execution) securing a charge or obligation affecting any or all of the Project, except with respect to materialmen's liens which have been duly discharged by the Borrower within thirty (30) days after the filing thereof; or

10.5.   Ownership.   The (i) assignment, sale, transfer, encumbrance or conveyance of all or any portion of the Project without the prior written consent of Lender; or (ii) if the ownership of the Project becomes vested in a person or entity other than the Borrower without the prior written consent of Lender; or (iii) if control of the General Partner is vested in anyone other than Light; or

10.6.   Liquidation, Merger or Disposition of Assets.  The liquidation, dissolution or entering into any consolidation, merger, partnership, joint venture, syndicate, pool, operating agreement, or other combination, or conveyance, sale, assignment or lease of any part of the assets or business of the Borrower; or

10.7.   Judgment.  Entry by any court of final judgment (and the expiration of all appeals) against any of the Borrowers or Guarantors in excess of U.S. $50,000.00, or an attachment of any property of the Borrowers which is not discharged to the satisfaction of Lender within thirty (30) days thereof; or

10.8.   Casualty Loss; Condemnation.   Substantial damage or destruction by casualty or taking by rights of eminent domain of all or any substantial portion of the Project so as to materially affect the Borrower's ability to perform the Borrower's obligations hereunder; or

10.9.   Variance from Plans and Specifications.  Changes in the approved Plans and Specifications by the Borrower in connection with the construction of the Project, without the Lender's prior written consent; or

10.10.  Bankruptcy.  The (i) institution of bankruptcy, reorganization, liquidation or receivership proceedings by or against any of the Borrowers, or (ii) the making of any assignment for the benefit of creditors by or any of the Borrowers; (iii) if any of the Borrowers becomes insolvent; or (iv) any admission by any of the Borrowers of its or their inability to pay its or their debts as such debts mature; or

10.11.  Termination of Existence.  Borrower ceases to be a validly existing Texas limited partnership; or

- 22 -

10.12. <u>Governmental Requirements</u>.   The issuance of any order, decree or judgment pursuant to any judicial or administrative proceeding declaring that the Project or the construction or operation thereof is in material violation of any federal, state or local law, ordinance, rule or regulation; or

10.13. <u>Representations</u>.   Any representation, warranty, statement, certificate, schedule or report made or furnished to the Lender by any of the Borrowers proves to be false or erroneous in any material respect at the time of the making thereof, and the Borrowers fail to take or cause to be taken corrective measures with respect to such representations or warranties satisfactory to the Lender within thirty (30) days after written notice by the Lender, and such corrective measures are not completed to Lender's satisfaction within sixty (60) days after such written notice is given; or

10.14. <u>Loan Documents</u>.   Any of the Loan Documents cease to be valid, legally binding or enforceable.

10.15. <u>Project Manager.</u>   Williams is terminated as the Project Manager for the Project without the prior written consent of the Lender.

11.   **REMEDIES**.   On the occurrence of a Default, as defined in Section 10 of this Agreement, the Lender may, at its option:

11.1.   <u>Acceleration of Notes</u>.   Terminate making advances under the Loan Documents, and declare the Notes or any renewals or modifications thereof to be immediately due and payable whereupon the Notes or any renewals or modifications thereof shall become forthwith due and payable without presentment, demand, protest or notice of any kind, and the Lender shall be entitled to proceed simultaneously or selectively and successively to enforce its rights under the Notes, the Deeds of Trust, this Agreement, and any or all of the Loan Documents, and any of the instruments executed pursuant to the terms thereof, or in connection therewith to evidence or secure the obligations of the Borrowers, and all renewals and modifications thereof. Nothing contained herein shall limit Lender's rights and remedies available under applicable law.

11.2.   <u>Selective Enforcement</u>.   In the event the Lender shall elect to selectively and successively enforce its rights under any of the Loan Documents, such action shall not be deemed a waiver or discharge of any other lien, encumbrance or security instrument securing payment of the Notes until such time as the Lender shall have been paid in full all sums advanced under the Notes. The foreclosure of any lien provided pursuant to the terms of the Loan Documents without the simultaneous foreclosure of all such liens shall not merge the liens granted which are not foreclosed with

any interest which the Lender might obtain as a result of such selective and successive foreclosure.

11.3.    Completion by Lender. Subject to applicable law, the Lender shall have the right, but shall not be obligated, to take possession of the Project and proceed to complete the construction of the Project according to the Plans and Specifications. In connection therewith, the Borrower hereby appoints the Lender as the Borrower's true and lawful attorney-in-fact with the full power of substitution (which appointment is coupled with an interest and irrevocable) to complete, or cause to be completed, the construction of the Project in Borrower's name and shall empower the Lender as follows: to use any funds of Borrower, including any balance which may be held in escrow and any funds which remain unadvanced under the Light Note or the Third Note for the purpose of completing the construction of the Project in the manner called for in the Plans and Specifications; to make changes and corrections in the Plans and Specifications which shall be deemed necessary or desirable by the Lender; to employ such contractors, subcontractors, agents, architects and inspectors as shall be required; to pay, settle or compromise all existing bills and claims which are or may be liens against the Project or any part thereof or may be necessary or desirable for completion of the work or the clearance of title; to execute all applications and certificates in Borrower's name which may be required by any contract relating to construction of the Project; and to do any and every act with respect to construction of the Project which Borrower may do in its own behalf. It is understood and agreed that this power of attorney shall be deemed to be a power coupled with an interest that cannot be revoked. The Lender, as Borrower's attorney-in-fact, shall also have the power to prosecute and defend all actions or proceedings in connection with the construction of the Project and to take such action and require such performance as is deemed necessary. At the time the Lender takes possession of the Project, all proceeds to complete construction of the Project, and all materials on or near the Real Property or The Project shall become the property of the Lender to be used in said completion. The cost of said completion shall become an obligation payable to the Lender by Borrower. The Lender is authorized to add all costs necessary to complete construction of the Project to Borrower's indebtedness owing to the Lender, holding the instruments executed in connection with this loan as security for the payment thereof, irrespective of the aggregate amount of such costs.

11.4.    Appointment of Receiver. The Lender will be entitled to obtain a Court appointed receiver for the Project without notice to the Borrowers, which notice is hereby waived.

12.    **MISCELLANEOUS**. It is further agreed as follows:

- 24 -

12.1. Expenses. The Borrowers agree to pay all fees, expenses and charges in respect to the transactions contemplated by this Agreement and the Loan Documents, including, without limiting the generality thereof, the following:

12.1.1. the fees and expenses of legal counsel employed by the Lender in connection with the negotiation and preparation of the Loan Documents and the closing of this transaction;

12.1.2. all expenses incidental to obtaining the Deed of Trust liens on the Project, abstracting costs, if any, title examination fees, title insurance premiums, Deed of Trust taxes, if any, and closing costs;

12.1.3. appraisal costs;

12.1.4. recording and filing fees and notary fees;

12.1.5. fees of Lender's Inspector;

12.1.6. other fees and expenses involved in the closing of this transaction;

12.1.7. In addition to the legal fees described at Section 12.1.1, all attorneys' fees and expenses payable by the Lender which are incidental to (a) the enforcement or defense of any or all of the Loan Documents and any instrument executed pursuant thereto; (b) the negotiation and preparation of the Loan Documents and any renewals or modifications thereof; and (c) rendering any advice to the Lender related to the Loan Documents, and any transactions contemplated thereby or related to the enforcement or defense thereof; and

12.2. Notices.   Any notices or other communications required or permitted hereunder shall be sufficiently given if delivered personally or sent by facsimile transmission or by registered or certified mail, postage prepaid, return receipt requested and addressed as listed below or to such other address as the party concerned may substitute by written notice to the other.   All notices shall be deemed received on the date of personal delivery, the date of confirmation of receipt of a facsimile transmission, or within three days (excluding Saturdays, Sundays and holidays recognized in the United States) after being mailed:

To the Borrower:   The Stretford at the Cascades Limited
                   Partnership
                   J. Randolph Light, Jr.
                   9 Wild Heron Point

Hilton Head, SC 29928
Fax No.: 843 842 4929

With a copy to:        Pete Steele, Esq.
                       McPherson Hughes Bradley Wimberley
                            Steele & Chatelain
                       3120 Central Mall Drive
                       Port Arthur TX 77642
                       Fax No.: 409 724-7585

To Lawrence Don:       Lawrence Don
                       4205 Beltway Drive
                       Addison, Texas 75001
                       Fax No.:_____

With a copy to:        Don Zentmeyer
                       Koons Real Estate Law
                       3400 Carlisle Street, Suite 400
                       Dallas, TX 75204-1268
                       Fax No.: (214) 954-0108

To Victor Lissiak:     Victor Lissiak
                       4205 Beltway Drive
                       Addison, Texas 75001
                       Fax No.:_____

With a copy to:        William Odeneal
                       _____
                       _____
                       Fax No.:_____

To the Lender:         Stillwater National Bank and Trust Company
                       c/o Chief Lending Officer
                       608 South Main
                       Stillwater, OK  74074
                       Fax No. (405) 742-1821

With a copy to:        Jared D. Giddens, Esq. and Bryan J. Wells, Esq.
                       Conner & Winters, LLP
                       211 N. Robinson, Suite 1700
                       Oklahoma City, Oklahoma 73102
                       Fax No.:  (405) 232-2695

12.3.  Amendment and Waiver.  This Agreement and the Loan Documents may not be amended or modified in any way, except by an instrument in writing executed by all of the parties thereto; provided, however, Lender

may, in writing: (i) extend the time for performance of any of the obligations of any of the Borrowers; (ii) waive any default by any of the Borrowers; and (iii) waive the satisfaction of any condition that is precedent to the performance of Lender's obligations under this Agreement. In the event of a waiver of an event of default by Lender, such specific event of default shall be deemed to have been cured and not continuing, but no such waiver shall extend to the reoccurrence of the same default or any subsequent or other default or impair any consequence of such subsequent or other default.

12.4.   **Non-Waiver; Cumulative Remedies.** No failure on the part of Lender to exercise and no delay in exercising any right hereunder shall operate as a waiver thereof, nor shall any single or partial exercise by the Lender of any right hereunder preclude any other or further right of exercise thereof. The remedies herein provided are cumulative and not alternative.

12.5.   **Descriptive Headings.** The descriptive headings of the paragraphs of this Agreement are for convenience only and shall not be used in the construction of the terms hereof.

12.6.   **Integrated Agreement.** This Agreement, all of the Loan Documents, and the other loan documents executed pursuant hereto or in connection herewith supercede all prior letters, agreements, term sheets, and understandings among the parties hereto, and constitute the entire agreement between the parties hereto, and there are no agreements, understandings, warranties or representations between the parties regarding the financing of the Project other than those set forth in the Loan Documents.

12.7.   **Time of Essence.** Time is of the essence of this Agreement.

12.8.   **Binding Effect.** This Agreement shall be binding on and inure to the benefit of the parties hereto, and their respective successors, personal representatives, legal representatives and assigns.

12.9.   **Third Party Beneficiary.** Nothing in this Agreement, express or implied, is intended to confer on any person, other than the Parties and CRK, and their respective successors and assigns, any rights or remedies under or by reason of this Agreement.

12.10.   **Right to Defend.** Lender shall have the right, but not the obligation, at Borrowers' expense, to commence, to appear in or to defend any action or proceeding (initiated by a third party against any of the Borrowers) purporting to affect the rights or duties of the parties hereunder and in connection therewith pay out of the funds of the loan all necessary expenses, including fees of counsel, if Borrowers fail to so commence,

appear in or defend any such action or proceedings with counsel satisfactory to Lender.

12.11. <u>Accuracy of Information</u>. This Agreement has been entered into by the Lender based in part upon information, data and representations furnished by the Borrowers to the Lender, and the Lender's obligation to close and fund the loans contemplated hereby is subject to the continued accuracy of all matters submitted to the Lender herewith. By acceptance hereof, the Borrowers warrant to the Lender that to the current, actual knowledge of Borrowers, all such information, data and representations heretofore and hereafter furnished to the Lender are complete and accurate and there is contained therein no untrue statement of a material fact or omission to state a material fact necessary in order to make the statements made in light of the circumstances under which they were made not misleading, and this warranty shall be true at the time the loans contemplated hereby are closed and shall survive closing. There shall be no material change at the time the loans contemplated hereby are closed of the income and expenses of the property, the financial condition of the Borrower and all other features of the transaction shall be as represented by the Borrower to the Lender.

12.12. <u>Maximum Legal Rate of Interest</u>. Notwithstanding any other provisions of this Agreement or any of the Loan Documents to the contrary, the total interest charges incurred by the Borrowers pursuant to the Notes shall not exceed the maximum legal rate of interest under Oklahoma law. If the holder of any of the Notes shall ever be entitled to receive, collect or apply, as interest on the loans, any amount in excess of the maximum legal rate of interest permitted to be charged by applicable law, and, in the event any holder of any of the Notes ever receives, collects or applies, as interest, any such excess, such amount which would be excessive interest shall be applied to the reduction of the unpaid principal balance of the Notes, and if the principal balance is paid in full, any remaining excess shall be forthwith paid to Borrowers. In determining whether or not the interest paid or payable under any specific contingency exceeds the highest lawful rate, Borrowers and Lender shall, to the maximum extent permitted, under applicable law: (a) characterize any non-principal payment as an expense, fee or premium rather than as interest; (b) exclude voluntary prepayments and the effects thereof; (c) "spread" the total amount of interest on the Notes throughout the entire term of the Notes so that the interest rate is uniform throughout the entire term of the Notes.

12.13. <u>Consent to Employ Williams</u>. Borrowers hereby consent to the engagement of Williams by CRK to complete construction of Floors 13 and 14.

12.14. <u>No Responsibility of Lender or CRK</u>. No acceptance or approval (if any) of the Plans and Specifications or any changes thereto by Lender or CRK

or anyone acting on Lender's or CRK's behalf, nor any acknowledgment by Lender or CRK or anyone acting on Lender's or CRK's behalf, that the Improvements (including all or any portion of Floors 13 and 14) have been constructed in accordance with the Plans and Specifications, shall in any way be deemed an express or implied warranty or representation or approval by Lender or CRK or any one on behalf of Lender or CRK, that such Improvements (including all or any portion of Floors 13 and 14): (a) are or will be structurally sound, (b) are in good or workmanlike condition, repair or state or maintenance, (c) have any particular use or purpose, or (d) have any particular value, and Borrowers hereby indemnify and hold Lender harmless from any such claims that might be made by any party. Further, notwithstanding any term or provision of the Loan Documents, Lender shall not have any obligation or responsibility for the management, conduct or operation of the business and affairs of Borrower. No provision hereof or of any of the other Loan Documents shall be construed or interpreted to create any relationship between Borrowers and Lender other than that of debtor and creditor, or between Borrowers and CRK other than that of seller and purchaser.

12.15. Notice of Title Protection. The Lender is obtaining its own title protection in this transaction, and Borrowers should seek competent advice as to whether the Borrowers should obtain any additional title protection to protect the Borrowers.

12.16. Indemnification. Borrowers and Borrowers' successors and assigns agree to defend, indemnify and hold harmless Lender and CRK and their respective directors, officers, employees, agents, contractors, subcontractors, licensees, invitees, successors and assigns (for purposes of this Section 12.17, collectively referred to as the "Indemnified Parties"), from and against any and all claims, demands, judgments, settlements, actions, or causes of action, arising out of or relating to: (i) any prior act or omission by or of any of the Indemnified Parties in connection with the Project or the lending relationships between the Borrowers and the Lender; and (ii) this Agreement and the transactions contemplated hereby.

12.17. Mutual Releases. Except for the obligations set forth in this Agreement and the Loan Documents, Borrowers and Lender hereby release and discharge each other together with their respective officers, directors, employees, agents, insurers, successors and assigns (less, except, and specifically excluding Black), from each and every right, claim, debt, demand, action, cause of action, suit and proceeding of any kind, at law or in equity, whether known or unknown, which Borrowers or Lender had or now have against the other, arising out of or relating in any manner to the Project or the prior lending relationships between the Borrowers and the Lender; provided, however, (i) the release acquittal and discharge of Borrowers and Lender hereunder shall specifically exclude any rights, claims, debts, demands, actions, causes of action, suits, and proceedings of

any kind, at law or in equity, whether known or unknown, which either Borrowers or Lender had or now have against Black; and (ii) if all or any portion of this Agreement or any of the Loan Documents is subsequently determined by a court of competent jurisdiction to be invalid, or unenforceable, any release by Lender shall be void *ab initio* and the Borrowers obligations under any document or instrument heretofore entered into or executed and delivered by one or more of the Borrowers with or in favor of the Lender shall be deemed reinstated.

12.18. Reservation of Rights and Claims. Notwithstanding anything in this Agreement or the Loan Documents to the contrary, the Parties each specifically reserve without release, compromise, discharge or impairment each and every right, claim, debt, demand, action, cause of action, suit, or proceeding of any kind, in law or in equity, whether known or unknown, which any of the Parties had or now have against Black.

12.19. Choice of Law. This Agreement, all of the Loan Documents and all other documents executed pursuant thereto and in connection therewith to evidence or secure the loans contemplated hereby shall be deemed to be a contract made under the laws of the State of Oklahoma, except for the Deeds of Trust and the Assignments of Proceeds which will be governed by Texas law. Nothing in this Agreement shall be construed to constitute the Lender as a joint venturer with any of the Borrowers or to constitute a partnership among any of such parties.

12.20. Jurisdiction and Venue. The Borrowers hereby submit to the jurisdiction of any state or federal court located in Oklahoma County, Oklahoma, Smith County, Texas, or Collin County, Texas, as elected in the Lender's sole discretion by the Lender, in connection with any action or proceeding commenced for the collection, enforcement, or defense of this Agreement, the Notes, the Deeds of Trust, or any of the other Loan Documents, and hereby waives all objections to venue or any objections based on the theory of non-convenient forum in connection therewith.

12.21. Counterparts. This Agreement may be executed in two or more counterparts, each of which will be an original instrument, but all of which taken together will constitute one agreement.

12.22. Completion of Floors 13 and 14. CRK shall complete construction of Floors 13 and 14; provided, however, that CRK's obligation to complete shall termiate at the time CRK has incurred or becom obligated to pay construction costs of $2,130,000.00.

IN WITNESS WHEREOF, the parties have caused this instrument to be duly executed as of the day and year first above written.

THE STRETFORD AT THE CASCADES LIMITED PARTNERSHIP, a Texas limited partnership

By:  TYLER-STRETFORD GENERAL PARTNER, LLC, a Texas limited liability company and General Partner

By: _____
    J. Randolph Light, Jr., Sole Member

_____
J. RANDOLPH LIGHT, JR., Individually

_____
~~LAWRENCE C. DON, Individually~~

_____
~~VICTOR LISSIAK, JR., Individually~~

(the "Borrowers")

31 -

STILLWATER NATIONAL BANK AND
TRUST COMPANY

By: _____

Name: _Michael Mattson_____

Title: _Senior Vice President___

(the "Lender")


CRK hereby joins in the execution of this
Agreement for the sole purpose of Sections
5 and 12.22 set forth above.

~~CRK STRETFORD, LP, a~~
~~limited partnership~~
CRK STRETFORD, LLC, an Oklahoma limited liability company

By: _____

By: _Manager_____

("CRK")

EXHIBIT "A"

Real Property Description

EXHIBIT "A"

The land described in this Exhibit "A" is comprised of real property which is now subject to a condominium declaration and accordingly, the property is described twice below, using both the original legal description, being the legal description in effect prior to the condominium declaration as modified to reflect sold units, and the legal description reflecting the condominium declaration, as follows:

Original Legal Description
(Modified to reflect Sold Units)

Being all that tract of land in Smith County Texas, out of the L.H. Ashcroft Survey, A-48 and out of the S.A. & M.G.R.R. Survey, A-963 and being all of Lot 1, NCB 1800, THE CASCADES, according to plat recorded in Cabinet D, Slide 204-C, Plat Records of Smith County, Texas, less and except the Sold Units (defined below).

Legal Description per Condominium Regime

Those certain Condominium Units listed below being in The Stretford At The Cascades Condominiums, a Condominium Project in Smith County, Texas together with the interests in the common elements thereof allocated to each of said Condominium Units, according to the Condominium Declaration For The Stretford At The Cascades Condominiums recorded in Vol. 7674 Page 78 of the Official Public Records, Smith County, Texas, as amended under Clerk's File No. 2007-R00061717, and under Clerk's File No. 2007-R00065802, and under Clerk's File No. 2008-R00008426, Official Public Records, Smith County, Texas, as follows:

| Unit Number | Unit Type | Unit Area SF | Unit Interest | Unit Number | Unit Type | Unit Area SF | Unit Interest |
|---|---|---|---|---|---|---|---|
| 101 | A | 1,962 | 1.1166% | 801 | A | 1,962 | 1.1166% |
| 102 | A | 1,962 | 1.1166% | 802 | A | 1,962 | 1.1166% |
| 103 | B | 2,339 | 1.3311% | 803 | B | 2,339 | 1.3311% |
| 104 | C | 2,326 | 1.3237% | 804 | C | 2,326 | 1.3237% |
| 105 | D | 3,924 | 2.2332% | 805 | A | 1,962 | 1.1166% |
| 201 | A | 1,962 | 1.1166% | 806 | A | 1,962 | 1.1166% |
| 202 | A | 1,962 | 1.1166% | 901 | A | 1,962 | 1.1166% |
| 203 | B | 2,339 | 1.3311% | 902 | A | 1,962 | 1.1166% |
| 204 | C | 2,326 | 1.3237% | 903 | B | 2,339 | 1.3311% |
| 205 | A | 2,073 | 1.1798% | 904 | C | 2,326 | 1.3237% |
| 206 | A | 1,962 | 1.1166% | 905 | A | 1,962 | 1.1166% |
| 301 | A | 2,051 | 1.1672% | 906 | A | 1,962 | 1.1166% |
| 302 | A | 1,962 | 1.1166% | 1001 | A | 1,962 | 1.1166% |
| 303 | B | 2,339 | 1.3311% | 1002 | A | 1,962 | 1.1166% |

| Unit Number | Unit Type | Unit Area SF | Unit Interest | Unit Number | Unit Type | Unit Area SF | Unit Interest |
|---|---|---|---|---|---|---|---|
| 304 | C | 2,326 | 1.3237% | 1003 | B | 2,339 | 1.3311% |
| 305 | A | 2,073 | 1.1798% | 1004 | C | 2,326 | 1.3237% |
| 306 | A | 1,962 | 1.1166% | 1005 | A | 1,962 | 1.1166% |
| 401 | A | 1,962 | 1.1166% | 1006 | A | 1,962 | 1.1166% |
| 402 | A | 1,962 | 1.1166% | 1101 | A | 1,962 | 1.1166% |
| 403 | B | 2,339 | 1.3311% | 1102 | A | 1,962 | 1.1166% |
| 404 | C | 2,326 | 1.3237% | 1103 | B | 2,339 | 1.3311% |
| 405 | A | 1,962 | 1.1166% | 1104 | C | 2,326 | 1.3237% |
| 406 | A | 1,962 | 1.1166% | 1105 | A | 1,962 | 1.1166% |
| 501 | A | 1,962 | 1.1166% | 1106 | A | 1,962 | 1.1166% |
| 502 | A | 1,962 | 1.1166% | 1201 | A | 1,962 | 1.1166% |
| 503 | B | 2,339 | 1.3311% | 1202 | A | 1,962 | 1.1166% |
| 504 | C | 2,326 | 1.3237% | 1203 | B | 2,339 | 1.3311% |
| 505 | A | 2,073 | 1.1798% | 1204 | C | 2,326 | 1.3237% |
| 506 | A | 1,962 | 1.1166% | 1205 | A | 1,962 | 1.1166% |
| 601 | A | 1,962 | 1.1166% | 1206 | A | 1,962 | 1.1166% |
| 602 | A | 1,962 | 1.1166% | PH101 | A | 1,962 | 1.1166% |
| 603 | B | 2,339 | 1.3311% | PH102 | A | 1,962 | 1.1166% |
| 604 | C | 2,326 | 1.3237% | PH103 | B | 2,339 | 1.3311% |
| 605 | A | 1,962 | 1.1166% | PH104 | C | 2,326 | 1.3237% |
| 606 | A | 1,962 | 1.1166% | PH105 | A | 1,962 | 1.1166% |
| 701 | A | 1,962 | 1.1166% | PH106 | A | 1,962 | 1.1166% |
| 702 | A | 1,962 | 1.1166% | PH201 | A | 1,962 | 1.1166% |
| 703 | B | 2,339 | 1.3311% | PH202 | A | 1,962 | 1.1166% |
| 704 | C | 2,326 | 1.3237% | PH203 | B | 2,339 | 1.3311% |
| 705 | A | 2,073 | 1.1798% | PH204 | C | 2,326 | 1.3237% |
| 706 | A | 1,962 | 1.1166% | PH205 | A | 1,962 | 1.1166% |
|  |  |  |  | PH206 | A | 1,962 | 1.1166% |

less and except the units set forth below (the "Sold Units"):

| Unit Number | Unit Type | Unit Area SF | Unit Interest |
|---|---|---|---|
| 101 | N/A | 1,962 | 1.1166% |
| 102 | A | 1,962 | 1.1166% |
| 104 | C | 2,326 | 1.3237% |
| 105 | D | 3,924 | 2.2332% |
| 201 | A | 1,962 | 1.1166% |
| 205 | A | 2,073 | 1.1798% |
| 301 | A | 2,051 | 1.1672% |
| 304 | C | 2,326 | 1.3237% |
| 404 | C | 2,326 | 1.3237% |
| 405 | A | 1,962 | 1.1166% |
| 501 | A | 1,962 | 1.1166% |

- 2 -

| Unit Number | Unit Type | Unit Area SF | Unit Interest |
|---|---|---|---|
| 503 | B | 2,339 | 1.3311% |
| 504 | C | 2,326 | 1.3237% |
| 505 | A | 2,073 | 1.1798% |
| 603 | B | 2,339 | 1.3311% |

EXHIBIT "B"

Borrower's Budget

*Previously Provided*

EXHIBIT "4"

| | | |
|---|---|---|
| J. RANDOLPH LIGHT, JR. and | § | IN THE DISTRICT COURT |
| THE STRETFORD AT CASCADES | § | |
| LIMITED PARTNERSHIP | § | |
| | § | |
| v. | § | 7th JUDICIAL DISTRICT |
| | § | |
| STILLWATER NATIONAL BANK | § | |
| AND TRUST COMPANY, | § | |
| SW LOAN OO, L.P., AND | § | |
| VICTOR LISSIAK, JR. | § | SMITH COUNTY, TEXAS |

## FORMAL SETTLEMENT AGREEMENT

This Formal Settlement Agreement (the "Agreement") is made and entered into by and between James Randolph Light, Jr. ("R. Light") and SW Loan OO LP ("SW Loan"). Merrill Light ("M. Light"), Paul Barringer Light ("P. Light") and Thomas Gray Light ("T. Light") (collectively, the "Light Family") are parties to this Agreement solely for the purposes of the provisions that apply to them. R. Light and SW Loan are sometimes referred to herein collectively as the "Parties" and individually as a "Party."

WHEREAS R. Light and SW Loan are parties to the above-styled litigation pending in the 7th District Court of Smith County, Texas (the "Lawsuit"), in which R. Light and SW Loan have made various claims against each other, and R. Light also has made claims against Stillwater National Bank and Trust Company ("Stillwater");

WHEREAS, the claims of the Parties to the Lawsuit related, among other things, to the promissory notes, guaranties, and lost-note affidavits listed in Exhibit 1 hereto;

WHEREAS, the Parties deny each and every claim made by the other; and

WHEREAS, R. Light and SW Loan entered into a mediated settlement agreement on August 1, 2013 (the "Mediated Settlement Agreement"), wherein they agreed to resolve their dispute prior to trial of the Lawsuit and to compromise and settle all claims which they may have

**FORMAL SETTLEMENT AGREEMENT** - Page 1 of 16

against the other, including without limitation those that were asserted, or could have been asserted, in the Lawsuit, without any admission of liability;

WHEREAS, the Mediated Settlement Agreement provides that the Parties will enter into a formal settlement agreement, drafted by their counsel, containing the terms of the Mediated Settlement Agreement, other terms that are customarily included in settlement agreements in Dallas County, Texas, and such other terms as the Parties may agree.

NOW, THEREFORE, with the intent to be legally bound hereby, and in consideration of the mutual promises and covenants set forth below and for such other good and valuable consideration, the receipt and adequacy of which is hereby acknowledged, the Parties agree as follows:

1.      Subject to the conditions and obligations set forth herein, the execution of this Agreement settles and resolves claims that are denied and disputed. Nothing contained herein shall be construed at any time in the future as an admission of liability, fault, or wrongdoing on the part of any Party hereto or of any facts or allegations. To the contrary, all of the Parties still maintain the correctness of the positions they have asserted against each other.

2.      On or before September 5, 2013, R. Light shall pay to SW Loan the sum of One Million Five Hundred and Fifty Thousand Dollars ($1,550,000) (the "Settlement Proceeds"), in the form of a wire transfer to SW Loan's designated bank. SW Loan promptly will provide R. Light's attorney with the pertinent wiring instructions. SW Loan acknowledges that the Settlement Proceeds will be the sole monetary consideration from R. Light for this settlement. The Parties acknowledge that payment of the Settlement Proceeds, coupled with the mutual covenants, terms, conditions and releases contained herein, constitute good, valuable and adequate consideration for this Agreement, specifically including the releases of R. Light, the

Light Family and Stillwater, regardless of whether they contribute any of the Settlement Proceeds.

3.     Within five (5) days after SW Loan's timely receipt of the Settlement Proceeds as set forth in Paragraph 2 above, R. Light and SW Loan each will file a motion to dismiss their respective claims against the other in the Lawsuit without prejudice, and with costs taxed against the Party who incurred same. The Parties agree that any applicable limitations periods are tolled for a period of one-hundred twenty (120) days from the date of the dismissal, in the event that either Party must refile his/its claims. The Parties further agree that any applicable limitations periods are tolled during the pendency of any proceeding in which R. Light or M. Light are the subject of a voluntary or involuntary petition for relief under Title 11 of the United States Code, provided that such proceeding was initiated during the ninety-one (91) day period following receipt of the Settlement Proceeds as set forth in Paragraph 2.

4.     Subject to and conditioned upon SW Loan's timely receipt of the Settlement Proceeds as set forth in Paragraph 2 above, and provided that during the ninety-one (91) day period following such receipt neither R. Light nor M. Light become the subject of a voluntary or involuntary petition for relief under Title 11 of the United States Code, the Parties will not sue each other or any other released person or entity in any court or initiate any arbitration or administrative proceeding against each other or any other released person or entity in any tribunal, with respect to the claims asserted or that could have been asserted against the Parties in the Lawsuit, including but not limited to any claims arising from the notes, guaranties, and lost-note affidavits listed in Exhibit 1 hereto, except as may be necessary to enforce this Agreement.

5.     Subject to and conditioned upon SW Loan's timely receipt of the Settlement Proceeds as set forth in Paragraph 2 above, and provided that during the ninety-one (91) day

period following such receipt neither R. Light nor M. Light become the subject of a voluntary or involuntary petition for relief under Title 11 of the United States Code, SW Loan and R. Light shall execute and deliver the mutual release attached as Exhibit 2 hereto following the expiration of ninety-one (91) days from SW Loan's receipt of the Settlement Proceeds. R. Light shall obtain the signatures of the Light Family on the mutual release attached as Exhibit 2 and deliver the release with their signatures in addition to his own.

6. Subject to and conditioned upon SW Loan's timely receipt of the Settlement Proceeds as set forth in Paragraph 2 above, SW Loan shall endeavor to obtain from Stillwater its execution and delivery of the mutual release attached as Exhibit 3 hereto—or another mutual release mutually acceptable to Stillwater and R. Light—in exchange for R. Light and the Light Family's execution and delivery of the same. Within five (5) days of the execution and delivery of Exhibit 3 by R. Light, the Light Family, and Stillwater, R. Light will file a motion to dismiss with prejudice his claims against Stillwater in the Lawsuit with costs taxed against the party incurring the same.

7. Subject to and conditioned upon SW Loan's timely receipt of the Settlement Proceeds as set forth in Paragraph 2 above, and provided that during the ninety-one (91) day period following such receipt neither R. Light nor M. Light become the subject of a voluntary or involuntary petition for relief under Title 11 of the United States Code, SW Loan promptly will deliver to the attorney for R. Light the promissory notes, guaranties, and lost-note affidavits listed as Items A through F and J through P on Exhibit 1 hereto, each marked "Paid," and will certify that it and its counsel have destroyed all documents that were bates-stamped and marked "Confidential" and delivered to counsel for SW Loan by counsel for R. Light and deleted all those that were transmitted electronically. Notwithstanding the foregoing, in no event shall

delivery of Item A on Exhibit 1 hereto be required before litigation of SW Loan's claims against Lissiak, including any appeals, is concluded. If SW Loan does not deliver Item A on Exhibit 1 marked "Paid" at the same time it delivers the other Items referenced in this paragraph, SW Loan hereby agrees to indemnify, defend, and hold harmless R. Light from any claim, demand, suit or judgment related to same to put him in as good a position as he would have been in had Item A been so delivered.

8. In the event R. Light or M. Light become the subject of a voluntary or involuntary petition for relief under Title 11 of the United States Code within the ninety-one (91) day period following SW Loan's timely receipt of the Settlement Proceeds, but the proceeding(s) under Title 11 is subsequently dismissed with SW Loan retaining or otherwise receiving the full amount of the Settlement Proceeds and no claim for the same is otherwise pending, the Parties agree: (a) they will not sue each other in accordance with the terms of Paragraph 4; (b) SW Loan, and R. Light will execute and deliver the mutual release attached as Exhibit 2 hereto and as further described in Paragraph 5; and (c) SW Loan will deliver the documents described in Paragraph 7 and destroy and delete the "Confidential" documents described in Paragraph 7. The Parties' obligations under this Paragraph will not arise until—and are conditioned upon—the expiration of ninety-one (91) days following dismissal of the proceeding(s) involving R. Light or M. Light under Title 11 and provided neither R. Light nor M. Light become the subject of another voluntary or involuntary proceeding under Title 11 of the United States Code within such subsequent ninety-one (91) day period. Any applicable limitations periods are tolled for a period of one-hundred twenty (120) days from the date of the dismissal of the subsequent Title 11 proceeding(s) involving R. Light or M. Light, in the event that either Party must refile his/its claims.

9. In connection with the releases required herein, the Parties expressly disclaim the right to ever assert or attempt to take advantage of any rule of law or equity to the effect that a general release does not apply to claims that were unknown to the releasing party at the time the release was signed.

10. As a material inducement to R. Light to enter into the Settlement, SW Loan represents that it is the sole owner and/or holder of the promissory notes and guaranties identified on Exhibit 1 as Items A through F and is the sole owner of all claims in contract or tort relating to the same. SW Loan further represents that it is the sole owner and/or holder of the promissory notes identified on Exhibit 1 as Items G through I and is the sole owner of all claims in contract or in tort relating to the same that were asserted by SW Loan in the Lawsuit or could have been asserted by SW Loan therein. SW Loan further represents that Stillwater assigned to it the promissory notes, guaranties and lost note-affidavits identified on Exhibit 1, that SW Loan has not further assigned the same, and that Items A through F and J through P of Exhibit 1 reflect all promissory notes, guaranties, lost-note affidavits and evidences of indebtedness assigned to it by Stillwater which were executed by R. Light, M. Light, P. Light or T. Light in his or her individual capacity in connection with loans to the Stretford at the Cascades, LP.

11. Each Party represents that it owns the claims made by it in the Lawsuit, and it has not assigned, pledged, hypothecated or transferred any claim or purported claim asserted in the lawsuit, or which could have been asserted in the Lawsuit, against the other to any other person or entity. Each Party further represents that no other persons or entities have any interest in the claims asserted by him/it in the Lawsuit.

12.     After this Agreement is effective, R. Light will, at SW Loan's expense, cooperate with SW Loan, at reasonable times and places, in connection with issues relating to the condominium project in Tyler, Texas known as The Stretford at the Cascades.

13.     This Agreement shall be binding upon and inure to the benefit of the parties and each and all of their respective officers, directors, agents, servants, present and former employees, partners, insurers, and successors by acquisition, merger or otherwise, as well as their successors in interest, assignees, and heirs.

14.     Apart from the payment described in Section 2 above, the Parties agree to bear their own costs, attorneys' fees, and all other expenses and costs.

15.     All warranties, agreements, and representations of each Party contained in this Agreement shall survive its execution and performance.

16.     The Parties agree that the amounts of the settlement payments and the terms of this Agreement and the Mediated Settlement Agreement shall be kept strictly confidential and shall not be made known to anyone who is not a party to this Agreement, or such Party's family member, partner, tax advisor or attorney. Notwithstanding the foregoing, this confidentiality provision shall not prevent the Parties or their counsel from: (1) responding to subpoenas issued by a court of law or other tribunal; (2) providing information necessary for the preparation and filing of any income-tax return, or as required by a bank, lender, or insurer, provided that such recipients agree to be bound by similar restrictions on further disclosure; (3) responding to any inquiry initiated by any government agency or self-regulatory organization; (4) preparing any reports or filings, or otherwise submitting any materials to any state or federal regulatory agency; or (5) otherwise disclosing the information as required by law or regulation.

17. This Agreement shall be construed without regard to the Party or Parties responsible for its preparation, and shall be deemed to have been prepared collectively by the Parties. Any ambiguity or uncertainty arising herein shall not be interpreted or construed against any Party hereto on the basis that a Party prepared or drafted a particular provision of this Agreement.

18. The Parties each represent and warrant that (a) the person signing this Agreement on behalf of the respective Party has full authority and representative capacity to execute this Agreement on behalf of the persons, estates, corporations, or entities for whom they purport to act as stated herein, and (b) this Agreement has been duly executed and delivered and constitutes the valid and binding obligation of the Party signing such Agreement.

19. Each Party hereto acknowledges and warrants that he/she/it has been represented by counsel of his/her/its choice throughout all negotiations that preceded the execution of this Agreement. Each Party hereto acknowledges and warrants that he/she/it fully understands all the terms used and their significance and that he/she/it is satisfied with the settlement and has executed this Agreement voluntarily.

20. To the extent that the terms of this Agreement vary from the Mediated Settlement Agreement, this Agreement controls.

21. This Agreement may not be modified or amended in any manner except by an instrument in writing specifically stating that it is a supplement, modification, or amendment to this Agreement and signed by each of the Parties hereto.

22. No waiver of any of the provisions of this Agreement shall be deemed or constitute a waiver of any other provision, nor shall any waiver constitute a continuing waiver. No waiver shall be binding unless executed in writing by the Party making the waiver.

23. This Agreement shall be construed under the laws of the State of Texas, without regard to its principles relating to conflicts of law. Exclusive venue for any suit to enforce this Agreement will be in the state district courts sitting in Dallas County, Texas.

24. This Agreement may be executed with one or more separate counterparts and by facsimile or pdf, each of which, when so executed, shall together constitute and be one of the same instrument.

DATED: ___8/29/13___

<div align="right">

SW LOAN OO LP

BY SW LOAN OO GP, LLC—
GENERAL PARTNER

By: _____

Name: __L. Read Mortimer__

Its: __Vice President__


_____
James Randolph Light, Jr.

</div>

23.     This Agreement shall be construed under the laws of the State of Texas, without regard to its principles relating to conflicts of law. Exclusive venue for any suit to enforce this Agreement will be in the state district courts sitting in Dallas County, Texas.

24.     This Agreement may be executed with one or more separate counterparts and by facsimile or pdf, each of which, when so executed, shall together constitute and be one of the same instrument.

DATED:    8/28/2013

SW LOAN OO LP

BY SW LOAN OO GP, LLC—
GENERAL PARTNER

By: _____

Name: _____

Its: _____

James Randolph Light, Jr.

**FORMAL SETTLEMENT AGREEMENT - Page 9 of 16**

EXHIBIT 1

A.  that certain Promissory Note dated effective September 30, 2008, executed and delivered by James Randolph Light, Jr., Victor Lissiak, Jr., and Lawrence C. Don to Stillwater National Bank and Trust Company in the amount of $2,500,000.00 in principal, plus interest (see Exhibit 1-A hereto);

B.  that certain Amended and Restated Promissory Note dated July 31, 2011, executed and delivered by James Randolph Light, Jr. to Stillwater National Bank and Trust Company in the amount of $500,000.00 in principal, plus interest (see Exhibit 1-B hereto);

C.  that certain Amended and Restated Promissory Note dated effective July 31, 2011, executed and delivered by James Randolph Light, Jr. to Stillwater National Bank and Trust Company in the amount of $2,500,000.00 in principal, plus interest (see Exhibit 1-C hereto);

D.  that certain August 10, 2005 Limited Guaranty Agreement executed by James Randolph Light, Jr. in favor of Stillwater National Bank and Trust Company (see Exhibit 1-D hereto);

E.  that certain June 11, 2007 Limited Guaranty Agreement executed by James Randolph Light, Jr. in favor of Stillwater National Bank and Trust Company (see Exhibit 1-E hereto);

F.  that certain September 30, 2008 Guaranty Agreement executed by James Randolph Light, Jr. in favor of Stillwater National Bank and Trust Company (see Exhibit 1-F hereto);

G.  that certain September 30, 2008 Amended and Restated Promissory Note executed and delivered by James Randolph Light, Jr., Sole Member of Tyler-Stretford General Partner, LLC, the general partner of The Stretford at the Cascades Limited Partnership, to Stillwater National Bank and Trust Company in the amount of $9,997,211.03 in principal, plus interest (see Exhibit 1-G hereto);

H.  that certain September 30, 2008 Amended and Restated Promissory Note executed and delivered by James Randolph Light, Jr., Sole Member of Tyler-Stretford General Partner, LLC, the general partner of The Stretford at the Cascades Limited Partnership, to Stillwater National Bank and Trust Company in the amount of $8,273,000.00 in principal, plus interest (see Exhibit 1-H hereto);

I.  that certain September 30, 2008 Promissory Note executed and delivered by James Randolph Light, Jr., Sole Member of Tyler-Stretford General Partner, LLC, the general partner of The Stretford at the Cascades Limited Partnership, to Stillwater National Bank and Trust Company in the amount of $2,575,000.00 in principal, plus interest (see Exhibit 1-I hereto);

J.  that certain September 30, 2008 Promissory Note executed and delivered by James Randolph Light, Jr. to Stillwater National Bank and Trust Company in the amount of $2,500,000.00 in principal, plus interest (see Exhibit 1-J hereto);

K.  the Lost Note Affidavit by Brent Bates dated December 13, 2011, for that certain June 30, 2009 Amended and Restated Promissory Note executed and delivered by James Randolph Light, Jr. to Stillwater National Bank and Trust Company in the amount of $2,500,000.00 in principal, plus interest (no. 6722000) (see Exhibit 1-K hereto);

L.  the Lost Note Affidavit by Brent Bates dated December 13, 2011, for that certain June 30, 2009 Amended and Restated Promissory Note executed and delivered by James Randolph Light, Jr. to Stillwater National Bank and Trust Company in the amount of $2,500,000.00 in principal, plus interest (no. 6721400) (see Exhibit 1-L hereto);

M.  the Lost Note Affidavit by Brent Bates dated December 13, 2011, for that certain March 31, 2010 Amended and Restated Promissory Note executed and delivered by James Randolph Light, Jr. to Stillwater National Bank and Trust Company in the amount of $2,500,000.00 in principal, plus interest (no. 6722000) (see Exhibit 1-M hereto);

N.  the Lost Note Affidavit by Brent Bates dated December 13, 2011, for that certain March 31, 2010 Amended and Restated Promissory Note executed and delivered by James Randolph Light, Jr. to Stillwater national Bank and Trust Company in the amount of $2,500,000.00 in principal, plus interest (no. 6721400) (see Exhibit 1-N hereto);

O.  the Lost Note Affidavit by Brent Bates dated December 13, 2011, for that certain July 31, 2010 Amended and Restated Promissory Note executed and delivered by James Randolph Light, Jr. to Stillwater National Bank and Trust Company in the amount of $500,000.00 in principal, plus interest (see Exhibit 1-O hereto);

P.  the Lost Note Affidavit by Brent Bates dated December 13, 2011, for that certain July 31, 2010 Amended and Restate Promissory Note executed and delivered by James Randolph Light, Jr. to Stillwater National Bank and Trust Company in the amount of $2,500,000.00 in principal, plus interest (see Exhibit 1-P hereto).

EXHIBIT 2

## MUTUAL RELEASE—LIGHT PARTIES AND SW LOAN OO LP

For good and valuable consideration, the receipt and adequacy of which is hereby acknowledged, SW Loan OO LP ("SW Loan"), for itself, its predecessors, successors, parents, subsidiaries, affiliates, and assigns hereby unconditionally and irrevocably releases and forever discharges James Randolph Light, Jr., Merrill Light, Paul Barringer Light, and Thomas Gray Light (collectively, the "Light Parties"), and each of their agents and attorneys acting in such capacity, past and present, from any and all debts, demands, actions, causes of action, suits, accounts, covenants, contracts, agreements, damages, losses, judgments, executions, orders, fees, costs, and expenses, and any and all claims, demands and liabilities whatsoever of any kind, whether in law or in equity, direct or indirect, which SW Loan ever had against them, from the beginning of time to the date of this Mutual Release.

For good and valuable consideration, the receipt and adequacy of which is hereby acknowledged, the Light Parties, for themselves, their successors in interest, and assigns hereby unconditionally and irrevocably release and forever discharge SW Loan, and each of its predecessors, successors, parents, subsidiaries, affiliates, assigns, officers, stockholders, directors, employees, insurers, partners, and agents and attorneys acting in such capacity, past and present, from any and all debts, demands, actions, causes of action, suits, accounts, covenants, contracts, agreements, damages, losses, judgments, executions, orders, fees, costs, and expenses, and any and all claims, demands and liabilities whatsoever of any kind, whether in law or in equity, direct or indirect, which the Light Parties ever had against them, from the beginning of time to the date of this Mutual Release.

This Mutual Release extends to all such claims, demands, or suits, whether now known or unknown, suspected or unsuspected, fixed or contingent, liquidated or unliquidated, whether

or not asserted in the litigation styled *J. Randolph Light, et al. v. Stillwater National Bank & Trust Company, et al.*, Cause No. 12-0384-A in the 7th District Court of Smith County, Texas, but excludes any claims arising out of the performance or nonperformance of the Final Settlement Agreement providing for execution of this Mutual Release. This Mutual Release is not effective unless and until it has been fully executed by the parties hereto. This Mutual Release may be executed with one or more separate counterparts and by facsimile or pdf, each of which, when so executed, shall together constitute and be one of the same instrument.

DATED: _____

SW LOAN OO LP

BY SW LOAN OO GP, LLC—
GENERAL PARTNER

By: _____

Name: _____

Its: _____

_____
James Randolph Light, Jr.

_____
Merrill Light

_____
Paul Barringer Light

_____
Thomas Gray Light

EXHIBIT 3

## MUTUAL RELEASE—LIGHT PARTIES AND
## STILLWATER NATIONAL BANK AND TRUST COMPANY

For good and valuable consideration, the receipt and adequacy of which is hereby acknowledged, Stillwater National Bank and Trust Company ("Stillwater"), for itself, its predecessors, successors, parents, subsidiaries, affiliates, and assigns hereby unconditionally and irrevocably releases and forever discharges James Randolph Light, Jr., Merrill Light, Paul Barringer Light, and Thomas Gray Light (collectively, the "Light Parties"), and each of their agents and attorneys acting in such capacity, past and present, from any and all debts, demands, actions, causes of action, suits, accounts, covenants, contracts, agreements, damages, losses, judgments, executions, orders, fees, costs, and expenses, and any and all claims, demands and liabilities whatsoever of any kind, whether in law or in equity, direct or indirect, which Stillwater ever had against them, from the beginning of time to the date of this Mutual Release.

For good and valuable consideration, the receipt and adequacy of which is hereby acknowledged, the Light Parties, for themselves, their successors in interest, and assigns hereby unconditionally and irrevocably release and forever discharge Stillwater, and each of its predecessors, successors, parents, subsidiaries, affiliates, assigns, officers, stockholders, directors, employees, insurers, partners, and agents and attorneys acting in such capacity, past and present, from any and all debts, demands, actions, causes of action, suits, accounts, covenants, contracts, agreements, damages, losses, judgments, executions, orders, fees, costs, and expenses, and any and all claims, demands and liabilities whatsoever of any kind, whether in law or in equity, direct or indirect, which the Light Parties ever had against them, from the beginning of time to the date of this Mutual Release.

This Mutual Release extends to all such claims, demands, or suits, whether now known or unknown, suspected or unsuspected, fixed or contingent, liquidated or unliquidated, whether or not asserted in the litigation styled *J. Randolph Light, et al. v. Stillwater National Bank & Trust Company, et al.*, Cause No. 12-0384-A in the 7th District Court of Smith County, Texas. This Mutual Release is not effective unless and until it has been fully executed by the parties hereto. This Mutual Release may be executed with one or more separate counterparts and by facsimile or pdf, each of which, when so executed, shall together constitute and be one of the same instrument.

DATED: _____

<div style="text-align: right;">

STILLWATER NATIONAL BANK AND TRUST COMPANY

By: _____

Name: _____

Its: _____

_____
James Randolph Light, Jr.

_____
Merrill Light

_____
Paul Barringer Light

_____
Thomas Gray Light

</div>

79078 000056 EMF US 46931188v1

EXHIBIT 1-A

LN# 672 1400
Victor Lissiak Jr

NOTE CLERK
NOV 07 2008
SNB
by Quality Assurance Clerk

## PROMISSORY NOTE

$2,500,000.00                                        Effective September 30, 2008

FOR VALUE RECEIVED, the undersigned, VICTOR LISSIAK, JR., an individual, LAWRENCE C. DON, an individual, and J. RANDOLPH LIGHT, JR., an individual (the "Borrowers"), jointly and severally, promise to pay to the order of STILLWATER NATIONAL BANK AND TRUST COMPANY, and its successors and assigns (the "Lender") at 6301 Waterford Boulevard, Suite 101, Oklahoma City, Oklahoma 73118, or at such other place as may be designated in writing by the Lender, the principal sum of TWO MILLION FIVE HUNDRED THOUSAND AND NO/100 DOLLARS ($2,500,000.00), together with interest thereon at the interest rates hereinafter stated, payable as set forth below.

Interest on this Note will be paid at the interest rate equal to the Prime Rate plus one percent (1%) per annum, adjusted on each day on which a change in the Prime Rate occurs, provided that the interest rate shall never be less than six percent (6.0%) per annum (the "Interest Rate"). "Prime Rate" means the prime rate as published in the "Money Rates" section of the *Wall Street Journal*, which interest rate is not necessarily the lowest rate of interest charged by the Lender. Interest only will be paid quarterly on this Note commencing on December 30, 2008, and on the same day of every third month thereafter until March 30, 2010. The entire unpaid principal balance of the Note and all accrued interest thereon will be due and payable on March 30, 2010 (the "Maturity Date"). All interest hereon shall be calculated for the actual number of days elapsed at a per diem charge based on a year consisting of 360 days.

This Note is executed, delivered and accepted, not in payment, but to consolidate, extend the maturity dates and otherwise amend and restate in their entirety (i) a certain Amended and Restated Promissory Note dated June 19, 2008, in the principal face amount of $1,200,000.00; (ii) a certain Amended and Restated Promissory Note dated June 19, 2008, in the principal face amount of $500,000.00; and (iii) a certain Promissory Note dated July 7, 2008, in the principal face amount of $800,000.00 (the "Prior Notes"), all as amended by that certain Deferral Agreement dated effective July 31, 2008. The undersigned Borrowers agree to remain liable for and to pay all interest accrued and owing under the Prior Notes as of the date of this Note.

Payments hereunder may, at the option of the Lender, be recorded on this Note or on the books and records of the Lender and will be prima facie evidence of said payments and the unpaid balance of this Note. All payments will first be applied to the payment of accrued interest and the balance will be applied in reduction of the principal balance hereof provided that no payment will be applied to this Note until received by the Lender in collected funds.

The Borrowers will have the right to prepay this Note in whole or in part at any time and from time to time without premium or penalty, but with interest accrued to the date of prepayment.

If a payment is more than ten (10) days late hereunder, the Borrowers will be charged ten percent (10%) of such unpaid payment or $500.00, whichever is less, as a late charge. In the alternative, at the Lender's option, while any Default exists hereunder or in the performance or observance of any of the terms, covenants or conditions of this Note or of any instrument now or hereafter securing the payment of the indebtedness evidenced hereby, the entire unpaid principal balance hereof shall bear interest at the per annum rate equal to fifteen percent (15%). During the existence of any such Default, the Lender may apply payments received on any amounts due hereunder, or under the terms of any instrument now or hereafter evidencing or securing such indebtedness, as the Lender may determine, and if the Lender so elects, notice of election being expressly waived, the principal hereof remaining unpaid, together with accrued interest, shall at once become due and payable. Any and all additional interest at the rate provided in this paragraph which has accrued shall be payable at the time of, and as a condition precedent to, the curing of any Default.

The Borrowers jointly and severally agree that if, and as often as, this Note is placed in the hands of an attorney for collection or to defend or enforce any of the Lender's right hereunder or under any instrument now or hereafter securing payment of this Note, the Borrowers will pay the Lender's reasonable attorneys' fees, all court costs and all other expenses incurred by the Lender in connection therewith.

This Note is to be construed according to the internal laws of the State of Oklahoma. All actions with respect to this Note or any other instrument securing payment of this Note may be instituted in the state or federal courts of the State of Oklahoma in Oklahoma County, Oklahoma, or in Smith County, Texas, as the Lender may elect, and by execution and delivery of this Note, the Borrowers jointly and severally, irrevocably and unconditionally submit to the jurisdiction (both subject matter and personal) of each such court and irrevocably and unconditionally waive: (a) any objection any of the Borrowers might now or hereafter have to the venue in any such court; and (b) any claim that any action or proceeding brought in any such court has been brought in an inconvenient forum.

On the failure to pay any principal or interest when due hereunder, or on the occurrence of any Default under any instrument securing payment of this Note, as defined or described therein, or upon failure to pay any other obligation owing by any of the Borrowers to the Lender, at the option of the Lender, the entire indebtedness evidenced by this Note will become immediately due, payable and collectible then or thereafter as the Lender might elect, regardless of the date of maturity hereof. Failure by the Lender to exercise such option will not constitute a waiver of the right to exercise the same in the event of any subsequent Default.

The makers, endorsers, sureties, guarantors and all other persons who may become liable for all or any part of this obligation severally waive presentment for payment, protest and notice of nonpayment. Said parties consent to any extension of time (whether one or more) of payment hereof, release of all or any part of the security for the payment hereof or release of any party liable for the payment of this obligation. Any such extension or release may be made without notice to any such party and without discharging such party's liability hereunder.

2

IN WITNESS WHEREOF, the Borrowers have executed this instrument effective the date first above written.

_____
**VICTOR LISSIAK, JR., Individually**

_____
**LAWRENCE C. DON, Individually**

_____
**J. RANDOLPH LIGHT, JR., Individually**

(the "Borrowers")

PAY TO THE ORDER OF
SW Loan OO, L.P.
AND ITS SUCCESSORS AND ASSIGNS, WITHOUT
RECOURSE AND DISCLAIMING ANY WARRANTY
CREATED BY THIS INDORSEMENT, EXCEPT AS SET
FORTH IN THAT CERTAIN LOAN AND REAL ESTATE
SALE AGREEMENT DATED DECEMBER 1, 2011,
AS AMENDED AND ASSIGNED.
EXECUTED THIS 13 DAY OF DECEMBER, 2011:

THE STILLWATER NATIONAL BANK AND
TRUST COMPANY
BY: _____
Name: Brent Bates
Title: SVP

3

# EXHIBIT 1-B

Court Clerk

SEP 06 2011





## AMENDED AND RESTATED PROMISSORY NOTE

$500,000.00                                                                July 31, 2011

FOR VALUE RECEIVED, the undersigned, J. RANDOLPH LIGHT, JR., an individual (the "Borrower"), promises to pay to the order of STILLWATER NATIONAL BANK AND TRUST COMPANY, and its successors and assigns (the "Lender") at 6301 Waterford Boulevard, Suite 101, Oklahoma City, Oklahoma 73118, or at such other place as may be designated in writing by the Lender, the principal sum of FIVE HUNDRED THOUSAND AND NO/100 DOLLARS ($500,000.00), together with interest thereon at the interest rates hereinafter stated, payable as set forth below.

Unless otherwise defined herein, all terms defined or referenced in that certain Omnibus Agreement dated effective September 30, 2009, as amended by a certain First Amendment to Omnibus Agreement dated effective June 30, 2009, and a certain Second Amendment to Omnibus Agreement dated effective March 31, 2010 among the Borrower, The Stretford at the Cascades Limited Partnership, a Texas limited partnership ("Stretford"), Lawrence C. Don, Victor Lissiak, Jr., and the Lender (collectively, the "Agreement") will have the same meanings herein as therein.

by Quality Assurance Clerk

Interest on this Note will be paid at the interest rate equal to the Prime Rate plus one percent (1%) per annum, adjusted on each day on which a change in the Prime Rate occurs (the "Interest Rate"). "Prime Rate" means the prime rate as published in the "Money Rates" section of the Wall Street Journal, which interest rate is not necessarily the lowest rate of interest charged by the Lender. Interest only will be paid quarterly on this Note commencing on September 30, 2011, and on the same day of every third month thereafter until October 31, 2011. The entire unpaid principal balance of the Note and all accrued interest thereon will be due and payable on October 31, 2011 (the "Maturity Date"). All interest hereon shall be calculated for the actual number of days elapsed at a per diem charge based on a year consisting of 360 days.

Advances and payments hereunder may, at the option of the Lender, be recorded on this Note or on the books and records of the Lender and will be prima facie evidence of said advances, payment and the unpaid balance of this Note. All payments will first be applied to the payment of accrued interest and the balance will be applied in reduction of the principal balance hereof provided that no payment will be applied to this Note until received by the Lender in collected funds.

The Borrower will have the right to prepay this Note in whole or in part at any time and from time to time without premium or penalty, but with interest accrued to the date of prepayment.

If a payment is more than ten (10) days late hereunder, the Borrower will be charged ten percent (10%) of such unpaid payment or $500.00, whichever is less, as a late charge. In the alternative, at the Lender's option, while any Default exists hereunder or in the performance or observance of any of the terms, covenants or conditions of this Note or of any instrument now or hereafter securing the payment of the indebtedness evidenced hereby, the entire unpaid principal

balance hereof shall bear interest at the per annum rate equal to fifteen percent (15%). During the existence of any such Default, the Lender may apply payments received on any amounts due hereunder, or under the terms of any instrument now or hereafter evidencing or securing such indebtedness, as the Lender may determine, and if the Lender so elects, notice of election being expressly waived, the principal hereof remaining unpaid, together with accrued interest, shall at once become due and payable. Any and all additional interest at the rate provided in this paragraph which has accrued shall be payable at the time of, and as a condition precedent to, the curing of any Default.

The Borrower agrees that if, and as often as, this Note is placed in the hands of an attorney for collection or to defend or enforce any of the Lender's right hereunder or under any instrument now or hereafter securing payment of this Note, the Borrower will pay the Lender's reasonable attorneys' fees, all court costs and all other expenses incurred by the Lender in connection therewith.

This Note is executed, delivered and accepted, not in payment, but to renew and otherwise amend and restate that certain Promissory Note in the original principal amount of $2,500,000.00 executed and delivered by the Borrower to the lender effective September 30, 2008, as amended by that certain Amended and Restated Promissory Note dated effective June 30, 2009, as amended by that certain Amended and Restated Promissory Note dated effective March 31, 2010, as amended by that certain Amended and Restated Promissory Note dated effective July 31, 2010 (collectively, the "Prior Note"). The undersigned agrees to remain liable for and to pay all interest accrued and owing under the Prior Note as of the date of this Note.

This Note is to be construed according to the internal laws of the State of Oklahoma. All actions with respect to this Note or any other instrument securing payment of this Note may be instituted in the state or federal courts sitting in or having jurisdiction over Oklahoma County, Oklahoma, or Smith County, Texas, as the Lender may elect, and by execution and delivery of this Note, the Borrower irrevocably and unconditionally submits to the jurisdiction (both subject matter and personal) of each such court and irrevocably and unconditionally waives: (a) any objection the Borrower might now or hereafter have to the venue in any such court; and (b) any claim that any action or proceeding brought in any such court has been brought in an inconvenient forum.

On the failure to pay any principal or interest when due hereunder, or on the occurrence of any Default under the Agreement, as defined or described therein, or upon failure to pay any other obligation owing by any of the Borrower to the Lender, at the option of the Lender, the entire indebtedness evidenced by this Note will become immediately due, payable and collectible then or thereafter as the Lender might elect, regardless of the date of maturity hereof. Failure by the Lender to exercise such option will not constitute a waiver of the right to exercise the same in the event of any subsequent Default.

The makers, endorsers, sureties, guarantors and all other persons who may become liable for all or any part of this obligation severally waive presentment for payment, protest and notice of nonpayment. Said parties consent to any extension of time (whether one or more) of payment hereof, release of all or any part of the security for the payment hereof or release of any party liable for the

2

payment of this obligation. Any such extension or release may be made without notice to any such party and without discharging such party's liability hereunder.

IN WITNESS WHEREOF, the Borrower has executed this instrument effective the date first above written.

**J. RANDOLPH LIGHT, JR., individually**

PAY TO THE ORDER OF
SW Loan 00, L.P.
AND ITS SUCCESSORS AND ASSIGNS, WITHOUT RECOURSE AND DISCLAMING ANY WARRANTY CREATED BY THIS INDORSEMENT, EXCEPT AS SET FORTH IN THAT CERTAIN LOAN AND REAL ESTATE SALE AGREEMENT DATED DECEMBER __, 2011, AS AMENDED AND ASSIGNED.
EXECUTED THIS 13 DAY OF DECEMBER, 2011:

THE STILLWATER NATIONAL BANK AND TRUST COMPANY
BY: _____
Name: Brent A. Bates
Title: SVP

3

EXHIBIT 1-C

Filed
SEP 06 2011



## AMENDED AND RESTATED PROMISSORY NOTE

$2,500,000.00                                                    Effective July 31, 2011

✓ by Quality
Assurance Clerk

FOR VALUE RECEIVED, the undersigned, VICTOR LISSIAK, JR., an individual, LAWRENCE C. DON, an individual, and J. RANDOLPH LIGHT, JR., an individual (the "Borrowers"), jointly and severally, promise to pay to the order of STILLWATER NATIONAL BANK AND TRUST COMPANY, and its successors and assigns (the "Lender") at 6301 Waterford Boulevard, Suite 101, Oklahoma City, Oklahoma 73118, or at such other place as may be designated in writing by the Lender, the principal sum of TWO MILLION FIVE HUNDRED THOUSAND AND NO/100 DOLLARS ($2,500,000.00), together with interest thereon at the interest rates hereinafter stated, payable as set forth below.

Unless otherwise defined herein, all terms defined or referenced in that certain Omnibus Agreement dated effective September 30, 2009, as amended by a certain First Amendment to Omnibus Agreement dated effective June 30, 2009, and a certain Second Amendment to Omnibus Agreement dated effective March 31, 2010 among the Borrowers, The Stretford at the Cascades Limited Partnership, a Texas limited partnership ("Stretford"), and the Lender (collectively, the "Agreement") will have the same meaning herein as therein.

Interest on this Note will be paid at the interest rate equal to the Prime Rate plus one percent (1%) per annum, adjusted on each day on which a change in the Prime Rate occurs (the "Interest Rate"). "Prime Rate" means the prime rate as published in the "Money Rates" section of the *Wall Street Journal*, which interest rate is not necessarily the lowest rate of interest charged by the Lender. Interest only will be paid quarterly on this Note commencing on September 30, 2010, and on the last day of every third month thereafter until October 31, 2011. The entire unpaid principal balance of the Note and all accrued interest thereon will be due and payable on October 31, 2011 (the "Maturity Date"). All interest hereon shall be calculated for the actual number of days elapsed at a per diem charge based on a year consisting of 360 days.

Payments hereunder may, at the option of the Lender, be recorded on this Note or on the books and records of the Lender and will be prima facie evidence of said payments and the unpaid balance of this Note. All payments will first be applied to the payment of accrued interest and the balance will be applied in reduction of the principal balance hereof provided that no payment will be applied to this Note until received by the Lender in collected funds.

The Borrowers will have the right to prepay this Note in whole or in part at any time and from time to time without premium or penalty, but with interest accrued to the date of prepayment.

If a payment is more than ten (10) days late hereunder, the Borrowers will be charged ten percent (10%) of such unpaid payment or $500.00, whichever is less, as a late charge. In the alternative, at the Lender's option, while any Default exists hereunder or in the performance or

observance of any of the terms, covenants or conditions of this Note or of any instrument now or hereafter securing the payment of the indebtedness evidenced hereby, the entire unpaid principal balance hereof shall bear interest at the per annum rate equal to fifteen percent (15%). During the existence of any such Default, the Lender may apply payments received on any amounts due hereunder, or under the terms of any instrument now or hereafter evidencing or securing such indebtedness, as the Lender may determine, and if the Lender so elects, notice of election being expressly waived, the principal hereof remaining unpaid, together with accrued interest, shall at once become due and payable. Any and all additional interest at the rate provided in this paragraph which has accrued shall be payable at the time of, and as a condition precedent to, the curing of any Default.

The Borrowers jointly and severally agree that if, and as often as, this Note is placed in the hands of an attorney for collection or to defend or enforce any of the Lender's right hereunder or under any instrument now or hereafter securing payment of this Note, the Borrowers will pay the Lender's reasonable attorneys' fees, all court costs and all other expenses incurred by the Lender in connection therewith.

This Note is executed, delivered and accepted, not in payment, but to renew and otherwise amend and restate that certain Promissory Note in the original principal amount of $2,500,000.00 executed and delivered by the Borrowers to the lender effective September 30, 2008, as amended by that certain Amended and Restated Promissory Note dated effective June 30, 2009, as amended by that certain Amended and Restated Promissory Note dated effective March 31, 2010, as amended by that certain Amended and Restated Promissory Note dated effective July 31, 2011 (collectively, the "Prior Note"). The undersigned agrees to remain liable for and to pay all interest accrued and owing under the Prior Note as of the date of this Note.

This Note is to be construed according to the internal laws of the State of Oklahoma. All actions with respect to this Note or any other instrument securing payment of this Note may be instituted in the state or federal courts of the State of Oklahoma in Oklahoma County, Oklahoma, or in Smith County, Texas, as the Lender may elect, and by execution and delivery of this Note, the Borrowers jointly and severally, irrevocably and unconditionally submit to the jurisdiction (both subject matter and personal) of each such court and irrevocably and unconditionally waive: (a) any objection any of the Borrowers might now or hereafter have to the venue in any such court; and (b) any claim that any action or proceeding brought in any such court has been brought in an inconvenient forum.

On the failure to pay any principal or interest when due hereunder, or on the occurrence of any Default under the Agreement, as defined or described therein, or upon failure to pay any other obligation owing by any of the Borrowers to the Lender, at the option of the Lender, the entire indebtedness evidenced by this Note will become immediately due, payable and collectible then or thereafter as the Lender might elect, regardless of the date of maturity hereof. Failure by the Lender to exercise such option will not constitute a waiver of the right to exercise the same in the event of any subsequent Default.

2

The makers, endorsers, sureties, guarantors and all other persons who may become liable for all or any part of this obligation severally waive presentment for payment, protest and notice of nonpayment. Said parties consent to any extension of time (whether one or more) of payment hereof, release of all or any part of the security for the payment hereof or release of any party liable for the payment of this obligation. Any such extension or release may be made without notice to any such party and without discharging such party's liability hereunder.

IN WITNESS WHEREOF, the Borrowers have executed this instrument effective the date first above written.

_____

**VICTOR LISSIAK, JR., Individually**

_____

**LAWRENCE C. DON, Individually**

_____

**J. RANDOLPH LIGHT, JR., Individually**

(the "Borrowers")

PAY TO THE ORDER OF
_SW Loan OO LP_
AND ITS SUCCESSORS AND ASSIGNS, WITHOUT
RECOURSE AND DISCLAMING ANY WARRANTY
CREATED BY THIS INDORSEMENT, EXCEPT AS SET
FORTH IN THAT CERTAIN LOAN AND REAL ESTATE
SALE AGREEMENT DATED DECEMBER _1_, 2011,
AS AMENDED AND ASSIGNED.
EXECUTED THIS _13_ DAY OF DECEMBER, 2011:

THE STILLWATER NATIONAL BANK AND
TRUST COMPANY
BY: _____
Name: _Blunt Bates_
Title: _SVP_

3

# EXHIBIT 1-D

# LIMITED GUARANTY AGREEMENT

THIS LIMITED GUARANTY AGREEMENT (the "Guaranty Agreement") is made effective the 10th day of August, 2005, by J. RANDOLPH LIGHT, JR., an individual (the "Guarantor"), in favor of STILLWATER NATIONAL BANK AND TRUST COMPANY, (the "Lender").

## W I T N E S S E T H:

WHEREAS, pursuant to the terms of a certain Construction Loan Agreement dated August 10, 2005 (the "Agreement"), the Lender has extended credit to THE STRETFORD AT THE CASCADES LIMITED PARTNERSHIP, a Texas limited partnership (the "Borrower") in the total principal amount of FOURTEEN MILLION ONE HUNDRED THOUSAND AND NO/100 DOLLARS ($14,100,000.00) as evidenced by that certain Promissory Note of even date herewith, in the maximum principal face amount of $14,100,000.00 (the "Note"), which Note is secured in part by a Deed of Trust and Security Agreement, Financing Statement, and an Assignment of Lessor's Interest in Rents and Lease Agreements covering certain real property located in Smith County, Texas, and a high-rise residential condominium building to be located thereon (such real property and improvements are collectively referred to herein as the "Project"); and

WHEREAS, the extension of credit to the Borrower by the Lender pursuant to the Agreement, will be beneficial to the Guarantor. Guarantor holds a significant investment interest in the Borrower; and

WHEREAS, in connection with the extension of credit by the Lender to the Borrower, the Lender is relying, in part, on the creditworthiness of the Guarantor; and

WHEREAS, this Guaranty Agreement is executed and delivered to the Lender by the Guarantor to induce the Lender to extend credit under the Note pursuant to the Agreement, and in satisfaction of a material condition precedent thereto;

NOW, THEREFORE, in consideration of the extension of credit by the Lender to the Borrower under the Agreement as evidenced by the Note, and the benefits to be received by the Guarantor therefrom, it is agreed as follows:

1. The Guarantor hereby authorizes, consents to, agrees to and ratifies the terms, conditions, representations and warranties contained in the Agreement, the Note, the Loan Documents (which term will have the same meaning herein as defined in the Agreement), and all documents executed in connection therewith, and authorizes the execution and delivery thereof.

2. The Guarantor hereby guarantees to the Lender the absolute, complete and punctual payment when due of all principal indebtedness and other monetary obligations evidenced by or owing under the Note, the Agreement, the Loan Documents, and all other documents executed in connection therewith, all other indebtedness now or hereafter owing by the Borrower to the Lender, and all renewals, consolidations, modifications, amendments, increases and extensions thereof, together

1

with all interest thereon and all expenses of collection thereof including attorneys' fees and expenses (all of the foregoing are referred to herein as the "Indebtedness"), provided that the Guarantor's foregoing guarantee of payment and performance obligation owing hereunder, is limited to $3,750,000 of principal of the Indebtedness plus the pro rata share of all interest and expenses of collection (including attorneys fees and expenses) attributable to such $3,750,000. Except as limited herein, this Guaranty Agreement is an absolute, unconditional and continuing guaranty of payment of the entire amount of the Indebtedness. The obligations of the Guarantor hereunder will not terminate until the entire amount of the Indebtedness has been paid to the Lender in full in current funds. All moneys available to the Lender for application in payment or reduction of the Indebtedness may be applied by the Lender in such manner and in such amounts and at such time or times as the Lender may see fit to the payment thereof as the Lender may elect. Notwithstanding the foregoing, Lender shall release this Guaranty when and if at least 37 units in the Project are sold at projected sales prices (based on projections furnished to Lender as of the date of this Guaranty), and all net sales proceeds collected and applied as set forth in the Agreement.

3.  Representations and Warranties. To induce the Lender to extend credit to the Borrower, the Guarantor represents and warrants as follows, each of which representations and warranties will survive until the Indebtedness is paid in full:

   3.1  Financial Condition. The current financial statements of the Guarantor, copies of which have been furnished to the Lender, are correct and complete and fairly reflect the Guarantor's financial condition as of the date thereof. There has occurred no material adverse change in the financial condition of the Guarantor included in said financial statements from the effective date thereof, to the effective date hereof.

   3.2  Financial Information. Subject to any limitations stated therein or in connection therewith, all balance sheets, and other financial data which have been or may hereafter be furnished to the Lender to induce the Lender to enter into or continue with the Indebtedness or otherwise in connection herewith, do or will fairly represent the financial condition of the Guarantor, as of the date thereof, and all other information, reports, and other papers and data furnished to the Lender by or on behalf of the Guarantor, are or shall be at the time the same are so furnished, accurate and correct in all material respects and complete insofar as completeness may be necessary to give the Lender a true and accurate knowledge of the subject matter.

   3.3  Litigation. There is no action, suit, proceeding or investigation pending before any court or regulatory agency, or to the current, actual knowledge of the Guarantor threatened against the Guarantor, which might materially adversely affect the financial condition of the Guarantor.

   3.4  Taxes. The Guarantor has filed all federal, state and local tax returns which are required to be filed for the current fiscal year and prior tax years and has paid or made provisions for payment of all taxes which have or may become due pursuant to said returns, except such taxes as are being contested in good faith and as to which adequate reserves have been provided. The Guarantor knows of no basis for the assessment of any deficiency taxes against the Guarantor.

2

3.5    No Default. The making and performance by the Guarantor of this Agreement will not violate any provision or constitute a default under any law, loan or credit agreement, indenture, or any other agreement or instrument to which the Guarantor is a party or by which the Guarantor is bound or affected.

4.    The Guarantor hereby consents to the following events and agrees that the Guarantor's liability hereunder will not be released, reduced, impaired or affected by the occurrence of any one or more of the following events: (a) the Lender's obtaining collateral from the Borrower or any other person to secure payment of the Indebtedness; (b) the assumption of liability by any other person (whether as guarantor or otherwise) for payment of all or any portion of the Indebtedness; (c) the release, surrender, exchange, impairment, loss, termination, waiver or other discharge of any collateral securing payment of the Indebtedness; (d) the subordination, relinquishment, discharge or impairment of the Lender's rights relating to the Indebtedness or of any of the documents evidencing or securing the Indebtedness or any collateral securing the Indebtedness; (e) the full or partial release from liability of the Borrower, any other guarantor, or any other person now or hereafter liable for payment of all or any portion of the Indebtedness; (f) the death, insolvency, bankruptcy, reorganization, disability, discharge, waiver or other exoneration of the Borrower, any other guarantor, or any other person now or hereafter primarily or contingently liable for payment of the Indebtedness; (g) the renewal, consolidation, extension, modification, rearrangement, amendment or increase from time to time of the Indebtedness; (h) the failure, delay, waiver or refusal by the Lender to exercise any right or remedy held by the Lender under the Note, the Agreement, or any other document evidencing or securing the Indebtedness or otherwise executed in connection therewith or any renewals or modifications thereof; (i) the sale, encumbrance, transfer or other modification of the ownership of Borrower, or substantially all of the assets of Borrower, or the change in the financial condition or management of Borrower; (j) the invalidity, unenforceability or insufficiency of all or any portion of this Guaranty Agreement, the Note, the Agreement or any other document evidencing or securing the Indebtedness; (k) the failure of the Lender to perfect the Lender's security interest in any collateral given to secure payment of any or all of the Indebtedness; or (l) the failure of the Guarantor to receive notice of any one or more of the foregoing actions or events.

5.    Subject to applicable notice and cure provisions set forth in the Note, Agreement and other Loan Documents, the Lender may, at the Lender's option, proceed to enforce this Guaranty Agreement directly against the Guarantor immediately after the occurrence of a default under the Agreement (as defined or described therein), without first proceeding against the Borrower or any other guarantor or any other person liable for payment of the Indebtedness, and without first proceeding against or exhausting any collateral now or hereafter held by the Lender to secure payment of the Indebtedness.

6.    Subject to applicable notice and cure provisions set forth in the Note, Agreement and other Loan Documents, the Guarantor hereby waives diligence, presentment, protest, notice of protest, notice of dishonor, demand for payment, notice of nonpayment of the Indebtedness or any of the documents evidencing or securing the Indebtedness, any notice of acceptance of this Guaranty Agreement and all other notices of any nature in connection with the exercise of the Lender's rights under this Guaranty Agreement, the Note, the Agreement and under any other documents evidencing or securing the Indebtedness. Performance by the Guarantor hereunder will not entitle the Guarantor

3

to any payment from the Borrower under any claim for contribution, indemnification, subrogation or otherwise, until such time as all amounts owing by the Borrower to the Lender, have been paid in full. The Guarantor waives all rights to setoffs and counterclaims against the Lender and agrees that any rights which the Guarantor might now or hereafter hold against the Borrower will be subordinate, junior and inferior to all rights which the Lender might now or hereafter hold against Borrower.

7.  The Guarantor hereby agrees that in any action brought to enforce this Guaranty Agreement, the Guarantor will pay to the Lender all reasonable attorneys' fees, court costs and other expenses incurred by the Lender in connection therewith.

8.  The Guarantor hereby waives and relinquishes all of the Guarantor's rights provided by 12 Okla. Stat. § 686, 15 Okla. Stat. §§ 334, 338, 341 and 344, Texas Property Code Sections 51.003, 51.004, and 51.005, and all other statutory, constitutional, and common law rights, remedies, defenses and set-off credits related to Guarantor's ability to obtain a credit for the fair market value of the Project which may be accorded to the Guarantor under Oklahoma or Texas law.

9.  Nothing herein contained will limit the Lender in exercising any rights held under the Note or under any other documents evidencing or securing the Indebtedness. In the event of any default under the Agreement, either of the Note, or any other documents evidencing or securing all or any portion of the Indebtedness, the Lender will be entitled to selectively and successively enforce any one or more of the rights held by the Lender under this Guaranty Agreement, the Note, the Agreement, and under the Loan Documents (which term will have the same meaning herein as such term is defined in the Agreement), and such action will not be deemed a waiver of any other right held by the Lender. All of the remedies of the Lender under this Guaranty Agreement, the Agreement, the Note, the Loan Documents, and any other documents evidencing or securing the Indebtedness are cumulative and not alternative.

10. The Guarantor hereby represents that nothing exists to impair the effectiveness of the liability of the Guarantor to the Lender hereunder, or the immediate taking effect of this Guaranty Agreement as the agreement between the Guarantor and the Lender. Until the Indebtedness is paid in full, the Guarantor agrees to provide the Lender with the Guarantor's annual self-prepared financial statements within ninety (90) days after the close of each calendar year; and (b) the Guarantor's tax returns for each calendar year within fifteen (15) days of filing.

11. This Guaranty Agreement has been negotiated, executed and delivered in Oklahoma, and is intended to be construed in accordance with the laws of the State of Oklahoma. The Guarantor hereby waives all objections to venue and consents to the jurisdiction and venue of any state or federal court located in Oklahoma County, Oklahoma, or Collin County, Texas, as elected by the Lender, in connection with any action instituted by the Lender arising out of the execution, delivery or performance of this Guaranty Agreement. If any provision of this Guaranty Agreement is held to be invalid, illegal or unenforceable in any respect or application for any reason, such invalidity, illegality or unenforceability will not affect any other provisions herein contained and such other provisions will remain in full force and effect. This Guaranty Agreement will be binding on the Guarantor and the Guarantor's respective successors and assigns and will inure to the benefit of the Lender and all successors and assigns of the Lender. The Guarantor hereby consents to the

4

assignment of all or any portion of the rights of the Lender hereunder in connection with the assignment of the Indebtedness or any portion thereof without notice to the Guarantor. This Guaranty Agreement cannot be amended except by an agreement in writing signed by the parties to be charged thereby.

IN WITNESS WHEREOF, the Guarantor has duly executed this instrument effective the date first above written.

J. RANDOLPH LIGHT, JR., Individually

(the "Guarantor")

5

# EXHIBIT 1-E

## LIMITED GUARANTY AGREEMENT

THIS LIMITED GUARANTY AGREEMENT (the "Guaranty Agreement") is made effective the _1/_ day of June, 2007, by J. RANDOLPH LIGHT, JR., an individual (the "Guarantor"), in favor of STILLWATER NATIONAL BANK AND TRUST COMPANY, (the "Lender").

### WITNESSETH:

WHEREAS, pursuant to the terms of a certain Supplemental Construction Loan Agreement dated of event date (the "Agreement"), the Lender has extended credit to THE STRETFORD AT THE CASCADES LIMITED PARTNERSHIP, a Texas limited partnership (the "Borrower") in the total principal amount of EIGHT MILLION TWO HUNDRED SEVENTY-THREE THOUSAND AND NO/100 DOLLARS ($8,273,000.00) as evidenced by that certain Promissory Note of even date herewith, in the maximum principal face amount of $8,273,000.00 (the "Note"), which Note is secured in part by a Deed of Trust and Security Agreement, Financing Statement, and an Assignment of Lessor's Interest in Rents and Lease Agreements covering certain real property located in Smith County, Texas, and a high-rise residential condominium building to be located thereon (such real property and improvements are collectively referred to herein as the "Project"); and

WHEREAS, the extension of credit to the Borrower by the Lender pursuant to the Agreement, will be beneficial to the Guarantor. Guarantor holds a significant investment interest in the Borrower; and

WHEREAS, in connection with the extension of credit by the Lender to the Borrower, the Lender is relying, in part, on the creditworthiness of the Guarantor; and

WHEREAS, this Guaranty Agreement is executed and delivered to the Lender by the Guarantor to induce the Lender to extend credit under the Note pursuant to the Agreement, and in satisfaction of a material condition precedent thereto;

NOW, THEREFORE, in consideration of the extension of credit by the Lender to the Borrower under the Agreement as evidenced by the Note, and the benefits to be received by the Guarantor therefrom, it is agreed as follows:

1.     The Guarantor hereby authorizes, consents to, agrees to and ratifies the terms, conditions, representations and warranties contained in the Agreement, the Note, the Loan Documents (which term will have the same meaning herein as defined in the Agreement), and all documents executed in connection therewith, and authorizes the execution and delivery thereof.

2.     The Guarantor hereby guarantees to the Lender the absolute, complete and punctual payment when due of all principal indebtedness and other monetary obligations evidenced by or owing under the Note, the Agreement, the Loan Documents, and all other documents executed in connection therewith, all other indebtedness now or hereafter owing by the Borrower to the Lender, and all

1

renewals, consolidations, modifications, amendments, increases and extensions thereof, together with all interest thereon and all expenses of collection thereof including attorneys' fees and expenses (all of the foregoing are referred to herein as the "Indebtedness"), provided that the Guarantor's foregoing guarantee of payment and performance obligation owing hereunder, is limited to $4,136,500.00 of principal of the Indebtedness plus the pro rata share of all interest and expenses of collection (including attorneys fees and expenses) attributable to such $4,136,500.00. Except as limited herein, this Guaranty Agreement is an absolute, unconditional and continuing guaranty of payment of the entire amount of the Indebtedness. The obligations of the Guarantor hereunder will not terminate until the entire amount of the Indebtedness has been paid to the Lender in full in current funds. All moneys available to the Lender for application in payment or reduction of the Indebtedness may be applied by the Lender in such manner and in such amounts and at such time or times as the Lender may see fit to the payment thereof as the Lender may elect. Notwithstanding the foregoing, Lender shall release this Guaranty when and if the $14,100,000 promissory note from Borrower to Lender is paid in full and the outstanding principal indebtedness under the Note has been reduced to $4,136,500.00 (with no ability for future advances under the Note).

3.    Representations and Warranties. To induce the Lender to extend credit to the Borrower, the Guarantor represents and warrants as follows, each of which representations and warranties will survive until the Indebtedness is paid in full:

3.1    Financial Condition. The current financial statements of the Guarantor, copies of which have been furnished to the Lender, are correct and complete and fairly reflect the Guarantor's financial condition as of the date thereof. There has occurred no material adverse change in the financial condition of the Guarantor included in said financial statements from the effective date thereof, to the effective date hereof.

3.2    Financial Information. Subject to any limitations stated therein or in connection therewith, all balance sheets, and other financial data which have been or may hereafter be furnished to the Lender to induce the Lender to enter into or continue with the Indebtedness or otherwise in connection herewith, do or will fairly represent the financial condition of the Guarantor, as of the date thereof, and all other information, reports, and other papers and data furnished to the Lender by or on behalf of the Guarantor, are or shall be at the time the same are so furnished, accurate and correct in all material respects and complete insofar as completeness may be necessary to give the Lender a true and accurate knowledge of the subject matter.

3.3    Litigation. There is no action, suit, proceeding or investigation pending before any court or regulatory agency, or to the current, actual knowledge of the Guarantor threatened against the Guarantor, which might materially adversely affect the financial condition of the Guarantor.

3.4    Taxes. The Guarantor has filed all federal, state and local tax returns which are required to be filed for the current fiscal year and prior tax years and has paid or made provisions for payment of all taxes which have or may become due pursuant to said returns, except such taxes as are being contested in good faith and as to which adequate reserves

2

have been provided. The Guarantor knows of no basis for the assessment of any deficiency taxes against the Guarantor.

3.5   No Default. The making and performance by the Guarantor of this Agreement will not violate any provision or constitute a default under any law, loan or credit agreement, indenture, or any other agreement or instrument to which the Guarantor is a party or by which the Guarantor is bound or affected.

4.   The Guarantor hereby consents to the following events and agrees that the Guarantor's liability hereunder will not be released, reduced, impaired or affected by the occurrence of any one or more of the following events: (a) the Lender's obtaining collateral from the Borrower or any other person to secure payment of the Indebtedness; (b) the assumption of liability by any other person (whether as guarantor or otherwise) for payment of all or any portion of the Indebtedness; (c) the release, surrender, exchange, impairment, loss, termination, waiver or other discharge of any collateral securing payment of the Indebtedness; (d) the subordination, relinquishment, discharge or impairment of the Lender's rights relating to the Indebtedness or of any of the documents evidencing or securing the Indebtedness or any collateral securing the Indebtedness; (e) the full or partial release from liability of the Borrower, any other guarantor, or any other person now or hereafter liable for payment of all or any portion of the Indebtedness; (f) the death, insolvency, bankruptcy, reorganization, disability, discharge, waiver or other exoneration of the Borrower, any other guarantor, or any other person now or hereafter primarily or contingently liable for payment of the Indebtedness; (g) the renewal, consolidation, extension, modification, rearrangement, amendment or increase from time to time of the Indebtedness; (h) the failure, delay, waiver or refusal by the Lender to exercise any right or remedy held by the Lender under the Note, the Agreement, or any other document evidencing or securing the Indebtedness or otherwise executed in connection therewith or any renewals or modifications thereof; (i) the sale, encumbrance, transfer or other modification of the ownership of Borrower, or substantially all of the assets of Borrower, or the change in the financial condition or management of Borrower; (j) the invalidity, unenforceability or insufficiency of all or any portion of this Guaranty Agreement, the Note, the Agreement or any other document evidencing or securing the Indebtedness; (k) the failure of the Lender to perfect the Lender's security interest in any collateral given to secure payment of any or all of the Indebtedness; or (l) the failure of the Guarantor to receive notice of any one or more of the foregoing actions or events.

5.   Subject to applicable notice and cure provisions set forth in the Note, Agreement and other Loan Documents, the Lender may, at the Lender's option, proceed to enforce this Guaranty Agreement directly against the Guarantor immediately after the occurrence of a default under the Agreement (as defined or described therein), without first proceeding against the Borrower or any other guarantor or any other person liable for payment of the Indebtedness, and without first proceeding against or exhausting any collateral now or hereafter held by the Lender to secure payment of the Indebtedness.

6.   Subject to applicable notice and cure provisions set forth in the Note, Agreement and other Loan Documents, the Guarantor hereby waives diligence, presentment, protest, notice of protest, notice of dishonor, demand for payment, notice of nonpayment of the Indebtedness or any of the documents evidencing or securing the Indebtedness, any notice of acceptance of this Guaranty Agreement and all other notices of any nature in connection with the exercise of the Lender's rights

under this Guaranty Agreement, the Note, the Agreement and under any other documents evidencing or securing the Indebtedness. Performance by the Guarantor hereunder will not entitle the Guarantor to any payment from the Borrower under any claim for contribution, indemnification, subrogation or otherwise, until such time as all amounts owing by the Borrower to the Lender, have been paid in full. The Guarantor waives all rights to setoffs and counterclaims against the Lender and agrees that any rights which the Guarantor might now or hereafter hold against the Borrower will be subordinate, junior and inferior to all rights which the Lender might now or hereafter hold against Borrower.

7.      The Guarantor hereby agrees that in any action brought to enforce this Guaranty Agreement, the Guarantor will pay to the Lender all reasonable attorneys' fees, court costs and other expenses incurred by the Lender in connection therewith.

8.      The Guarantor hereby waives and relinquishes all of the Guarantor's rights provided by 12 Okla. Stat. § 686, 15 Okla. Stat. §§ 334, 338, 341 and 344, Texas Property Code Sections 51.003, 51.004, and 51.005, and all other statutory, constitutional, and common law rights, remedies, defenses and set-off credits related to Guarantor's ability to obtain a credit for the fair market value of the Project which may be accorded to the Guarantor under Oklahoma or Texas law.

9.      Nothing herein contained will limit the Lender in exercising any rights held under the Note or under any other documents evidencing or securing the Indebtedness. In the event of any default under the Agreement, either of the Note, or any other documents evidencing or securing all or any portion of the Indebtedness, the Lender will be entitled to selectively and successively enforce any one or more of the rights held by the Lender under this Guaranty Agreement, the Note, the Agreement, and under the Loan Documents (which term will have the same meaning herein as such term is defined in the Agreement), and such action will not be deemed a waiver of any other right held by the Lender. All of the remedies of the Lender under this Guaranty Agreement, the Agreement, the Note, the Loan Documents, and any other documents evidencing or securing the Indebtedness are cumulative and not alternative.

10.     The Guarantor hereby represents that nothing exists to impair the effectiveness of the liability of the Guarantor to the Lender hereunder, or the immediate taking effect of this Guaranty Agreement as the agreement between the Guarantor and the Lender. Until the Indebtedness is paid in full, the Guarantor agrees to provide the Lender with the Guarantor's annual self-prepared financial statements within ninety (90) days after the close of each calendar year; and (b) the Guarantor's tax returns for each calendar year within fifteen (15) days of filing.

11.     This Guaranty Agreement has been negotiated, executed and delivered in Oklahoma, and is intended to be construed in accordance with the laws of the State of Oklahoma. The Guarantor hereby waives all objections to venue and consents to the jurisdiction and venue of any state or federal court located in Oklahoma County, Oklahoma, or Collin County, Texas, as elected by the Lender, in connection with any action instituted by the Lender arising out of the execution, delivery or performance of this Guaranty Agreement. If any provision of this Guaranty Agreement is held to be invalid, illegal or unenforceable in any respect or application for any reason, such invalidity, illegality or unenforceability will not affect any other provisions herein contained and such other provisions will remain in full force and effect. This Guaranty Agreement will be binding on the

4

Guarantor and the Guarantor's respective successors and assigns and will inure to the benefit of the Lender and all successors and assigns of the Lender. The Guarantor hereby consents to the assignment of all or any portion of the rights of the Lender hereunder in connection with the assignment of the Indebtedness or any portion thereof without notice to the Guarantor. This Guaranty Agreement cannot be amended except by an agreement in writing signed by the parties to be charged thereby.

IN WITNESS WHEREOF, the Guarantor has duly executed this instrument effective the date first above written.

**J. RANDOLPH LIGHT, JR.,** Individually

(the "Guarantor")

5

# EXHIBIT 1-F

# GUARANTY AGREEMENT

THIS GUARANTY AGREEMENT (the "Guaranty Agreement") is made effective the 30th day of September, 2008, by J. RANDOLPH LIGHT, JR., an individual (the "Guarantor"), in favor of STILLWATER NATIONAL BANK AND TRUST COMPANY, (the "Lender").

## WITNESSETH:

WHEREAS, pursuant to the terms of a certain Omnibus Agreement of even effective date herewith (the "Agreement"), the Lender has extended credit to THE STRETFORD AT THE CASCADES LIMITED PARTNERSHIP, a Texas limited partnership (the "Borrower") in the principal amount of TWO MILLION FIVE HUNDRED SEVENTY-FIVE THOUSAND AND NO/100 DOLLARS ($2,575,000.00) as evidenced by that certain Promissory Note of even date herewith in the principal face amount of $2,575,000.00 (the "Note"), which Note is secured in part by a Third Deed of Trust and Security Agreement, Financing Statement covering certain real property located in Smith County, Texas, and a high-rise residential condominium building located thereon (such real property and improvements are collectively referred to herein as the "Project"); and

WHEREAS, the extension of credit to the Borrower by the Lender pursuant to the Agreement, will be beneficial to the Guarantor. Guarantor holds a significant investment interest in the Borrower; and

WHEREAS, in connection with the extension of credit by the Lender to the Borrower, the Lender is relying, in part, on the creditworthiness of the Guarantor; and

WHEREAS, this Guaranty Agreement is executed and delivered to the Lender by the Guarantor to induce the Lender to extend credit under the Note pursuant to the Agreement, and in satisfaction of a material condition precedent thereto;

NOW, THEREFORE, in consideration of the extension of credit by the Lender to the Borrower under the Agreement as evidenced by the Note, and the benefits to be received by the Guarantor therefrom, it is agreed as follows:

1. The Guarantor hereby authorizes, consents to, agrees to and ratifies the terms, conditions, representations and warranties contained in the Agreement, the Note, the Loan Documents (which term will have the same meaning herein as defined in the Agreement), and all documents executed in connection therewith, and authorizes the execution and delivery thereof.

2. The Guarantor hereby guarantees to the Lender the absolute, complete and punctual payment when due of all principal indebtedness and other monetary obligations evidenced by or owing under the Note, the Agreement, the Loan Documents, and all other documents executed in connection therewith, all other indebtedness now or hereafter owing by the Borrower to the Lender, and all renewals, consolidations, modifications, amendments, increases and extensions thereof, together

with all interest thereon and all expenses of collection thereof including attorneys' fees and expenses (all of the foregoing are referred to herein as the "Indebtedness"). This Guaranty Agreement is an absolute, unconditional and continuing guaranty of payment of the entire amount of the Indebtedness. The obligations of the Guarantor hereunder will not terminate until the entire amount of the Indebtedness has been paid to the Lender in full in current funds. All moneys available to the Lender for application in payment or reduction of the Indebtedness may be applied by the Lender in such manner and in such amounts and at such time or times as the Lender may see fit to the payment thereof as the Lender may elect.

3.      Representations and Warranties. To induce the Lender to extend credit to the Borrower, the Guarantor represents and warrants as follows, each of which representations and warranties will survive until the Indebtedness is paid in full:

3.1     Financial Condition. The current financial statements of the Guarantor, copies of which have been furnished to the Lender, are correct and complete and fairly reflect the Guarantor's financial condition as of the date thereof. There has occurred no material adverse change in the financial condition of the Guarantor included in said financial statements from the effective date thereof, to the effective date hereof.

3.2     Financial Information. Subject to any limitations stated therein or in connection therewith, all balance sheets, and other financial data which have been or may hereafter be furnished to the Lender to induce the Lender to enter into or continue with the Indebtedness or otherwise in connection herewith, do or will fairly represent the financial condition of the Guarantor, as of the date thereof, and all other information, reports, and other papers and data furnished to the Lender by or on behalf of the Guarantor, are or shall be at the time the same are so furnished, accurate and correct in all material respects and complete insofar as completeness may be necessary to give the Lender a true and accurate knowledge of the subject matter.

3.3     Litigation. There is no action, suit, proceeding or investigation pending before any court or regulatory agency, or to the current, actual knowledge of the Guarantor threatened against the Guarantor, which might materially adversely affect the financial condition of the Guarantor.

3.4     Taxes. The Guarantor has filed all federal, state and local tax returns which are required to be filed for the current fiscal year and prior tax years and has paid or made provisions for payment of all taxes which have or may become due pursuant to said returns, except such taxes as are being contested in good faith and as to which adequate reserves have been provided. The Guarantor knows of no basis for the assessment of any deficiency taxes against the Guarantor.

3.5     No Default. The making and performance by the Guarantor of this Agreement will not violate any provision or constitute a default under any law, loan or credit agreement, indenture, or any other agreement or instrument to which the Guarantor is a party or by which the Guarantor is bound or affected.

2

4. The Guarantor hereby consents to the following events and agrees that the Guarantor's liability hereunder will not be released, reduced, impaired or affected by the occurrence of any one or more of the following events: (a) the Lender's obtaining collateral from the Borrower or any other person to secure payment of the Indebtedness; (b) the assumption of liability by any other person (whether as guarantor or otherwise) for payment of all or any portion of the Indebtedness; (c) the release, surrender, exchange, impairment, loss, termination, waiver or other discharge of any collateral securing payment of the Indebtedness; (d) the subordination, relinquishment, discharge or impairment of the Lender's rights relating to the Indebtedness or of any of the documents evidencing or securing the Indebtedness or any collateral securing the Indebtedness; (e) the full or partial release from liability of the Borrower, any other guarantor, or any other person now or hereafter liable for payment of all or any portion of the Indebtedness; (f) the death, insolvency, bankruptcy, reorganization, disability, discharge, waiver or other exoneration of the Borrower, any other guarantor, or any other person now or hereafter primarily or contingently liable for payment of the Indebtedness; (g) the renewal, consolidation, extension, modification, rearrangement, amendment or increase from time to time of the Indebtedness; (h) the failure, delay, waiver or refusal by the Lender to exercise any right or remedy held by the Lender under the Note, the Agreement, or any other document evidencing or securing the Indebtedness or otherwise executed in connection therewith or any renewals or modifications thereof; (i) the sale, encumbrance, transfer or other modification of the ownership of Borrower, or substantially all of the assets of Borrower, or the change in the financial condition or management of Borrower; (j) the invalidity, unenforceability or insufficiency of all or any portion of this Guaranty Agreement, the Note, the Agreement or any other document evidencing or securing the Indebtedness; (k) the failure of the Lender to perfect the Lender's security interest in any collateral given to secure payment of any or all of the Indebtedness; or (l) the failure of the Guarantor to receive notice of any one or more of the foregoing actions or events.

5. Subject to any applicable notice and cure provisions set forth in the Note, Agreement and other Loan Documents, the Lender may, at the Lender's option, proceed to enforce this Guaranty Agreement directly against the Guarantor immediately after the occurrence of a default under the Agreement (as defined or described therein), without first proceeding against the Borrower or any other guarantor or any other person liable for payment of the Indebtedness, and without first proceeding against or exhausting any collateral now or hereafter held by the Lender to secure payment of the Indebtedness.

6. Subject to any applicable notice and cure provisions set forth in the Note, Agreement and other Loan Documents, the Guarantor hereby waives diligence, presentment, protest, notice of protest, notice of dishonor, demand for payment, notice of nonpayment of the Indebtedness or any of the documents evidencing or securing the Indebtedness, any notice of acceptance of this Guaranty Agreement and all other notices of any nature in connection with the exercise of the Lender's rights under this Guaranty Agreement, the Note, the Agreement and under any other documents evidencing or securing the Indebtedness. Performance by the Guarantor hereunder will not entitle the Guarantor to any payment from the Borrower under any claim for contribution, indemnification, subrogation or otherwise, until such time as all amounts owing by the Borrower to the Lender, have been paid in full. The Guarantor waives all rights to setoffs and counterclaims against the Lender and agrees that any rights which the Guarantor might now or hereafter hold against the Borrower will be

subordinate, junior and inferior to all rights which the Lender might now or hereafter hold against Borrower.

7.     The Guarantor hereby agrees that in any action brought to enforce this Guaranty Agreement, the Guarantor will pay to the Lender all reasonable attorneys' fees, court costs and other expenses incurred by the Lender in connection therewith.

8.     The Guarantor hereby waives and relinquishes all of the Guarantor's rights provided by 12 Okla. Stat. § 686, 15 Okla. Stat. §§ 334, 338, 341 and 344, Texas Property Code Sections 51.003, 51.004, and 51.005, and all other statutory, constitutional, and common law rights, remedies, defenses and set-off credits related to Guarantor's ability to obtain a credit for the fair market value of the Project which may be accorded to the Guarantor under Oklahoma or Texas law.

9.     Nothing herein contained will limit the Lender in exercising any rights held under the Note or under any other documents evidencing or securing the Indebtedness. In the event of any default under the Agreement, either of the Note, or any other documents evidencing or securing all or any portion of the Indebtedness, the Lender will be entitled to selectively and successively enforce any one or more of the rights held by the Lender under this Guaranty Agreement, the Note, the Agreement, and under the Loan Documents (which term will have the same meaning herein as such term is defined in the Agreement), and such action will not be deemed a waiver of any other right held by the Lender. All of the remedies of the Lender under this Guaranty Agreement, the Agreement, the Note, the Loan Documents, and any other documents evidencing or securing the Indebtedness are cumulative and not alternative.

10.    The Guarantor hereby represents that nothing exists to impair the effectiveness of the liability of the Guarantor to the Lender hereunder, or the immediate taking effect of this Guaranty Agreement as the agreement between the Guarantor and the Lender. Until the Indebtedness is paid in full, the Guarantor agrees to provide the Lender with the Guarantor's annual self-prepared financial statements within ninety (90) days after the close of each calendar year; and (b) the Guarantor's tax returns for each calendar year within fifteen (15) days of filing.

11.    This Guaranty Agreement has been negotiated, executed and delivered in Oklahoma, and is intended to be construed in accordance with the laws of the State of Oklahoma. The Guarantor hereby waives all objections to venue and consents to the jurisdiction and venue of any state or federal court located in Oklahoma County, Oklahoma, or Smith County, Texas, as elected by the Lender, in connection with any action instituted by the Lender arising out of the execution, delivery or performance of this Guaranty Agreement. If any provision of this Guaranty Agreement is held to be invalid, illegal or unenforceable in any respect or application for any reason, such invalidity, illegality or unenforceability will not affect any other provisions herein contained and such other provisions will remain in full force and effect. This Guaranty Agreement will be binding on the Guarantor and the Guarantor's respective successors and assigns and will inure to the benefit of the Lender and all successors and assigns of the Lender. The Guarantor hereby consents to the assignment of all or any portion of the rights of the Lender hereunder in connection with the assignment of the Indebtedness or any portion thereof without notice to the Guarantor. This

Guaranty Agreement cannot be amended except by an agreement in writing signed by the parties to be charged thereby.

IN WITNESS WHEREOF, the Guarantor has duly executed this instrument effective the date first above written.

**J. RANDOLPH LIGHT, JR., individually**

(the "Guarantor")

EXHIBIT 1-G

*The Stretford @ the Cascades*

LN# 5789900   #900005789900

## AMENDED AND RESTATED
## PROMISSORY NOTE

Assistant Supervisor

NOV 06 2008

SNB

$9,997,211.03                                                    September 30, 2008

✓ by Quality
Assurance Clerk

FOR VALUE RECEIVED, the undersigned, THE STRETFORD AT THE CASCADES LIMITED PARTNERSHIP, a Texas limited partnership (the "Borrower"), promises to pay to the order of STILLWATER NATIONAL BANK AND TRUST COMPANY, and its successors and assigns (the "Lender") at 6301 Waterford Boulevard, Suite 101, Oklahoma City, Oklahoma 73118, or at such other place as may be designated in writing by the Lender, the principal sum of NINE MILLION NINE HUNDRED NINETY SEVEN THOUSAND TWO HUNDRED ELEVEN AND 03/100THS DOLLARS ($9,997,211.03), together with interest thereon as of September 30, 2008 in the amount of $102,649.18 and accruing thereafter at the interest rates stated below.

Unless otherwise defined herein, all terms defined or referenced in that certain Omnibus Agreement of even effective date herewith among the Borrower, J. Randolph Light, Jr., Lawrence C. Don, Victor Lissiak, Jr. and the Lender (the "Agreement") will have the same meanings herein as therein.

P+1% DOC
FLOOR 6%

This Note will bear interest at the rate equal to the Prime Rate plus one percent (1.0%) per annum, which interest rate will be adjusted on each day on which a change in the Prime Rate occurs; provided, however, that the interest rate shall never be less than six percent (6.0%) per annum (the "Interest Rate"). "Prime Rate" means the prime rate as published in the "Money Rates" section of the *Wall Street Journal*, which rate is not necessarily the lowest rate of interest charged by the Lender. Interest only will be paid monthly on this Note commencing on the date which is twelve (12) months after the effective date hereof (the "Commencement Date"), and on the same day of each month thereafter until March 30, 2010 (the "Maturity Date"), at which time the entire unpaid principal balance plus all accrued interest owing on this Note shall be due and payable. All interest hereon shall be calculated for the actual number of days elapsed at a per diem charge based on a year consisting of 360 days.

Int. mo.
9/30/09

ct./360

This Note is executed and delivered in connection with the Agreement, and all payments hereunder will be made subject to the terms and conditions contained in the Agreement. Payments hereunder may, at the option of the Lender, be recorded on this Note or on the books and records of the Lender and will be prima facie evidence of said payments and the unpaid balance of this Note. All payments received after the Commencement Date will first be applied to the payment of accrued interest and the balance will be applied in reduction of the principal balance hereof provided that no payment will be applied to this Note until received by the Lender in collected funds.

The Borrower will have the right to prepay this Note in whole or in part at any time and from time to time without premium or penalty, but with interest accrued and payable as of the date of prepayment.

LHM

If a payment is more than ten (10) days late hereunder, the Borrower will be charged ten percent (10%) of such unpaid payment or $500.00, whichever is less, as a late charge, or in the alternative, at the Lender's option, while any Default exists hereunder or under the Loan Agreement or in the performance or observance of any of the terms, covenants or conditions of this Note or any of the documents evidencing or securing this Note or of any instrument now or hereafter securing the payment of the indebtedness evidenced hereby, the entire unpaid principal balance hereof shall bear interest at the per annum rate equal to fifteen percent (15%). During the existence of any such Default, the Lender may apply payments received on any amounts due hereunder, or under the terms of any instrument now or hereafter evidencing or securing such indebtedness, as the Lender may determine, and if the Lender so elects, notice of election being expressly waived, the principal hereof remaining unpaid, together with accrued interest, shall at once become due and payable. Any and all additional interest at the rate provided in this paragraph which has accrued shall be payable at the time of, and as a condition precedent to, the curing of any Default.

This Note is secured by a Deed of Trust, Assignment of Rents and Security Agreement, and an Assignment of Lessor's Interest in Rents and Lease Agreements each dated effective August 11, 2005, as modified by a certain First Amendment to Deed of Trust, Assignment of Rents and Security Agreement of even effective date herewith, covering certain real property, tangible and intangible personal property, fixtures, and improvements of the Borrower, located in Smith County, Texas. This Note is guaranteed by certain Limited Guaranty Agreements dated effective August 11, 2005, signed by J. Randolph Light, Jr. and Carl Black, in favor of the Lender.

This Note is executed, delivered and accepted not in payment, but to extend the maturity date of and otherwise amend and restate a certain Promissory Note dated August 11, 2005, in the principal face amount of $14,100,000.00 (the "Prior Note"). The undersigned agrees to remain liable for and to pay all interest accrued and owing under the Prior Note as of the date of this Note.

The Borrower agrees that if, and as often as, this Note is placed in the hands of an attorney for collection or to defend or enforce any of the Lender's right hereunder or under any instrument securing payment of this Note, the Borrower will pay all of the Lender's reasonable attorneys' fees and expenses, all court costs and all other expenses incurred by the Lender in connection therewith.

Payment of this Note is secured by and subject to the terms and conditions of the Loan Documents. This Note is to be construed according to the internal laws of the State of Oklahoma. All actions with respect to this Note, the Loan Documents or any other instrument securing payment of this Note may be instituted in the state or federal courts of the State of Oklahoma in Oklahoma County, Oklahoma, or Smith County, Texas, as the Lender may elect, and by execution and delivery of this Note, the Borrower irrevocably and unconditionally submits to the jurisdiction (both subject matter and personal) of each such court and irrevocably and unconditionally waives: (a) any objection the Borrower might now or hereafter have to the venue in any such court; and (b) any claim that any action or proceeding brought in any such court has been brought in an inconvenient forum.

On the failure to pay any principal or interest when due hereunder, or on the occurrence of any default under the Agreement, as defined or described therein, at the option of the Lender, the

entire indebtedness evidenced by this Note will become immediately due, payable and collectible then or thereafter as the Lender might elect, regardless of the date of maturity hereof. Failure by the Lender to exercise such option will not constitute a waiver of the right to exercise the same in the event of any subsequent default.

The makers, endorsers, sureties, guarantors and all other persons who may become liable for all or any part of this obligation severally waive presentment for payment, protest and notice of nonpayment. Said parties consent to any extension of time (whether one or more) of payment hereof, release of all or any part of the security for the payment hereof or release of any party liable for the payment of this obligation. Any such extension or release may be made without notice to any such party and without discharging such party's liability hereunder.

IN WITNESS WHEREOF, the Borrower has executed this instrument effective the date first above written.

<div style="margin-left:40%">

**THE STRETFORD AT THE CASCADES LIMITED PARTNERSHIP, a Texas limited partnership**

By:   TYLER-STRETFORD     GENERAL PARTNER, LLC, a Texas limited liability company and General Partner

By:   _____
     J. Randolph Light, Jr., Sole Member

PAY TO THE ORDER OF
_SW Loan 00, L.P._
AND ITS SUCCESSORS AND ASSIGNS, WITHOUT RECOURSE AND DISCLAMING ANY WARRANTY CREATED BY THIS INDORSEMENT, EXCEPT AS SET FORTH IN THAT CERTAIN LOAN AND REAL ESTATE SALE AGREEMENT DATED DECEMBER_1_, 2011, AS AMENDED AND ASSIGNED.
EXECUTED THIS _13_ DAY OF DECEMBER, 2011:

THE STILLWATER NATIONAL BANK AND TRUST COMPANY
BY: _____
Name: _Brent Bates_
Title: _SVP_

</div>

# EXHIBIT 1-H

Stretford @ the Cascades

LN# 6361400 & 900006361400

Assistant Supervisor

NOV 0 6 2008

SNB

✓ by Quality
Assurance Clerk

# AMENDED AND RESTATED
## PROMISSORY NOTE

$8,273,000.00                                                September 30, 2008

FOR VALUE RECEIVED, the undersigned, THE STRETFORD AT THE CASCADES LIMITED PARTNERSHIP, a Texas limited partnership (the "Borrower"), promises to pay to the order of STILLWATER NATIONAL BANK AND TRUST COMPANY, and its successors and assigns (the "Lender") at 6301 Waterford Boulevard, Suite 101, Oklahoma City, Oklahoma 73118, or at such other place as may be designated in writing by the Lender, the principal sum of EIGHT MILLION TWO HUNDRED SEVENTY THREE THOUSAND DOLLARS ($8,273,000.00), together with interest accrued as of September 30, 2008 in the amount of $67,263.77 and accruing thereafter at the interest rates stated below.

Unless otherwise defined herein, all terms defined or referenced in that certain Omnibus Agreement of even effective date herewith among the Borrower, J. Randolph Light, Jr., Lawrence C. Don, Victor Lissiak, Jr. and the Lender (the "Agreement" will have the same meanings herein as therein.

This Note will bear interest at the rate equal to the Prime Rate plus one percent (1.0%) per annum, which interest rate will be adjusted on each day on which a change in the Prime Rate occurs; provided, however, that the interest rate shall never be less than six percent (6.0%) per annum (the "Interest Rate"). "Prime Rate" means the prime rate as published in the "Money Rates" section of the *Wall Street Journal*, which rate is not necessarily the lowest rate of interest charged by the Lender. Interest only will be paid monthly on this Note commencing on the date which is twelve (12) months after the effective date hereof (the "Commencement Date"), and on the same day of each month thereafter until March 30, 2010 (the "Maturity Date"), at which time the entire unpaid principal balance plus all accrued interest owing on this Note shall be due and payable. All interest hereon shall be calculated for the actual number of days elapsed at a per diem charge based on a year consisting of 360 days.

This Note is executed and delivered in connection with the Agreement, and all payments hereunder will be made subject to the terms and conditions contained in the Agreement. Payments hereunder may, at the option of the Lender, be recorded on this Note or on the books and records of the Lender and will be prima facie evidence of said payments and the unpaid balance of this Note. All payments received after the Commencement Date will first be applied to the payment of accrued interest and the balance will be applied in reduction of the principal balance hereof provided that no payment will be applied to this Note until received by the Lender in collected funds.

The Borrower will have the right to prepay this Note in whole or in part at any time and from time to time without premium or penalty, but with interest accrued and payable as of the date of prepayment.

If a payment is more than ten (10) days late hereunder, the Borrower will be charged ten percent (10%) of such unpaid payment or $500.00, whichever is less, as a late charge, or in the alternative, at the Lender's option, while any Default exists hereunder or under the Loan Agreement or in the performance or observance of any of the terms, covenants or conditions of this Note or any of the documents evidencing or securing this Note or of any instrument now or hereafter securing the payment of the indebtedness evidenced hereby, the entire unpaid principal balance hereof shall bear interest at the per annum rate equal to fifteen percent (15%). During the existence of any such Default, the Lender may apply payments received on any amounts due hereunder, or under the terms of any instrument now or hereafter evidencing or securing such indebtedness, as the Lender may determine, and if the Lender so elects, notice of election being expressly waived, the principal hereof remaining unpaid, together with accrued interest, shall at once become due and payable. Any and all additional interest at the rate provided in this paragraph which has accrued shall be payable at the time of, and as a condition precedent to, the curing of any Default.

This Note is secured by a Supplemental Deed of Trust and a Supplemental Assignment of Lessor's Interest in Rents and Lease Agreements each dated effective June 11, 2007, as amended by a certain First Amendment to Deed of Trust, Assignment of Rents and Security Agreement of even effective date herewith, covering certain real property, tangible and intangible personal property, fixtures, and improvements of the Borrower, located in Smith County, Texas. This Note is guaranteed by certain Limited Guaranty Agreements dated June 1, 2007, signed by J. Randolph Light, Jr. and Carl Black, in favor of the Lender.

This Note is executed, delivered and accepted not in payment, but to extend the maturity date of and otherwise amend and restate a certain Promissory Note dated June 11, 2007, in the principal face amount of $8,273,000.00 (the "Prior Note"). The undersigned agrees to remain liable for and to pay all interest accrued and owing under the Prior Note as of the date of this Note.

The Borrower agrees that if, and as often as, this Note is placed in the hands of an attorney for collection or to defend or enforce any of the Lender's right hereunder or under any instrument securing payment of this Note, the Borrower will pay all of the Lender's reasonable attorneys' fees and expenses, all court costs and all other expenses incurred by the Lender in connection therewith.

Payment of this Note is secured by and subject to the terms and conditions of the Loan Documents. This Note is to be construed according to the internal laws of the State of Oklahoma. All actions with respect to this Note, the Loan Documents or any other instrument securing payment of this Note may be instituted in the state or federal courts of the State of Oklahoma in Oklahoma County, Oklahoma, or Smith County, Texas, as the Lender may elect, and by execution and delivery of this Note, the Borrower irrevocably and unconditionally submits to the jurisdiction (both subject matter and personal) of each such court and irrevocably and unconditionally waives: (a) any objection the Borrower might now or hereafter have to the venue in any such court; and (b) any claim that any action or proceeding brought in any such court has been brought in an inconvenient forum.

On the failure to pay any principal or interest when due hereunder, or on the occurrence of any default under the Agreement, as defined or described therein, at the option of the Lender, the

entire indebtedness evidenced by this Note will become immediately due, payable and collectible then or thereafter as the Lender might elect, regardless of the date of maturity hereof. Failure by the Lender to exercise such option will not constitute a waiver of the right to exercise the same in the event of any subsequent default.

The makers, endorsers, sureties, guarantors and all other persons who may become liable for all or any part of this obligation severally waive presentment for payment, protest and notice of nonpayment. Said parties consent to any extension of time (whether one or more) of payment hereof, release of all or any part of the security for the payment hereof or release of any party liable for the payment of this obligation. Any such extension or release may be made without notice to any such party and without discharging such party's liability hereunder.

IN WITNESS WHEREOF, the Borrower has executed this instrument effective the date first above written.

<div style="margin-left:40%">

**THE STRETFORD AT THE CASCADES LIMITED PARTNERSHIP, a Texas limited partnership**

By:   TYLER-STRETFORD      GENERAL PARTNER, LLC, a Texas limited liability company and General Partner

By:   _____
       J. Randolph Light, Jr., Sole Member

(The "Borrower")

</div>

PAY TO THE ORDER OF
_SW Loan 00, L.P._
AND ITS SUCCESSORS AND ASSIGNS, WITHOUT RECOURSE AND DISCLAMING ANY WARRANTY CREATED BY THIS INDORSEMENT, EXCEPT AS SET FORTH IN THAT CERTAIN LOAN AND REAL ESTATE SALE AGREEMENT DATED DECEMBER _1_, 2011, AS AMENDED AND ASSIGNED.
EXECUTED THIS _13_ DAY OF DECEMBER, 2011.

THE STILLWATER NATIONAL BANK AND TRUST COMPANY
BY: _____
Name: _Brent A. Bates_
Title: _SVP_

-3-

# EXHIBIT 1-I

Stretford @ The Cascades

LN# 6721900

NOTE CLERK

NOV 0 6 2008

SNB

*by Quality
Assurance Clerk*

## PROMISSORY NOTE
### (Third Note)

$2,575,000.00                                                    September 30, 2008

FOR VALUE RECEIVED, the undersigned, THE STRETFORD AT THE CASCADES LIMITED PARTNERSHIP, a Texas limited partnership (the "Borrower"), promises to pay to the order of STILLWATER NATIONAL BANK AND TRUST COMPANY, and its successors and assigns (the "Lender") at 6301 Waterford Boulevard, Suite 101, Oklahoma City, Oklahoma 73118, or at such other place as may be designated in writing by the Lender, the principal sum of TWO MILLION FIVE HUNDRED SEVENTY-FIVE THOUSAND DOLLARS ($2,575,000.00), together with interest thereon at the interest rates hereinafter stated, payable as set forth below.

Unless otherwise defined herein, all terms defined or referenced in that certain Omnibus Agreement of even effective date herewith among the Borrower, J. Randolph Light, Jr., Lawrence C. Don, Victor Lissiak, Jr. and the Lender (the "Agreement" will have the same meanings herein as therein.

This Note will bear interest at the rate equal to the Prime Rate plus one percent (1.0%) per annum, which interest rate will be adjusted on each day on which a change in the Prime Rate occurs; provided, however, that the interest rate shall never be less than six percent (6.0%) per annum (the "Interest Rate"). "Prime Rate" means the prime rate as published in the "Money Rates" section of the *Wall Street Journal*, which rate is not necessarily the lowest rate of interest charged by the Lender. Interest only will be paid monthly on this Note commencing on the date which is twelve (12) months after the effective date hereof (the "Commencement Date"), and on the same day of each month thereafter until March 30, 2010 (the "Maturity Date"), at which time the entire unpaid principal balance plus all accrued interest owing on this Note shall be due and payable. All interest hereon shall be calculated for the actual number of days elapsed at a per diem charge based on a year consisting of 360 days.

This Note is executed and delivered in connection with the Agreement, and all payments hereunder will be made subject to the terms and conditions contained in the Agreement. Payments hereunder may, at the option of the Lender, be recorded on this Note or on the books and records of the Lender and will be prima facie evidence of said payments and the unpaid balance of this Note. All payments received after the Commencement Date will first be applied to the payment of accrued interest and the balance will be applied in reduction of the principal balance hereof provided that no payment will be applied to this Note until received by the Lender in collected funds.

The Borrower will have the right to prepay this Note in whole or in part at any time and from time to time without premium or penalty, but with interest accrued and payable as of the date of prepayment.

If a payment is more than ten (10) days late hereunder, the Borrower will be charged ten percent (10%) of such unpaid payment or $500.00, whichever is less, as a late charge, or in the alternative, at the Lender's option, while any Default exists hereunder or under the Loan Agreement or in the performance or observance of any of the terms, covenants or conditions of this Note or any of the documents evidencing or securing this Note or of any instrument now or hereafter securing the payment of the indebtedness evidenced hereby, the entire unpaid principal balance hereof shall bear interest at the per annum rate equal to fifteen percent (15%). During the existence of any such Default, the Lender may apply payments received on any amounts due hereunder, or under the terms of any instrument now or hereafter evidencing or securing such indebtedness, as the Lender may determine, and if the Lender so elects, notice of election being expressly waived, the principal hereof remaining unpaid, together with accrued interest, shall at once become due and payable. Any and all additional interest at the rate provided in this paragraph which has accrued shall be payable at the time of, and as a condition precedent to, the curing of any Default.

This Note is secured by a Third Deed of Trust and a Third Assignment of Purchase and Sale Agreements and Sales Proceeds each of even effective date herewith, covering certain real property, tangible and intangible personal property, fixtures, and improvements of the Borrower, located in Smith County, Texas. This Note is guaranteed by a certain Guaranty Agreement of even effective date herewith signed by J. Randolph Light in favor of the Lender.

The Borrower agrees that if, and as often as, this Note is placed in the hands of an attorney for collection or to defend or enforce any of the Lender's right hereunder or under any instrument securing payment of this Note, the Borrower will pay all of the Lender's reasonable attorneys' fees and expenses, all court costs and all other expenses incurred by the Lender in connection therewith.

Payment of this Note is secured by and subject to the terms and conditions of the Loan Documents. This Note is to be construed according to the internal laws of the State of Oklahoma. All actions with respect to this Note, the Loan Documents or any other instrument securing payment of this Note may be instituted in the state or federal courts of the State of Oklahoma in Oklahoma County, Oklahoma, or Smith County, Texas, as the Lender may elect, and by execution and delivery of this Note, the Borrower irrevocably and unconditionally submits to the jurisdiction (both subject matter and personal) of each such court and irrevocably and unconditionally waives: (a) any objection the Borrower might now or hereafter have to the venue in any such court; and (b) any claim that any action or proceeding brought in any such court has been brought in an inconvenient forum.

On the failure to pay any principal or interest when due hereunder, or on the occurrence of any default under the Agreement, as defined or described therein, at the option of the Lender, the entire indebtedness evidenced by this Note will become immediately due, payable and collectible then or thereafter as the Lender might elect, regardless of the date of maturity hereof. Failure by the Lender to exercise such option will not constitute a waiver of the right to exercise the same in the event of any subsequent default.

The makers, endorsers, sureties, guarantors and all other persons who may become liable for all or any part of this obligation severally waive presentment for payment, protest and notice of

nonpayment. Said parties consent to any extension of time (whether one or more) of payment hereof, release of all or any part of the security for the payment hereof or release of any party liable for the payment of this obligation. Any such extension or release may be made without notice to any such party and without discharging such party's liability hereunder.

IN WITNESS WHEREOF, the Borrower has executed this instrument effective the date first above written.

**THE STRETFORD AT THE CASCADES LIMITED PARTNERSHIP, a Texas limited partnership**

By:   TYLER-STRETFORD GENERAL
      PARTNER, LLC, a Texas limited liability
      company and General Partner

By: _____
     J. Randolph Light, Jr. Sole Member

(the "Borrower")

PAY TO THE ORDER OF
_SW Loan 00, L.P._
AND ITS SUCCESSORS AND ASSIGNS, WITHOUT
RECOURSE AND DISCLAMING ANY WARRANTY
CREATED BY THIS INDORSEMENT, EXCEPT AS SET
FORTH IN THAT CERTAIN LOAN AND REAL ESTATE
SALE AGREEMENT DATED DECEMBER_(, 2011,
AS AMENDED AND ASSIGNED.
EXECUTED THIS 13 DAY OF DECEMBER, 2011:

THE STILLWATER NATIONAL BANK AND
TRUST COMPANY
BY: _____
Name: _____Brent A. Bates_____
Title: _____SVP_____

-3-

# EXHIBIT 1-J

LN#67233000

James Light Jr  NOTE CLERK

NOV 07 2008

SNB

Assurance Clerk

## PROMISSORY NOTE

$2,500,000.00                                                September 30, 2008

FOR VALUE RECEIVED, the undersigned, J. RANDOLPH LIGHT, JR., an individual (the "Borrower"), promises to pay to the order of STILLWATER NATIONAL BANK AND TRUST COMPANY, and its successors and assigns (the "Lender") at 6301 Waterford Boulevard, Suite 101, Oklahoma City, Oklahoma 73118, or at such other place as may be designated in writing by the Lender, the principal sum of TWO MILLION FIVE HUNDRED THOUSAND AND NO/100 DOLLARS ($2,500,000.00), together with interest thereon at the interest rates hereinafter stated, payable as set forth below.

Unless otherwise defined herein, all terms defined or referenced in that certain Omnibus Agreement of even effective date herewith among the Borrower, The Stretford At The Cascades Limited Partnership, a Texas limited partnership ("Stretford"), Lawrence C. Don, Victor Lissiak, Jr., and the Lender (the "Agreement") will have the same meanings herein as therein.

Interest on this Note will be paid at the interest rate equal to the Prime Rate plus one percent (1%) per annum, adjusted on each day on which a change in the Prime Rate occurs; provided that the interest shall never be less than six percent (6%) per annum (the "Interest Rate"). "Prime Rate" means the prime rate as published in the "Money Rates" section of the *Wall Street Journal*, which interest rate is not necessarily the lowest rate of interest charged by the Lender. Interest only will be paid quarterly on this Note commencing on December 30, 2008, and on the same day of every third month thereafter until March 31, 2010. The entire unpaid principal balance of the Note and all accrued interest thereon will be due and payable on March 31, 2010 (the "Maturity Date"). All interest hereon shall be calculated for the actual number of days elapsed at a per diem charge based on a year consisting of 360 days.

Advances and payments hereunder may, at the option of the Lender, be recorded on this Note or on the books and records of the Lender and will be prima facie evidence of said advances, payment and the unpaid balance of this Note. All payments will first be applied to the payment of accrued interest and the balance will be applied in reduction of the principal balance hereof provided that no payment will be applied to this Note until received by the Lender in collected funds.

The Borrower will have the right to prepay this Note in whole or in part at any time and from time to time without premium or penalty, but with interest accrued to the date of prepayment.

If a payment is more than ten (10) days late hereunder, the Borrower will be charged ten percent (10%) of such unpaid payment or $500.00, whichever is less, as a late charge. In the alternative, at the Lender's option, while any Default exists hereunder or in the performance or observance of any of the terms, covenants or conditions of this Note or of any instrument now or hereafter securing the payment of the indebtedness evidenced hereby, the entire unpaid principal balance hereof shall bear interest at the per annum rate equal to fifteen percent (15%). During the

existence of any such Default, the Lender may apply payments received on any amounts due hereunder, or under the terms of any instrument now or hereafter evidencing or securing such indebtedness, as the Lender may determine, and if the Lender so elects, notice of election being expressly waived, the principal hereof remaining unpaid, together with accrued interest, shall at once become due and payable. Any and all additional interest at the rate provided in this paragraph which has accrued shall be payable at the time of, and as a condition precedent to, the curing of any Default.

The Borrower agrees that if, and as often as, this Note is placed in the hands of an attorney for collection or to defend or enforce any of the Lender's right hereunder or under any instrument now or hereafter securing payment of this Note, the Borrowers will pay the Lender's reasonable attorneys' fees, all court costs and all other expenses incurred by the Lender in connection therewith.

This Note is to be construed according to the internal laws of the State of Oklahoma. All actions with respect to this Note or any other instrument securing payment of this Note may be instituted in the state or federal courts sitting in or having jurisdiction over Oklahoma County, Oklahoma, or Smith County, Texas, as the Lender may elect, and by execution and delivery of this Note, the Borrower irrevocably and unconditionally submits to the jurisdiction (both subject matter and personal) of each such court and irrevocably and unconditionally waives: (a) any objection the Borrower might now or hereafter have to the venue in any such court; and (b) any claim that any action or proceeding brought in any such court has been brought in an inconvenient forum.

On the failure to pay any principal or interest when due hereunder, or on the occurrence of any Default under the Agreement, as defined or described therein, or upon failure to pay any other obligation owing by any of the Borrower to the Lender, at the option of the Lender, the entire indebtedness evidenced by this Note will become immediately due, payable and collectible then or thereafter as the Lender might elect, regardless of the date of maturity hereof. Failure by the Lender to exercise such option will not constitute a waiver of the right to exercise the same in the event of any subsequent Default.

The makers, endorsers, sureties, guarantors and all other persons who may become liable for all or any part of this obligation severally waive presentment for payment, protest and notice of nonpayment. Said parties consent to any extension of time (whether one or more) of payment hereof, release of all or any part of the security for the payment hereof or release of any party liable for the payment of this obligation. Any such extension or release may be made without notice to any such party and without discharging such party's liability hereunder.

IN WITNESS WHEREOF, the Borrower has executed this instrument effective the date first above written.

_____
J. RANDOLPH LIGHT, JR., individually

2



EXHIBIT 1-K

Note # 6722000

# LOST NOTE AFFIDAVIT

The undersigned, Brent Bates, Senior Vice President, on behalf of The Stillwater National Bank and Trust Company ("**Assignor**") being duly sworn, deposes and says:

1.      Assignor is the true, lawful, present and sole owner and holder of that certain Note or Notes listed on **Exhibit A** attached hereto and made a part hereof (the "**Note**", whether one or more).

2.      Assignor is unable to locate the original Note, after having made a diligent search of Assignor's records and files; its whereabouts cannot now be determined; and such original appears to be lost, mislaid or misfiled by Assignor.

3.      The Note (a) has not heretofore been sold, assigned or transferred, (b) is not on the date hereof pledged, hypothecated or encumbered by Assignor, (c) has not been marked paid or satisfied on its face and was never released, paid off or satisfied, (d) has not been returned to the borrower, and (e) has either been lost, mislaid or misfiled. The loss of custody of the Note was not the result of a transfer by Assignor or a lawful seizure.

4.      In the event that (i) a third party successfully claims to be the owner of the Note or any interest therein or (ii) a third party successfully claims as a defense that the Note is not enforceable because the original Note has not been produced for inspection by a court of competent jurisdiction, (iii) the borrower successfully claims the existence of terms which differ from the terms of the Note set forth on Exhibit B hereto, except as such differing terms are reflected in modifications or amendments to the Note which have been provided to Assignee prior to the date hereof, or (iv) Assignor prior to the date hereof issued a new instrument in lieu of the Note, then Assignor hereby agrees to and shall indemnify and hold SW Loan OO, L.P., a Delaware limited partnership ("**Assignee**"), harmless from and against all loss, liability, cost, damage and expense incurred by Assignee arising out of such claim, including, without limitation, attorneys' fees and disbursements.

5.      If the original Note is located by Assignor, Assignor agrees that it will not hereafter assign, pledge, hypothecate, encumber or otherwise dispose of the original Note or any interest therein and Assignor agrees to so notify Assignee that the original Note has been located and to deliver the original Note promptly to Assignee or as Assignee shall otherwise direct.

6.      Assignor makes this affidavit in order to induce Assignee to purchase the obligation evidenced by the Note. Exhibit B attached hereto is a true, correct and complete copy of the Note.

7.      The obligations of Assignor in this affidavit shall survive the assignment to Assignee of the Note and continue in full force and effect for the benefit of Assignee.

1

8.     The foregoing affidavit shall be governed by and construed in accordance with the laws of the State of Oklahoma.

9.     By acceptance hereof, the Assignee set forth herein acknowledges that (i) pursuant to the records of the undersigned, the indebtedness evidenced by the promissory note referenced above (the "Prior Note") has been renewed, superseded and/or amended and restated by, and such indebtedness is in whole or in part evidenced by, that certain Amended and Restated Promissory Note dated July 31, 2011 in the original principal amount of $500,000 (the "Current Note"), (ii) the Assignee shall not seek to enforce the Prior Note against the borrower(s) set forth therein (except as necessary in connection with enforcing the Current Note or as otherwise provided in (iii) hereof), and (iii) the endorsement of the Prior Note shall be utilized by the Assignee set forth herein solely for the purpose of establishing that the indebtedness of the Prior Note is now wholly or in part evidenced by the Current Note (but, if it is determined by a court of competent jurisdiction that any portion of the indebtedness of the Prior Note is not evidenced by the Current Note and that the Prior Note evidences indebtedness in whole or in part that is not evidenced by the Current Note, then the endorsement of the Prior Note shall be deemed to be without the limitations set forth in this paragraph).

*[Remainder of Page Intentionally Left Blank.]*

2

IN WITNESS, WHEREOF, this Lost Note Affidavit is made as of the _13_ day of December, 2011.

The Stillwater National Bank and Trust Company

By: _____
Brent Bates, Senior Vice President

STATE OF Oklahoma )
COUNTY OF Oklahoma )

I, the undersigned, a Notary Public in and for said county in said State, hereby certify that Brent Bates, whose name as Senior Vice President of The Stillwater National Bank and Trust Company, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of said instrument, he, as such officer and with full authority, executed the same voluntarily for and as the act of said corporation.

Given under my hand and official seal this _13_ day of December, 2011.

_____
Notary Public

AFFIX SEAL

My commission expires: _____

BEBE THOMPSON
Notary Public
State of Oklahoma
Commission # 0800.000  Expires 04/03/12

3

1/2198680.1

## Exhibit A

Amended and Restated Promissory Note dated June 30, 2009, executed by James Randolph Light, Jr. in favor of The Stillwater National Bank and Trust Company in the original principal amount of $2,500,000.00

4

**Exhibit B**

1/2198680.1

6722000

## AMENDED AND RESTATED PROMISSORY NOTE

MCW

L/S Supervisor

AUG 3 1 2009

SNG

$2,500,000.00                                         June 30, 2009

FOR VALUE RECEIVED, the undersigned, J. RANDOLPH LIGHT, JR., an individual (the "Borrower"), promises to pay to the order of STILLWATER NATIONAL BANK AND TRUST COMPANY, and its successors and assigns (the "Lender") at 6301 Waterford Boulevard, Suite 101, Oklahoma City, Oklahoma 73118, or at such other place as may be designated in writing by the Lender, the principal sum of TWO MILLION FIVE HUNDRED THOUSAND AND NO/100 DOLLARS ($2,500,000.00), together with interest thereon at the interest rates hereinafter stated, payable as set forth below.

Unless otherwise defined herein, all terms defined or referenced in that certain Omnibus Agreement dated effective September 30, 2009, as amended by a certain First Amendment to Omnibus Agreement of even effective date herewith among the Borrower, The Stretford at the Cascades Limited Partnership, a Texas limited partnership ("Stretford"), Lawrence C. Don, Victor Lissiak, Jr., and the Lender (collectively, the "Agreement") will have the same meanings herein as therein.

Interest on this Note will be paid at the interest rate equal to the Prime Rate plus one percent (1%) per annum, adjusted on each day on which a change in the Prime Rate occurs; provided that the interest shall never be less than six percent (6%) per annum (the "Interest Rate"). "Prime Rate" means the prime rate as published in the "Money Rates" section of the *Wall Street Journal*, which interest rate is not necessarily the lowest rate of interest charged by the Lender. Interest only will be paid quarterly on this Note commencing on December 31, 2009, and on the same day of every third month thereafter until March 31, 2010. The entire unpaid principal balance of the Note and all accrued interest thereon will be due and payable on March 31, 2010 (the "Maturity Date"). All interest hereon shall be calculated for the actual number of days elapsed at a per diem charge based on a year consisting of 360 days.

Advances and payments hereunder may, at the option of the Lender, be recorded on this Note or on the books and records of the Lender and will be prima facie evidence of said advances, payment and the unpaid balance of this Note. All payments will first be applied to the payment of accrued interest and the balance will be applied in reduction of the principal balance hereof provided that no payment will be applied to this Note until received by the Lender in collected funds.

The Borrower will have the right to prepay this Note in whole or in part at any time and from time to time without premium or penalty, but with interest accrued to the date of prepayment.

If a payment is more than ten (10) days late hereunder, the Borrower will be charged ten percent (10%) of such unpaid payment or $500.00, whichever is less, as a late charge. In the alternative, at the Lender's option, while any Default exists hereunder or in the performance or observance of any of the terms, covenants or conditions of this Note or of any instrument now or

hereafter securing the payment of the indebtedness evidenced hereby, the entire unpaid principal balance hereof shall bear interest at the per annum rate equal to fifteen percent (15%). During the existence of any such Default, the Lender may apply payments received on any amounts due hereunder, or under the terms of any instrument now or hereafter evidencing or securing such indebtedness, as the Lender may determine, and if the Lender so elects, notice of election being expressly waived, the principal hereof remaining unpaid, together with accrued interest, shall at once become due and payable. Any and all additional interest at the rate provided in this paragraph which has accrued shall be payable at the time of, and as a condition precedent to, the curing of any Default.

The Borrower agrees that if, and as often as, this Note is placed in the hands of an attorney for collection or to defend or enforce any of the Lender's right hereunder or under any instrument now or hereafter securing payment of this Note, the Borrowers will pay the Lender's reasonable attorneys' fees, all court costs and all other expenses incurred by the Lender in connection therewith.

This Note is executed, delivered and accepted, not in payment, but to renew that certain Promissory Note in the original principal amount of $2,500,000.00 executed and delivered by the Borrowers to the lender effective September 30, 2008 (the "Prior Note"). The undersigned agrees to remain liable for and to pay all interest accrued and owing under the Prior Note as of the date of this Note.

This Note is to be construed according to the internal laws of the State of Oklahoma. All actions with respect to this Note or any other instrument securing payment of this Note may be instituted in the state or federal courts sitting in or having jurisdiction over Oklahoma County, Oklahoma, or Smith County, Texas, as the Lender may elect, and by execution and delivery of this Note, the Borrower irrevocably and unconditionally submits to the jurisdiction (both subject matter and personal) of each such court and irrevocably and unconditionally waives: (a) any objection the Borrower might now or hereafter have to the venue in any such court; and (b) any claim that any action or proceeding brought in any such court has been brought in an inconvenient forum.

On the failure to pay any principal or interest when due hereunder, or on the occurrence of any Default under the Agreement, as defined or described therein, or upon failure to pay any other obligation owing by any of the Borrower to the Lender, at the option of the Lender, the entire indebtedness evidenced by this Note will become immediately due, payable and collectible then or thereafter as the Lender might elect, regardless of the date of maturity hereof. Failure by the Lender to exercise such option will not constitute a waiver of the right to exercise the same in the event of any subsequent Default.

The makers, endorsers, sureties, guarantors and all other persons who may become liable for all or any part of this obligation severally waive presentment for payment, protest and notice of nonpayment. Said parties consent to any extension of time (whether one or more) of payment hereof, release of all or any part of the security for the payment hereof or release of any party liable for the payment of this obligation. Any such extension or release may be made without notice to any such party and without discharging such party's liability hereunder.

2

IN WITNESS WHEREOF, the Borrower has executed this instrument effective the date first above written.

_____
J. RANDOLPH LIGHT, JR., individually

3

EXHIBIT 1-L

Note # 6721400

## LOST NOTE AFFIDAVIT

The undersigned, Brent Bates, Senior Vice President, on behalf of The Stillwater National Bank and Trust Company ("**Assignor**") being duly sworn, deposes and says:

1.      Assignor is the true, lawful, present and sole owner and holder of that certain Note or Notes listed on **Exhibit A** attached hereto and made a part hereof (the "**Note**", whether one or more).

2.      Assignor is unable to locate the original Note, after having made a diligent search of Assignor's records and files; its whereabouts cannot now be determined; and such original appears to be lost, mislaid or misfiled by Assignor.

3.      The Note (a) has not heretofore been sold, assigned or transferred, (b) is not on the date hereof pledged, hypothecated or encumbered by Assignor, (c) has not been marked paid or satisfied on its face and was never released, paid off or satisfied, (d) has not been returned to the borrower, and (e) has either been lost, mislaid or misfiled. The loss of custody of the Note was not the result of a transfer by Assignor or a lawful seizure.

4.      In the event that (i) a third party successfully claims to be the owner of the Note or any interest therein or (ii) a third party successfully claims as a defense that the Note is not enforceable because the original Note has not been produced for inspection by a court of competent jurisdiction, (iii) the borrower successfully claims the existence of terms which differ from the terms of the Note set forth on Exhibit B hereto, except as such differing terms are reflected in modifications or amendments to the Note which have been provided to Assignee prior to the date hereof, or (iv) Assignor prior to the date hereof issued a new instrument in lieu of the Note, then Assignor hereby agrees to and shall indemnify and hold SW Loan OO, L.P., a Delaware limited partnership ("**Assignee**"), harmless from and against all loss, liability, cost, damage and expense incurred by Assignee arising out of such claim, including, without limitation, attorneys' fees and disbursements.

5.      If the original Note is located by Assignor, Assignor agrees that it will not hereafter assign, pledge, hypothecate, encumber or otherwise dispose of the original Note or any interest therein and Assignor agrees to so notify Assignee that the original Note has been located and to deliver the original Note promptly to Assignee or as Assignee shall otherwise direct.

6.      Assignor makes this affidavit in order to induce Assignee to purchase the obligation evidenced by the Note. Exhibit B attached hereto is a true, correct and complete copy of the Note.

7.      The obligations of Assignor in this affidavit shall survive the assignment to Assignee of the Note and continue in full force and effect for the benefit of Assignee.

1

1/2198680.1

8.    The foregoing affidavit shall be governed by and construed in accordance with the laws of the State of Oklahoma.

9.    By acceptance hereof, the Assignee set forth herein acknowledges that (i) pursuant to the records of the undersigned, the indebtedness evidenced by the promissory note referenced above (the "Prior Note") has been renewed, superseded and/or amended and restated by, and such indebtedness is in whole or in part evidenced by, that certain Amended and Restated Promissory Note dated July 31, 2011 in the original principal amount of $2,500,000 (the "Current Note"), (ii) the Assignee shall not seek to enforce the Prior Note against the borrower(s) set forth therein (except as necessary in connection with enforcing the Current Note or as otherwise provided in (iii) hereof), and (iii) the endorsement of the Prior Note shall be utilized by the Assignee set forth herein solely for the purpose of establishing that the indebtedness of the Prior Note is now wholly or in part evidenced by the Current Note (but, if it is determined by a court of competent jurisdiction that any portion of the indebtedness of the Prior Note is not evidenced by the Current Note and that the Prior Note evidences indebtedness in whole or in part that is not evidenced by the Current Note, then the endorsement of the Prior Note shall be deemed to be without the limitations set forth in this paragraph).

*[Remainder of Page Intentionally Left Blank.]*

1/2198680.1

IN WITNESS, WHEREOF, this Lost Note Affidavit is made as of the 13 day of December, 2011.

The Stillwater National Bank and Trust Company

By: _____
Brent Bates, Senior Vice President

STATE OF Oklahoma )
COUNTY OF Oklahoma )

I, the undersigned, a Notary Public in and for said county in said State, hereby certify that Brent Bates, whose name as Senior Vice President of The Stillwater National Bank and Trust Company, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of said instrument, he, as such officer and with full authority, executed the same voluntarily for and as the act of said corporation.

Given under my hand and official seal this 13 day of December, 2011.

_____
Notary Public

AFFIX SEAL

My commission expires: _____

DEBE THOMPSON
Notary Public
State of Oklahoma
Commission # 08003-089

3

## Exhibit A

Amended and Restated Promissory Note dated June 30, 2009, executed by J. Randolph Light, Jr. in favor of The Stillwater National Bank and Trust Company in the original principal amount of $2,500,000.00

4

1/2198680.1

5

6721400

# AMENDED AND RESTATED PROMISSORY NOTE

L/S Supervisor

AUG 3 1 2009

SNB

$2,500,000.00                                        Effective June 30, 2009

FOR VALUE RECEIVED, the undersigned, VICTOR LISSIAK, JR., an individual, LAWRENCE C. DON, an individual, and J. RANDOLPH LIGHT, JR., an individual (the "Borrowers"), jointly and severally, promise to pay to the order of STILLWATER NATIONAL BANK AND TRUST COMPANY, and its successors and assigns (the "Lender") at 6301 Waterford Boulevard, Suite 101, Oklahoma City, Oklahoma 73118, or at such other place as may be designated in writing by the Lender, the principal sum of TWO MILLION FIVE HUNDRED THOUSAND AND NO/100 DOLLARS ($2,500,000.00), together with interest thereon at the interest rates hereinafter stated, payable as set forth below.

Unless otherwise defined herein, all terms defined or referenced in that certain Omnibus Agreement dated effective September 30, 2009, as amended by a certain First Amendment to Omnibus Agreement of even effective date herewith among the Borrowers, The Stretford at the Cascades Limited Partnership, a Texas limited partnership ("Stretford"), and the Lender (collectively, the "Agreement") will have the same meaning herein as therein.

Interest on this Note will be paid at the interest rate equal to the Prime Rate plus one percent (1%) per annum, adjusted on each day on which a change in the Prime Rate occurs, provided that the interest rate shall never be less than six percent (6.0%) per annum (the "Interest Rate"). "Prime Rate" means the prime rate as published in the "Money Rates" section of the *Wall Street Journal*, which interest rate is not necessarily the lowest rate of interest charged by the Lender. Interest only will be paid quarterly on this Note commencing on December 31, 2009, and on the same day of every third month thereafter until March 31, 2010. The entire unpaid principal balance of the Note and all accrued interest thereon will be due and payable on March 31, 2010 (the "Maturity Date"). All interest hereon shall be calculated for the actual number of days elapsed at a per diem charge based on a year consisting of 360 days.

This Note is executed, delivered and accepted, not in payment, but to consolidate, extend the maturity dates and otherwise amend and restate in their entirety (i) a certain Amended and Restated Promissory Note dated June 19, 2008, in the principal face amount of $1,200,000.00; (ii) a certain Amended and Restated Promissory Note dated June 19, 2008, in the principal face amount of $500,000.00; and (iii) a certain Promissory Note dated July 7, 2008, in the principal face amount of $800,000.00 (the "Prior Notes"). The undersigned Borrowers agree to remain liable for and to pay all interest accrued and owing under the Prior Notes as of the date of this Note.

Payments hereunder may, at the option of the Lender, be recorded on this Note or on the books and records of the Lender and will be prima facie evidence of said payments and the unpaid balance of this Note. All payments will first be applied to the payment of accrued interest and the



balance will be applied in reduction of the principal balance hereof provided that no payment will be applied to this Note until received by the Lender in collected funds.

The Borrowers will have the right to prepay this Note in whole or in part at any time and from time to time without premium or penalty, but with interest accrued to the date of prepayment.

If a payment is more than ten (10) days late hereunder, the Borrowers will be charged ten percent (10%) of such unpaid payment or $500.00, whichever is less, as a late charge. In the alternative, at the Lender's option, while any Default exists hereunder or in the performance or observance of any of the terms, covenants or conditions of this Note or of any instrument now or hereafter securing the payment of the indebtedness evidenced hereby, the entire unpaid principal balance hereof shall bear interest at the per annum rate equal to fifteen percent (15%). During the existence of any such Default, the Lender may apply payments received on any amounts due hereunder, or under the terms of any instrument now or hereafter evidencing or securing such indebtedness, as the Lender may determine, and if the Lender so elects, notice of election being expressly waived, the principal hereof remaining unpaid, together with accrued interest, shall at once become due and payable. Any and all additional interest at the rate provided in this paragraph which has accrued shall be payable at the time of, and as a condition precedent to, the curing of any Default.

The Borrowers jointly and severally agree that if, and as often as, this Note is placed in the hands of an attorney for collection or to defend or enforce any of the Lender's right hereunder or under any instrument now or hereafter securing payment of this Note, the Borrowers will pay the Lender's reasonable attorneys' fees, all court costs and all other expenses incurred by the Lender in connection therewith.

This Note is executed, delivered and accepted, not in payment, but to renew that certain Promissory Note in the original principal amount of $2,500,000.00 executed and delivered by the Borrowers to the lender effective September 30, 2008 (the "Prior Note"). The undersigned agrees to remain liable for and to pay all interest accrued and owing under the Prior Note as of the date of this Note.

This Note is to be construed according to the internal laws of the State of Oklahoma. All actions with respect to this Note or any other instrument securing payment of this Note may be instituted in the state or federal courts of the State of Oklahoma in Oklahoma County, Oklahoma, or in Smith County, Texas, as the Lender may elect, and by execution and delivery of this Note, the Borrowers jointly and severally, irrevocably and unconditionally submit to the jurisdiction (both subject matter and personal) of each such court and irrevocably and unconditionally waive: (a) any objection any of the Borrowers might now or hereafter have to the venue in any such court; and (b) any claim that any action or proceeding brought in any such court has been brought in an inconvenient forum.

On the failure to pay any principal or interest when due hereunder, or on the occurrence of any Default under the Agreement, as defined or described therein, or upon failure to pay any other

2

obligation owing by any of the Borrowers to the Lender, at the option of the Lender, the entire indebtedness evidenced by this Note will become immediately due, payable and collectible then or thereafter as the Lender might elect, regardless of the date of maturity hereof. Failure by the Lender to exercise such option will not constitute a waiver of the right to exercise the same in the event of any subsequent Default.

The makers, endorsers, sureties, guarantors and all other persons who may become liable for all or any part of this obligation severally waive presentment for payment, protest and notice of nonpayment. Said parties consent to any extension of time (whether one or more) of payment hereof, release of all or any part of the security for the payment hereof or release of any party liable for the payment of this obligation. Any such extension or release may be made without notice to any such party and without discharging such party's liability hereunder.

IN WITNESS WHEREOF, the Borrowers have executed this instrument effective the date first above written.

_____
**VICTOR LISSIAK, JR., Individually**


_____
**LAWRENCE C. DON, Individually**

_____
**J. RANDOLPH LIGHT, JR., Individually**

(the "Borrowers")

# EXHIBIT 1-M

Note # 6722000

## LOST NOTE AFFIDAVIT

The undersigned, Brent Bates, Senior Vice President, on behalf of The Stillwater National Bank and Trust Company ("**Assignor**") being duly sworn, deposes and says:

1.    Assignor is the true, lawful, present and sole owner and holder of that certain Note or Notes listed on **Exhibit A** attached hereto and made a part hereof (the "**Note**", whether one or more).

2.    Assignor is unable to locate the original Note, after having made a diligent search of Assignor's records and files; its whereabouts cannot now be determined; and such original appears to be lost, mislaid or misfiled by Assignor.

3.    The Note (a) has not heretofore been sold, assigned or transferred, (b) is not on the date hereof pledged, hypothecated or encumbered by Assignor, (c) has not been marked paid or satisfied on its face and was never released, paid off or satisfied, (d) has not been returned to the borrower, and (e) has either been lost, mislaid or misfiled. The loss of custody of the Note was not the result of a transfer by Assignor or a lawful seizure.

4.    In the event that (i) a third party successfully claims to be the owner of the Note or any interest therein or (ii) a third party successfully claims as a defense that the Note is not enforceable because the original Note has not been produced for inspection by a court of competent jurisdiction, (iii) the borrower successfully claims the existence of terms which differ from the terms of the Note set forth on Exhibit B hereto, except as such differing terms are reflected in modifications or amendments to the Note which have been provided to Assignee prior to the date hereof, or (iv) Assignor prior to the date hereof issued a new instrument in lieu of the Note, then Assignor hereby agrees to and shall indemnify and hold SW Loan OO, L.P., a Delaware limited partnership ("**Assignee**"), harmless from and against all loss, liability, cost, damage and expense incurred by Assignee arising out of such claim, including, without limitation, attorneys' fees and disbursements.

5.    If the original Note is located by Assignor, Assignor agrees that it will not hereafter assign, pledge, hypothecate, encumber or otherwise dispose of the original Note or any interest therein and Assignor agrees to so notify Assignee that the original Note has been located and to deliver the original Note promptly to Assignee or as Assignee shall otherwise direct.

6.    Assignor makes this affidavit in order to induce Assignee to purchase the obligation evidenced by the Note. Exhibit B attached hereto is a true, correct and complete copy of the Note.

7.    The obligations of Assignor in this affidavit shall survive the assignment to Assignee of the Note and continue in full force and effect for the benefit of Assignee.

1

8.    The foregoing affidavit shall be governed by and construed in accordance with the laws of the State of Oklahoma.

9.    By acceptance hereof, the Assignee set forth herein acknowledges that (i) pursuant to the records of the undersigned, the indebtedness evidenced by the promissory note referenced above (the "Prior Note") has been renewed, superseded and/or amended and restated by, and such indebtedness is in whole or in part evidenced by, that certain Amended and Restated Promissory Note dated July 31, 2011 in the original principal amount of $500,000 (the "Current Note"), (ii) the Assignee shall not seek to enforce the Prior Note against the borrower(s) set forth therein (except as necessary in connection with enforcing the Current Note or as otherwise provided in (iii) hereof), and (iii) the endorsement of the Prior Note shall be utilized by the Assignee set forth herein solely for the purpose of establishing that the indebtedness of the Prior Note is now wholly or in part evidenced by the Current Note (but, if it is determined by a court of competent jurisdiction that any portion of the indebtedness of the Prior Note is not evidenced by the Current Note and that the Prior Note evidences indebtedness in whole or in part that is not evidenced by the Current Note, then the endorsement of the Prior Note shall be deemed to be without the limitations set forth in this paragraph).

*[Remainder of Page Intentionally Left Blank.]*

2

IN WITNESS, WHEREOF, this Lost Note Affidavit is made as of the 13 day of December, 2011.

**The Stillwater National Bank and Trust Company**

By: ______________________
Brent Bates, Senior Vice President

STATE OF Oklahoma )
COUNTY OF Oklahoma )

I, the undersigned, a Notary Public in and for said county in said State, hereby certify that Brent Bates, whose name as Senior Vice President of The Stillwater National Bank and Trust Company, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of said instrument, he, as such officer and with full authority, executed the same voluntarily for and as the act of said corporation.

Given under my hand and official seal this 13 day of December, 2011.

______________________
Notary Public

AFFIX SEAL

My commission expires: ____________

Commission # 0800-059

1/2198680.1

## Exhibit A

Amended and Restated Promissory Note dated March 31, 2010, executed by James Randolph Light, Jr. in favor of The Stillwater National Bank and Trust Company in the original principal amount of $2,500,000.00

1/2198680.1

**Exhibit B**

1/2198680.1

#6722000

## AMENDED AND RESTATED PROMISSORY NOTE

$2,500,000.00                                                                    March 31, 2010

FOR VALUE RECEIVED, the undersigned, J. RANDOLPH LIGHT, JR., an individual (the "Borrower"), promises to pay to the order of STILLWATER NATIONAL BANK AND TRUST COMPANY, and its successors and assigns (the "Lender") at 6301 Waterford Boulevard, Suite 101, Oklahoma City, Oklahoma 73118, or at such other place as may be designated in writing by the Lender, the principal sum of TWO MILLION FIVE HUNDRED THOUSAND AND NO/100 DOLLARS ($2,500,000.00), together with interest thereon at the interest rates hereinafter stated, payable as set forth below.

Unless otherwise defined herein, all terms defined or referenced in that certain Omnibus Agreement dated effective September 30, 2009, as amended by a certain First Amendment to Omnibus Agreement dated effective June 30, 2009, and a certain Second Amendment to Omnibus Agreement of even effective date herewith among the Borrower, The Stretford at the Cascades Limited Partnership, a Texas limited partnership ("Stretford"), Lawrence C. Don, Victor Lissiak, Jr., and the Lender (collectively, the "Agreement") will have the same meanings herein as therein.

Interest on this Note will be paid at the interest rate equal to the Prime Rate plus one percent (1%) per annum, adjusted on each day on which a change in the Prime Rate occurs; provided that the interest shall never be less than six percent (6%) per annum (the "Interest Rate"). "Prime Rate" means the prime rate as published in the "Money Rates" section of the *Wall Street Journal*, which interest rate is not necessarily the lowest rate of interest charged by the Lender. Interest only will be paid quarterly on this Note commencing on December 31, 2009, and on the same day of every third month thereafter until July 31, 2010. The entire unpaid principal balance of the Note and all accrued interest thereon will be due and payable on July 31, 2010 (the "Maturity Date"). All interest hereon shall be calculated for the actual number of days elapsed at a per diem charge based on a year consisting of 360 days.

Advances and payments hereunder may, at the option of the Lender, be recorded on this Note or on the books and records of the Lender and will be prima facie evidence of said advances, payment and the unpaid balance of this Note. All payments will first be applied to the payment of accrued interest and the balance will be applied in reduction of the principal balance hereof provided that no payment will be applied to this Note until received by the Lender in collected funds.

The Borrower will have the right to prepay this Note in whole or in part at any time and from time to time without premium or penalty, but with interest accrued to the date of prepayment.

If a payment is more than ten (10) days late hereunder, the Borrower will be charged ten percent (10%) of such unpaid payment or $500.00, whichever is less, as a late charge. In the alternative, at the Lender's option, while any Default exists hereunder or in the performance or observance of any of the terms, covenants or conditions of this Note or of any instrument now or hereafter securing the payment of the indebtedness evidenced hereby, the entire unpaid principal

balance hereof shall bear interest at the per annum rate equal to fifteen percent (15%). During the existence of any such Default, the Lender may apply payments received on any amounts due hereunder, or under the terms of any instrument now or hereafter evidencing or securing such indebtedness, as the Lender may determine, and if the Lender so elects, notice of election being expressly waived, the principal hereof remaining unpaid, together with accrued interest, shall at once become due and payable. Any and all additional interest at the rate provided in this paragraph which has accrued shall be payable at the time of, and as a condition precedent to, the curing of any Default.

The Borrower agrees that if, and as often as, this Note is placed in the hands of an attorney for collection or to defend or enforce any of the Lender's right hereunder or under any instrument now or hereafter securing payment of this Note, the Borrower will pay the Lender's reasonable attorneys' fees, all court costs and all other expenses incurred by the Lender in connection therewith.

This Note is executed, delivered and accepted, not in payment, but to renew and otherwise amend and restate that certain Promissory Note in the original principal amount of $2,500,000.00 executed and delivered by the Borrower to the lender effective September 30, 2008, as amended by that certain Amended and Restated Promissory Note dated effective June 30, 2009 (collectively, the "Prior Note"). The undersigned agrees to remain liable for and to pay all interest accrued and owing under the Prior Note as of the date of this Note.

This Note is to be construed according to the internal laws of the State of Oklahoma. All actions with respect to this Note or any other instrument securing payment of this Note may be instituted in the state or federal courts sitting in or having jurisdiction over Oklahoma County, Oklahoma, or Smith County, Texas, as the Lender may elect, and by execution and delivery of this Note, the Borrower irrevocably and unconditionally submits to the jurisdiction (both subject matter and personal) of each such court and irrevocably and unconditionally waives: (a) any objection the Borrower might now or hereafter have to the venue in any such court; and (b) any claim that any action or proceeding brought in any such court has been brought in an inconvenient forum.

On the failure to pay any principal or interest when due hereunder, or on the occurrence of any Default under the Agreement, as defined or described therein, or upon failure to pay any other obligation owing by any of the Borrower to the Lender, at the option of the Lender, the entire indebtedness evidenced by this Note will become immediately due, payable and collectible then or thereafter as the Lender might elect, regardless of the date of maturity hereof. Failure by the Lender to exercise such option will not constitute a waiver of the right to exercise the same in the event of any subsequent Default.

The makers, endorsers, sureties, guarantors and all other persons who may become liable for all or any part of this obligation severally waive presentment for payment, protest and notice of nonpayment. Said parties consent to any extension of time (whether one or more) of payment hereof, release of all or any part of the security for the payment hereof or release of any party liable for the payment of this obligation. Any such extension or release may be made without notice to any such party and without discharging such party's liability hereunder.

2

IN WITNESS WHEREOF, the Borrower has executed this instrument effective the date first above written.

J. RANDOLPH LIGHT, JR., individually

3

# EXHIBIT 1-N

Note # 6721400

# LOST NOTE AFFIDAVIT

The undersigned, Brent Bates, Senior Vice President, on behalf of The Stillwater National Bank and Trust Company ("**Assignor**") being duly sworn, deposes and says:

1.  Assignor is the true, lawful, present and sole owner and holder of that certain Note or Notes listed on **Exhibit A** attached hereto and made a part hereof (the "**Note**", whether one or more).

2.  Assignor is unable to locate the original Note, after having made a diligent search of Assignor's records and files; its whereabouts cannot now be determined; and such original appears to be lost, mislaid or misfiled by Assignor.

3.  The Note (a) has not heretofore been sold, assigned or transferred, (b) is not on the date hereof pledged, hypothecated or encumbered by Assignor, (c) has not been marked paid or satisfied on its face and was never released, paid off or satisfied, (d) has not been returned to the borrower, and (e) has either been lost, mislaid or misfiled. The loss of custody of the Note was not the result of a transfer by Assignor or a lawful seizure.

4.  In the event that (i) a third party successfully claims to be the owner of the Note or any interest therein or (ii) a third party successfully claims as a defense that the Note is not enforceable because the original Note has not been produced for inspection by a court of competent jurisdiction, (iii) the borrower successfully claims the existence of terms which differ from the terms of the Note set forth on Exhibit B hereto, except as such differing terms are reflected in modifications or amendments to the Note which have been provided to Assignee prior to the date hereof, or (iv) Assignor prior to the date hereof issued a new instrument in lieu of the Note, then Assignor hereby agrees to and shall indemnify and hold SW Loan OO, L.P., a Delaware limited partnership ("**Assignee**"), harmless from and against all loss, liability, cost, damage and expense incurred by Assignee arising out of such claim, including, without limitation, attorneys' fees and disbursements.

5.  If the original Note is located by Assignor, Assignor agrees that it will not hereafter assign, pledge, hypothecate, encumber or otherwise dispose of the original Note or any interest therein and Assignor agrees to so notify Assignee that the original Note has been located and to deliver the original Note promptly to Assignee or as Assignee shall otherwise direct.

6.  Assignor makes this affidavit in order to induce Assignee to purchase the obligation evidenced by the Note. Exhibit B attached hereto is a true, correct and complete copy of the Note.

7.  The obligations of Assignor in this affidavit shall survive the assignment to Assignee of the Note and continue in full force and effect for the benefit of Assignee.

1

1/2198680.1

8.    The foregoing affidavit shall be governed by and construed in accordance with the laws of the State of Oklahoma.

9.    By acceptance hereof, the Assignee set forth herein acknowledges that (i) pursuant to the records of the undersigned, the indebtedness evidenced by the promissory note referenced above (the "Prior Note") has been renewed, superseded and/or amended and restated by, and such indebtedness is in whole or in part evidenced by, that certain Amended and Restated Promissory Note dated July 31, 2011 in the original principal amount of $2,500,000 (the "Current Note"), (ii) the Assignee shall not seek to enforce the Prior Note against the borrower(s) set forth therein (except as necessary in connection with enforcing the Current Note or as otherwise provided in (iii) hereof), and (iii) the endorsement of the Prior Note shall be utilized by the Assignee set forth herein solely for the purpose of establishing that the indebtedness of the Prior Note is now wholly or in part evidenced by the Current Note (but, if it is determined by a court of competent jurisdiction that any portion of the indebtedness of the Prior Note is not evidenced by the Current Note and that the Prior Note evidences indebtedness in whole or in part that is not evidenced by the Current Note, then the endorsement of the Prior Note shall be deemed to be without the limitations set forth in this paragraph).

*[Remainder of Page Intentionally Left Blank.]*

1/2198680.1

IN WITNESS, WHEREOF, this Lost Note Affidavit is made as of the _13_ day of December, 2011.

The Stillwater National Bank and Trust Company

By: _____

Brent Bates, Senior Vice President

STATE OF _Oklahoma_ )
COUNTY OF _Oklahoma_ )

I, the undersigned, a Notary Public in and for said county in said State, hereby certify that Brent Bates, whose name as Senior Vice President of The Stillwater National Bank and Trust Company, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of said instrument, he, as such officer and with full authority, executed the same voluntarily for and as the act of said corporation.

Given under my hand and official seal this _13_ day of December, 2011.

_____

Notary Public

AFFIX SEAL

My commission expires: _____

BEBE THOMPSON
Notary Public
State of Oklahoma
Commission # 08001009   expires 04/05/12

3

## Exhibit A

Amended and Restated Promissory Note dated March 31, 2010, executed by J. Randolph Light, Jr. in favor of The Stillwater National Bank and Trust Company in the original principal amount of $2,500,000.00

1/2198680.1

**Exhibit B**

\# 6721400

## AMENDED AND RESTATED PROMISSORY NOTE

$2,500,000.00                                                    Effective March 31, 2010

FOR VALUE RECEIVED, the undersigned, VICTOR LISSIAK, JR., an individual, LAWRENCE C. DON, an individual, and J. RANDOLPH LIGHT, JR., an individual (the "Borrowers"), jointly and severally, promise to pay to the order of STILLWATER NATIONAL BANK AND TRUST COMPANY, and its successors and assigns (the "Lender") at 6301 Waterford Boulevard, Suite 101, Oklahoma City, Oklahoma 73118, or at such other place as may be designated in writing by the Lender, the principal sum of TWO MILLION FIVE HUNDRED THOUSAND AND NO/100 DOLLARS ($2,500,000.00), together with interest thereon at the interest rates hereinafter stated, payable as set forth below.

Unless otherwise defined herein, all terms defined or referenced in that certain Omnibus Agreement dated effective September 30, 2009, as amended by a certain First Amendment to Omnibus Agreement dated effective June 30, 2009, and a certain Second Amendment to Omnibus Agreement of even effective date herewith among the Borrowers, The Stretford at the Cascades Limited Partnership, a Texas limited partnership ("Stretford"), and the Lender (collectively, the "Agreement") will have the same meaning herein as therein.

Interest on this Note will be paid at the interest rate equal to the Prime Rate plus one percent (1%) per annum, adjusted on each day on which a change in the Prime Rate occurs, provided that the interest rate shall never be less than six percent (6.0%) per annum (the "Interest Rate"). "Prime Rate" means the prime rate as published in the "Money Rates" section of the *Wall Street Journal*, which interest rate is not necessarily the lowest rate of interest charged by the Lender. Interest only will be paid quarterly on this Note commencing on December 31, 2009, and on the last day of every third month thereafter until July 31, 2010. The entire unpaid principal balance of the Note and all accrued interest thereon will be due and payable on July 31, 2010 (the "Maturity Date"). All interest hereon shall be calculated for the actual number of days elapsed at a per diem charge based on a year consisting of 360 days.

Payments hereunder may, at the option of the Lender, be recorded on this Note or on the books and records of the Lender and will be prima facie evidence of said payments and the unpaid balance of this Note. All payments will first be applied to the payment of accrued interest and the balance will be applied in reduction of the principal balance hereof provided that no payment will be applied to this Note until received by the Lender in collected funds.

The Borrowers will have the right to prepay this Note in whole or in part at any time and from time to time without premium or penalty, but with interest accrued to the date of prepayment.

If a payment is more than ten (10) days late hereunder, the Borrowers will be charged ten percent (10%) of such unpaid payment or $500.00, whichever is less, as a late charge. In the alternative, at the Lender's option, while any Default exists hereunder or in the performance or

observance of any of the terms, covenants or conditions of this Note or of any instrument now or hereafter securing the payment of the indebtedness evidenced hereby, the entire unpaid principal balance hereof shall bear interest at the per annum rate equal to fifteen percent (15%). During the existence of any such Default, the Lender may apply payments received on any amounts due hereunder, or under the terms of any instrument now or hereafter evidencing or securing such indebtedness, as the Lender may determine, and if the Lender so elects, notice of election being expressly waived, the principal hereof remaining unpaid, together with accrued interest, shall at once become due and payable. Any and all additional interest at the rate provided in this paragraph which has accrued shall be payable at the time of, and as a condition precedent to, the curing of any Default.

The Borrowers jointly and severally agree that if, and as often as, this Note is placed in the hands of an attorney for collection or to defend or enforce any of the Lender's right hereunder or under any instrument now or hereafter securing payment of this Note, the Borrowers will pay the Lender's reasonable attorneys' fees, all court costs and all other expenses incurred by the Lender in connection therewith.

This Note is executed, delivered and accepted, not in payment, but to renew and otherwise amend and restate that certain Promissory Note in the original principal amount of $2,500,000.00 executed and delivered by the Borrowers to the lender effective September 30, 2008, as amended by that certain Amended and Restated Promissory Note dated effective June 30, 2009 (collectively, the "Prior Note"). The undersigned agrees to remain liable for and to pay all interest accrued and owing under the Prior Note as of the date of this Note.

This Note is to be construed according to the internal laws of the State of Oklahoma. All actions with respect to this Note or any other instrument securing payment of this Note may be instituted in the state or federal courts of the State of Oklahoma in Oklahoma County, Oklahoma, or in Smith County, Texas, as the Lender may elect, and by execution and delivery of this Note, the Borrowers jointly and severally, irrevocably and unconditionally submit to the jurisdiction (both subject matter and personal) of each such court and irrevocably and unconditionally waive: (a) any objection any of the Borrowers might now or hereafter have to the venue in any such court; and (b) any claim that any action or proceeding brought in any such court has been brought in an inconvenient forum.

On the failure to pay any principal or interest when due hereunder, or on the occurrence of any Default under the Agreement, as defined or described therein, or upon failure to pay any other obligation owing by any of the Borrowers to the Lender, at the option of the Lender, the entire indebtedness evidenced by this Note will become immediately due, payable and collectible then or thereafter as the Lender might elect, regardless of the date of maturity hereof. Failure by the Lender to exercise such option will not constitute a waiver of the right to exercise the same in the event of any subsequent Default.

The makers, endorsers, sureties, guarantors and all other persons who may become liable for all or any part of this obligation severally waive presentment for payment, protest and notice of

2

nonpayment. Said parties consent to any extension of time (whether one or more) of payment hereof, release of all or any part of the security for the payment hereof or release of any party liable for the payment of this obligation. Any such extension or release may be made without notice to any such party and without discharging such party's liability hereunder.

IN WITNESS WHEREOF, the Borrowers have executed this instrument effective the date first above written.

_____

VICTOR LISSIAK, JR., Individually


_____

LAWRENCE C. DON, Individually


_____

J. RANDOLPH LIGHT, JR., Individually

(the "Borrowers")

3

# EXHIBIT 1-O

Note # 6722000

# LOST NOTE AFFIDAVIT

The undersigned, Brent Bates, Senior Vice President, on behalf of The Stillwater National Bank and Trust Company ("**Assignor**") being duly sworn, deposes and says:

1.    Assignor is the true, lawful, present and sole owner and holder of that certain Note or Notes listed on **Exhibit A** attached hereto and made a part hereof (the "**Note**", whether one or more).

2.    Assignor is unable to locate the original Note, after having made a diligent search of Assignor's records and files; its whereabouts cannot now be determined; and such original appears to be lost, mislaid or misfiled by Assignor.

3.    The Note (a) has not heretofore been sold, assigned or transferred, (b) is not on the date hereof pledged, hypothecated or encumbered by Assignor, (c) has not been marked paid or satisfied on its face and was never released, paid off or satisfied, (d) has not been returned to the borrower, and (e) has either been lost, mislaid or misfiled. The loss of custody of the Note was not the result of a transfer by Assignor or a lawful seizure.

4.    In the event that (i) a third party successfully claims to be the owner of the Note or any interest therein or (ii) a third party successfully claims as a defense that the Note is not enforceable because the original Note has not been produced for inspection by a court of competent jurisdiction, (iii) the borrower successfully claims the existence of terms which differ from the terms of the Note set forth on Exhibit B hereto, except as such differing terms are reflected in modifications or amendments to the Note which have been provided to Assignee prior to the date hereof, or (iv) Assignor prior to the date hereof issued a new instrument in lieu of the Note, then Assignor hereby agrees to and shall indemnify and hold SW Loan OO, L.P., a Delaware limited partnership ("**Assignee**"), harmless from and against all loss, liability, cost, damage and expense incurred by Assignee arising out of such claim, including, without limitation, attorneys' fees and disbursements.

5.    If the original Note is located by Assignor, Assignor agrees that it will not hereafter assign, pledge, hypothecate, encumber or otherwise dispose of the original Note or any interest therein and Assignor agrees to so notify Assignee that the original Note has been located and to deliver the original Note promptly to Assignee or as Assignee shall otherwise direct.

6.    Assignor makes this affidavit in order to induce Assignee to purchase the obligation evidenced by the Note. Exhibit B attached hereto is a true, correct and complete copy of the Note.

7.    The obligations of Assignor in this affidavit shall survive the assignment to Assignee of the Note and continue in full force and effect for the benefit of Assignee.

1

8.      The foregoing affidavit shall be governed by and construed in accordance with the laws of the State of Oklahoma.

9.      By acceptance hereof, the Assignee set forth herein acknowledges that (i) pursuant to the records of the undersigned, the indebtedness evidenced by the promissory note referenced above (the "Prior Note") has been renewed, superseded and/or amended and restated by, and such indebtedness is in whole or in part evidenced by, that certain Amended and Restated Promissory Note dated July 31, 2011 in the original principal amount of $500,000 (the "Current Note"), (ii) the Assignee shall not seek to enforce the Prior Note against the borrower(s) set forth therein (except as necessary in connection with enforcing the Current Note or as otherwise provided in (iii) hereof), and (iii) the endorsement of the Prior Note shall be utilized by the Assignee set forth herein solely for the purpose of establishing that the indebtedness of the Prior Note is now wholly or in part evidenced by the Current Note (but, if it is determined by a court of competent jurisdiction that any portion of the indebtedness of the Prior Note is not evidenced by the Current Note and that the Prior Note evidences indebtedness in whole or in part that is not evidenced by the Current Note, then the endorsement of the Prior Note shall be deemed to be without the limitations set forth in this paragraph).

*[Remainder of Page Intentionally Left Blank.]*

2

1/2198680.1

IN WITNESS, WHEREOF, this Lost Note Affidavit is made as of the _/3_ day of December, 2011.

The Stillwater National Bank and Trust Company

By: _____
Brent Bates, Senior Vice President

STATE OF Oklahoma )
COUNTY OF Oklahoma )

I, the undersigned, a Notary Public in and for said county in said State, hereby certify that Brent Bates, whose name as Senior Vice President of The Stillwater National Bank and Trust Company, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of said instrument, he, as such officer and with full authority, executed the same voluntarily for and as the act of said corporation.

Given under my hand and official seal this _13_ day of December, 2011.

_____
Notary Public

AFFIX SEAL

My commission expires: _____

DEBE THOMPSON
Notary Public
State of Oklahoma
Commission # 0809 009 Expires 04/05/12

1/2198680.1

## Exhibit A

Amended and Restated Promissory Note dated July 31, 2010, executed by J. Randolph Light, Jr. in favor of The Stillwater National Bank and Trust Company in the original principal amount of $500,000.00

4

**Exhibit B**

1/2198680.1



67122000   **AMENDED AND RESTATED PROMISSORY NOTE**

$500,000.00                                                    July 31, 2010

FOR VALUE RECEIVED, the undersigned, J. RANDOLPH LIGHT, JR., an individual (the "Borrower"), promises to pay to the order of STILLWATER NATIONAL BANK AND TRUST COMPANY, and its successors and assigns (the "Lender") at 6301 Waterford Boulevard, Suite 101, Oklahoma City, Oklahoma 73118, or at such other place as may be designated in writing by the Lender, the principal sum of FIVE HUNDRED THOUSAND AND NO/100 DOLLARS ($500,000.00), together with interest thereon at the interest rates hereinafter stated, payable as set forth below.

Unless otherwise defined herein, all terms defined or referenced in that certain Omnibus Agreement dated effective September 30, 2009, as amended by a certain First Amendment to Omnibus Agreement dated effective June 30, 2009, and a certain Second Amendment to Omnibus Agreement dated effective March 31, 2010 among the Borrower, The Stretford at the Cascades Limited Partnership, a Texas limited partnership ("Stretford"), Lawrence C. Don, Victor Lissiak, Jr., and the Lender (collectively, the "Agreement") will have the same meanings herein as therein.

Interest on this Note will be paid at the interest rate equal to the Prime Rate plus one percent (1%) per annum, adjusted on each day on which a change in the Prime Rate occurs (the "Interest Rate"). "Prime Rate" means the prime rate as published in the "Money Rates" section of the *Wall Street Journal*, which interest rate is not necessarily the lowest rate of interest charged by the Lender. Interest only will be paid quarterly on this Note commencing on September 30, 2010, and on the same day of every third month thereafter until July 31, 2011. The entire unpaid principal balance of the Note and all accrued interest thereon will be due and payable on July 31, 2011 (the "Maturity Date"). All interest hereon shall be calculated for the actual number of days elapsed at a per diem charge based on a year consisting of 360 days.

Advances and payments hereunder may, at the option of the Lender, be recorded on this Note or on the books and records of the Lender and will be prima facie evidence of said advances, payment and the unpaid balance of this Note. All payments will first be applied to the payment of accrued interest and the balance will be applied in reduction of the principal balance hereof provided that no payment will be applied to this Note until received by the Lender in collected funds.

The Borrower will have the right to prepay this Note in whole or in part at any time and from time to time without premium or penalty, but with interest accrued to the date of prepayment.

If a payment is more than ten (10) days late hereunder, the Borrower will be charged ten percent (10%) of such unpaid payment or $500.00, whichever is less, as a late charge. In the alternative, at the Lender's option, while any Default exists hereunder or in the performance or observance of any of the terms, covenants or conditions of this Note or of any instrument now or hereafter securing the payment of the indebtedness evidenced hereby, the entire unpaid principal balance hereof shall bear interest at the per annum rate equal to fifteen percent (15%). During the

existence of any such Default, the Lender may apply payments received on any amounts due hereunder, or under the terms of any instrument now or hereafter evidencing or securing such indebtedness, as the Lender may determine, and if the Lender so elects, notice of election being expressly waived, the principal hereof remaining unpaid, together with accrued interest, shall at once become due and payable. Any and all additional interest at the rate provided in this paragraph which has accrued shall be payable at the time of, and as a condition precedent to, the curing of any Default.

The Borrower agrees that if, and as often as, this Note is placed in the hands of an attorney for collection or to defend or enforce any of the Lender's right hereunder or under any instrument now or hereafter securing payment of this Note, the Borrower will pay the Lender's reasonable attorneys' fees, all court costs and all other expenses incurred by the Lender in connection therewith.

This Note is executed, delivered and accepted, not in payment, but to renew and otherwise amend and restate that certain Promissory Note in the original principal amount of $2,500,000.00 executed and delivered by the Borrower to the lender effective September 30, 2008, as amended by that certain Amended and Restated Promissory Note dated effective June 30, 2009, as amended by that certain Amended and Restated Promissory Note dated effective March 31, 2010 (collectively, the "Prior Note"). The undersigned agrees to remain liable for and to pay all interest accrued and owing under the Prior Note as of the date of this Note.

This Note is to be construed according to the internal laws of the State of Oklahoma. All actions with respect to this Note or any other instrument securing payment of this Note may be instituted in the state or federal courts sitting in or having jurisdiction over Oklahoma County, Oklahoma, or Smith County, Texas, as the Lender may elect, and by execution and delivery of this Note, the Borrower irrevocably and unconditionally submits to the jurisdiction (both subject matter and personal) of each such court and irrevocably and unconditionally waives: (a) any objection the Borrower might now or hereafter have to the venue in any such court; and (b) any claim that any action or proceeding brought in any such court has been brought in an inconvenient forum.

On the failure to pay any principal or interest when due hereunder, or on the occurrence of any Default under the Agreement, as defined or described therein, or upon failure to pay any other obligation owing by any of the Borrower to the Lender, at the option of the Lender, the entire indebtedness evidenced by this Note will become immediately due, payable and collectible then or thereafter as the Lender might elect, regardless of the date of maturity hereof. Failure by the Lender to exercise such option will not constitute a waiver of the right to exercise the same in the event of any subsequent Default.

The makers, endorsers, sureties, guarantors and all other persons who may become liable for all or any part of this obligation severally waive presentment for payment, protest and notice of nonpayment. Said parties consent to any extension of time (whether one or more) of payment hereof, release of all or any part of the security for the payment hereof or release of any party liable for the payment of this obligation. Any such extension or release may be made without notice to any such party and without discharging such party's liability hereunder.

2

IN WITNESS WHEREOF, the Borrower has executed this instrument effective the date first above written.

J. RANDOLPH LIGHT, JR., individually

3

EXHIBIT 1-P

Note # 6721400

## LOST NOTE AFFIDAVIT

The undersigned, Brent Bates, Senior Vice President, on behalf of The Stillwater National Bank and Trust Company ("**Assignor**") being duly sworn, deposes and says:

1.    Assignor is the true, lawful, present and sole owner and holder of that certain Note or Notes listed on **Exhibit A** attached hereto and made a part hereof (the "**Note**", whether one or more).

2.    Assignor is unable to locate the original Note, after having made a diligent search of Assignor's records and files; its whereabouts cannot now be determined; and such original appears to be lost, mislaid or misfiled by Assignor.

3.    The Note (a) has not heretofore been sold, assigned or transferred, (b) is not on the date hereof pledged, hypothecated or encumbered by Assignor, (c) has not been marked paid or satisfied on its face and was never released, paid off or satisfied, (d) has not been returned to the borrower, and (e) has either been lost, mislaid or misfiled. The loss of custody of the Note was not the result of a transfer by Assignor or a lawful seizure.

4.    In the event that (i) a third party successfully claims to be the owner of the Note or any interest therein or (ii) a third party successfully claims as a defense that the Note is not enforceable because the original Note has not been produced for inspection by a court of competent jurisdiction, (iii) the borrower successfully claims the existence of terms which differ from the terms of the Note set forth on Exhibit B hereto, except as such differing terms are reflected in modifications or amendments to the Note which have been provided to Assignee prior to the date hereof, or (iv) Assignor prior to the date hereof issued a new instrument in lieu of the Note, then Assignor hereby agrees to and shall indemnify and hold SW Loan OO, L.P., a Delaware limited partnership ("**Assignee**"), harmless from and against all loss, liability, cost, damage and expense incurred by Assignee arising out of such claim, including, without limitation, attorneys' fees and disbursements.

5.    If the original Note is located by Assignor, Assignor agrees that it will not hereafter assign, pledge, hypothecate, encumber or otherwise dispose of the original Note or any interest therein and Assignor agrees to so notify Assignee that the original Note has been located and to deliver the original Note promptly to Assignee or as Assignee shall otherwise direct.

6.    Assignor makes this affidavit in order to induce Assignee to purchase the obligation evidenced by the Note. Exhibit B attached hereto is a true, correct and complete copy of the Note.

7.    The obligations of Assignor in this affidavit shall survive the assignment to Assignee of the Note and continue in full force and effect for the benefit of Assignee.

1

8.    The foregoing affidavit shall be governed by and construed in accordance with the laws of the State of Oklahoma.

9.    By acceptance hereof, the Assignee set forth herein acknowledges that (i) pursuant to the records of the undersigned, the indebtedness evidenced by the promissory note referenced above (the "Prior Note") has been renewed, superseded and/or amended and restated by, and such indebtedness is in whole or in part evidenced by, that certain Amended and Restated Promissory Note dated July 31, 2011 in the original principal amount of $2,500,000 (the "Current Note"), (ii) the Assignee shall not seek to enforce the Prior Note against the borrower(s) set forth therein (except as necessary in connection with enforcing the Current Note or as otherwise provided in (iii) hereof), and (iii) the endorsement of the Prior Note shall be utilized by the Assignee set forth herein solely for the purpose of establishing that the indebtedness of the Prior Note is now wholly or in part evidenced by the Current Note (but, if it is determined by a court of competent jurisdiction that any portion of the indebtedness of the Prior Note is not evidenced by the Current Note and that the Prior Note evidences indebtedness in whole or in part that is not evidenced by the Current Note, then the endorsement of the Prior Note shall be deemed to be without the limitations set forth in this paragraph).

*[Remainder of Page Intentionally Left Blank.]*

1/2198680.1

IN WITNESS, WHEREOF, this Lost Note Affidavit is made as of the 13 day of December, 2011.

**The Stillwater National Bank and Trust Company**

By: _____

Brent Bates, Senior Vice President

STATE OF Oklahoma )

COUNTY OF Oklahoma )

I, the undersigned, a Notary Public in and for said county in said State, hereby certify that Brent Bates, whose name as Senior Vice President of The Stillwater National Bank and Trust Company, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of said instrument, he, as such officer and with full authority, executed the same voluntarily for and as the act of said corporation.

Given under my hand and official seal this 13 day of December, 2011.

_____

Notary Public

AFFIX SEAL

My commission expires: _____

3

## Exhibit A

Amended and Restated Promissory Note dated July 31, 2010, executed by J. Randolph Light, Jr. in favor of The Stillwater National Bank and Trust Company in the original principal amount of $2,500,000.00

4

## Exhibit B

1/2198680.1

RECEIVED

OCT 04 2010

Loan Services



6721400

## AMENDED AND RESTATED PROMISSORY NOTE

$2,500,000.00                                                        Effective July 31, 2010

FOR VALUE RECEIVED, the undersigned, VICTOR LISSIAK, JR., an individual, LAWRENCE C. DON, an individual, and J. RANDOLPH LIGHT, JR., an individual (the "Borrowers"), jointly and severally, promise to pay to the order of STILLWATER NATIONAL BANK AND TRUST COMPANY, and its successors and assigns (the "Lender") at 6301 Waterford Boulevard, Suite 101, Oklahoma City, Oklahoma 73118, or at such other place as may be designated in writing by the Lender, the principal sum of TWO MILLION FIVE HUNDRED THOUSAND AND NO/100 DOLLARS ($2,500,000.00), together with interest thereon at the interest rates hereinafter stated, payable as set forth below.

Unless otherwise defined herein, all terms defined or referenced in that certain Omnibus Agreement dated effective September 30, 2009, as amended by a certain First Amendment to Omnibus Agreement dated effective June 30, 2009, and a certain Second Amendment to Omnibus Agreement dated effective March 31, 2010 among the Borrowers, The Stretford at the Cascades Limited Partnership, a Texas limited partnership ("Stretford"), and the Lender (collectively, the "Agreement") will have the same meaning herein as therein.

Interest on this Note will be paid at the interest rate equal to the Prime Rate plus one percent (1%) per annum, adjusted on each day on which a change in the Prime Rate occurs (the "Interest Rate"). "Prime Rate" means the prime rate as published in the "Money Rates" section of the *Wall Street Journal*, which interest rate is not necessarily the lowest rate of interest charged by the Lender. Interest only will be paid quarterly on this Note commencing on September 30, 2010, and on the last day of every third month thereafter until July 31, 2011. The entire unpaid principal balance of the Note and all accrued interest thereon will be due and payable on July 31, 2011 (the "Maturity Date"). All interest hereon shall be calculated for the actual number of days elapsed at a per diem charge based on a year consisting of 360 days.

Payments hereunder may, at the option of the Lender, be recorded on this Note or on the books and records of the Lender and will be prima facie evidence of said payments and the unpaid balance of this Note. All payments will first be applied to the payment of accrued interest and the balance will be applied in reduction of the principal balance hereof provided that no payment will be applied to this Note until received by the Lender in collected funds.

The Borrowers will have the right to prepay this Note in whole or in part at any time and from time to time without premium or penalty, but with interest accrued to the date of prepayment.

If a payment is more than ten (10) days late hereunder, the Borrowers will be charged ten percent (10%) of such unpaid payment or $500.00, whichever is less, as a late charge. In the alternative, at the Lender's option, while any Default exists hereunder or in the performance or observance of any of the terms, covenants or conditions of this Note or of any instrument now or

hereafter securing the payment of the indebtedness evidenced hereby, the entire unpaid principal balance hereof shall bear interest at the per annum rate equal to fifteen percent (15%). During the existence of any such Default, the Lender may apply payments received on any amounts due hereunder, or under the terms of any instrument now or hereafter evidencing or securing such indebtedness, as the Lender may determine, and if the Lender so elects, notice of election being expressly waived, the principal hereof remaining unpaid, together with accrued interest, shall at once become due and payable. Any and all additional interest at the rate provided in this paragraph which has accrued shall be payable at the time of, and as a condition precedent to, the curing of any Default.

The Borrowers jointly and severally agree that if, and as often as, this Note is placed in the hands of an attorney for collection or to defend or enforce any of the Lender's right hereunder or under any instrument now or hereafter securing payment of this Note, the Borrowers will pay the Lender's reasonable attorneys' fees, all court costs and all other expenses incurred by the Lender in connection therewith.

This Note is executed, delivered and accepted, not in payment, but to renew and otherwise amend and restate that certain Promissory Note in the original principal amount of $2,500,000.00 executed and delivered by the Borrowers to the lender effective September 30, 2008, as amended by that certain Amended and Restated Promissory Note dated effective June 30, 2009, as amended by that certain Amended and Restated Promissory Note dated effective March 31, 2010 (collectively, the "Prior Note"). The undersigned agrees to remain liable for and to pay all interest accrued and owing under the Prior Note as of the date of this Note.

This Note is to be construed according to the internal laws of the State of Oklahoma. All actions with respect to this Note or any other instrument securing payment of this Note may be instituted in the state or federal courts of the State of Oklahoma in Oklahoma County, Oklahoma, or in Smith County, Texas, as the Lender may elect, and by execution and delivery of this Note, the Borrowers jointly and severally, irrevocably and unconditionally submit to the jurisdiction (both subject matter and personal) of each such court and irrevocably and unconditionally waive: (a) any objection any of the Borrowers might now or hereafter have to the venue in any such court; and (b) any claim that any action or proceeding brought in any such court has been brought in an inconvenient forum.

On the failure to pay any principal or interest when due hereunder, or on the occurrence of any Default under the Agreement, as defined or described therein, or upon failure to pay any other obligation owing by any of the Borrowers to the Lender, at the option of the Lender, the entire indebtedness evidenced by this Note will become immediately due, payable and collectible then or thereafter as the Lender might elect, regardless of the date of maturity hereof. Failure by the Lender to exercise such option will not constitute a waiver of the right to exercise the same in the event of any subsequent Default.

The makers, endorsers, sureties, guarantors and all other persons who may become liable for all or any part of this obligation severally waive presentment for payment, protest and notice of

2

nonpayment. Said parties consent to any extension of time (whether one or more) of payment hereof, release of all or any part of the security for the payment hereof or release of any party liable for the payment of this obligation. Any such extension or release may be made without notice to any such party and without discharging such party's liability hereunder.

IN WITNESS WHEREOF, the Borrowers have executed this instrument effective the date first above written.

_____
VICTOR LISSIAK, JR., Individually


_____
LAWRENCE C. DON, Individually


_____
J. RANDOLPH LIGHT, JR., Individually

(the "Borrowers")

3

EXHIBIT "5"


▷

**Effective: September 1, 2005**

Vernon's Texas Statutes and Codes Annotated Currentness

   Business and Commerce Code (Refs & Annos)
     Title 1. Uniform Commercial Code (Refs & Annos)
       Chapter 1. General Provisions (Refs & Annos)
         Subchapter B. General Definitions and Principles of Interpretation (Refs & Annos)
           **§ 1.201. General Definitions**

(a) Unless the context otherwise requires, words or phrases defined in this section, or in the additional definitions contained in other chapters of this title that apply to particular chapters or parts thereof, have the meanings stated.

(b) Subject to definitions contained in other chapters of this title that apply to particular chapters or parts thereof:

  (1) "Action," in the sense of a judicial proceeding, includes recoupment, counterclaim, set-off, suit in equity, and any other proceeding in which rights are determined.

  (2) "Aggrieved party" means a party entitled to pursue a remedy.

  (3) "Agreement," as distinguished from "contract," means the bargain of the parties in fact, as found in their language or inferred from other circumstances, including course of performance, course of dealing, or usage of trade as provided in Section 1.303.

  (4) "Bank" means a person engaged in the business of banking and includes a savings bank, savings and loan association, credit union, and trust company.

  (5) "Bearer" means a person in control of a negotiable electronic document of title or a person in possession of a negotiable instrument, a negotiable tangible document of title, or a certificated security that is payable to bearer or indorsed in blank.

  (6) "Bill of lading" means a document of title evidencing the receipt of goods for shipment issued by a person engaged in the business of directly or indirectly transporting or forwarding goods. The term does not include a warehouse receipt.

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

(7) "Branch" includes a separately incorporated foreign branch of a bank.

(8) "Burden of establishing" a fact means the burden of persuading the trier of fact that the existence of the fact is more probable than its nonexistence.

(9) "Buyer in ordinary course of business" means a person that buys goods in good faith, without knowledge that the sale violates the rights of another person in the goods, and in the ordinary course from a person, other than a pawnbroker, in the business of selling goods of that kind. A person buys goods in the ordinary course if the sale to the person comports with the usual or customary practices in the kind of business in which the seller is engaged or with the seller's own usual or customary practices. A person that sells oil, gas, or other minerals at the wellhead or minehead is a person in the business of selling goods of that kind. A buyer in ordinary course of business may buy for cash, by exchange of other property, or on secured or unsecured credit, and may acquire goods or documents of title under a preexisting contract for sale. Only a buyer that takes possession of the goods or has a right to recover the goods from the seller under Chapter 2 may be a buyer in ordinary course of business. "Buyer in ordinary course of business" does not include a person that acquires goods in a transfer in bulk or as security for or in total or partial satisfaction of a money debt.

(10) "Conspicuous," with reference to a term, means so written, displayed, or presented that a reasonable person against which it is to operate ought to have noticed it. Whether a term is "conspicuous" or not is a decision for the court. Conspicuous terms include the following:

   (A) a heading in capitals equal to or greater in size than the surrounding text, or in contrasting type, font, or color to the surrounding text of the same or lesser size; and

   (B) language in the body of a record or display in larger type than the surrounding text, or in contrasting type, font, or color to the surrounding text of the same size, or set off from surrounding text of the same size by symbols or other marks that call attention to the language.

(11) "Consumer" means an individual who enters into a transaction primarily for personal, family, or household purposes.

(12) "Contract," as distinguished from "agreement," means the total legal obligation that results from the parties' agreement as determined by this title as supplemented by any other applicable laws.

(13) "Creditor" includes a general creditor, a secured creditor, a lien creditor and any representative of creditors, including an assignee for the benefit of creditors, a trustee in bankruptcy, a receiver in equity and an executor or administrator of an insolvent debtor's or assignor's estate.

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

(14) "Defendant" includes a person in the position of defendant in a counterclaim, cross-claim, or third-party claim.

(15) "Delivery," with respect to an electronic document of title, means voluntary transfer of control, and with respect to an instrument, a tangible document of title, or chattel paper, means voluntary transfer of possession.

(16) "Document of title" means a record that in the regular course of business or financing is treated as adequately evidencing that the person in possession or control of the record is entitled to receive, control, hold, and dispose of the record and the goods the record covers, and purports to be issued by or addressed to a bailee and to cover goods in the bailee's possession which are either identified or are fungible portions of an identified mass. The term includes a bill of lading, transport document, dock warrant, dock receipt, warehouse receipt, and order for delivery of goods. An electronic document of title is evidenced by a record consisting of information stored in an electronic medium. A tangible document of title is evidenced by a record consisting of information that is inscribed on a tangible medium.

(17) "Fault" means a default, breach, or wrongful act or omission.

(18) "Fungible goods" means:

  (A) goods of which any unit, by nature or usage of trade, is the equivalent of any other like unit; or

  (B) goods that by agreement are treated as equivalent.

(19) "Genuine" means free of forgery or counterfeiting.

(20) "Good faith," except as otherwise provided in Chapter 5, means honesty in fact and the observance of reasonable commercial standards of fair dealing.

(21) "Holder" means:

  (A) the person in possession of a negotiable instrument that is payable either to bearer or to an identified person that is the person in possession;

  (B) the person in possession of a negotiable tangible document of title if the goods are deliverable either to bearer or to the order of the person in possession; or

  (C) a person in control of a negotiable electronic document of title.

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

(22) "Insolvency proceeding " includes an assignment for the benefit of creditors or other proceeding intended to liquidate or rehabilitate the estate of the person involved.

(23) "Insolvent" means:

  (A) having generally ceased to pay debts in the ordinary course of business other than as a result of a bona fide dispute;

  (B) being unable to pay debts as they become due; or

  (C) being insolvent within the meaning of the federal bankruptcy law.

(24) "Money" means a medium of exchange currently authorized or adopted by a domestic or foreign government. The term includes a monetary unit of account established by an intergovernmental organization or by agreement between two or more countries.

(25) "Organization" means a person other than an individual.

(26) "Party," as distinguished from "third party," means a person that has engaged in a transaction or made an agreement subject to this title.

(27) "Person" means an individual, corporation, business trust, estate, trust, partnership, limited liability company, association, joint venture, government, governmental subdivision, agency, or instrumentality, public corporation, or any other legal or commercial entity.

(28) "Present value" means the amount as of a date certain of one or more sums payable in the future, discounted to the date certain by use of either an interest rate specified by the parties if that rate is not manifestly unreasonable at the time the transaction is entered into or, if an interest rate is not so specified, a commercially reasonable rate that takes into account the facts and circumstances at the time the transaction is entered into.

(29) "Purchase" means taking by sale, lease, discount, negotiation, mortgage, pledge, lien, security interest, issue or reissue, gift, or any other voluntary transaction creating an interest in property.

(30) "Purchaser" means a person that takes by purchase.

(31) "Record" means information that is inscribed on a tangible medium or that is stored in an electronic or other medium and is retrievable in perceivable form.

(32) "Remedy" means any remedial right to which an aggrieved party is entitled with or without resort to a tribunal.

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

(33) "Representative" means a person empowered to act for another, including an agent, an officer of a corporation or association, and a trustee, executor, or administrator of an estate.

(34) "Right" includes remedy.

(35) "Security interest" means an interest in personal property or fixtures which secures payment or performance of an obligation. "Security interest" includes any interest of a consignor and a buyer of accounts, chattel paper, a payment intangible, or a promissory note in a transaction that is subject to Chapter 9. "Security interest" does not include the special property interest of a buyer of goods on identification of those goods to a contract for sale under Section 2.401, but a buyer may also acquire a "security interest" by complying with Chapter 9. Except as otherwise provided in Section 2.505, the right of a seller or lessor of goods under Chapter 2 or 2A to retain or acquire possession of the goods is not a "security interest," but a seller or lessor may also acquire a "security interest" by complying with Chapter 9. The retention or reservation of title by a seller of goods notwithstanding shipment or delivery to the buyer under Section 2.401 is limited in effect to a reservation of a "security interest." Whether a transaction in the form of a lease creates a security interest is determined pursuant to Section 1.203.

(36) "Send" in connection with a writing, record, or notice means:

(A) to deposit in the mail or deliver for transmission by any other usual means of communication with postage or cost of transmission provided for and properly addressed and, in the case of an instrument, to an address specified thereon or otherwise agreed, or if there be none to any address reasonable under the circumstances; or

(B) in any other way cause to be received any record or notice within the time at which it would have arrived if properly sent.

(37) "Signed" includes using any symbol executed or adopted with present intention to adopt or accept a writing.

(38) "State" means a State of the United States, the District of Columbia, Puerto Rico, the United States Virgin Islands, or any territory or insular possession subject to the jurisdiction of the United States.

(39) "Surety" includes a guarantor or other secondary obligor.

(40) "Term" means a portion of an agreement that relates to a particular matter.

(41) "Unauthorized signature" means a signature made without actual, implied, or apparent

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

authority. The term includes a forgery.

(42) "Warehouse receipt" means a document of title issued by a person engaged in the business of storing goods for hire.

(43) "Writing" includes printing, typewriting, or any other intentional reduction to tangible form. "Written" has a corresponding meaning.

CREDIT(S)

Amended by Acts 2003, 78th Leg., ch. 542, § 1, eff. Sept. 1, 2003; Acts 2005, 79th Leg., ch. 122, § 2, eff. Sept. 1, 2005.

Current through the end of the 2013 Third Called Session of the 83rd Legislature

(C) 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

END OF DOCUMENT

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.



EXHIBIT "6"



**Effective: September 1, 2003**

Vernon's Texas Statutes and Codes Annotated Currentness

  Business and Commerce Code (Refs & Annos)
    Title 1. Uniform Commercial Code (Refs & Annos)
      Chapter 1. General Provisions (Refs & Annos)
        Subchapter B. General Definitions and Principles of Interpretation (Refs & Annos)
          ➞➞  **§ 1.202. Notice; Knowledge**

(a) Subject to Subsection (f), a person has "notice" of a fact if the person:

  (1) has actual knowledge of it;

  (2) has received a notice or notification of it; or

  (3) from all the facts and circumstances known to the person at the time in question, has reason to know that it exists.

(b) "Knowledge" means actual knowledge. "Knows" has a corresponding meaning.

(c) "Discover," "learn," or words of similar import refer to knowledge rather than to reason to know.

(d) A person "notifies" or "gives" a notice or notification to another person by taking such steps as may be reasonably required to inform the other person in ordinary course, whether or not the other person actually comes to know of it.

(e) Subject to Subsection (f), a person "receives" a notice or notification when:

  (1) it comes to that person's attention; or

  (2) it is duly delivered in a form reasonable under the circumstances at the place of business through which the contract was made or at another location held out by that person as the place for receipt of such communications.

(f) Notice, knowledge, or a notice or notification received by an organization is effective for a particular transaction from the time it is brought to the attention of the individual conducting that

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

transaction and, in any event, from the time it would have been brought to the individual's attention if the organization had exercised due diligence. An organization exercises due diligence if it maintains reasonable routines for communicating significant information to the person conducting the transaction and there is reasonable compliance with the routines. Due diligence does not require an individual acting for the organization to communicate information unless the communication is part of the individual's regular duties or the individual has reason to know of the transaction and that the transaction would be materially affected by the information.

CREDIT(S)

Amended by Acts 2003, 78th Leg., ch. 542, § 1, eff. Sept. 1, 2003.

Current through the end of the 2013 Third Called Session of the 83rd Legislature

(C) 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

END OF DOCUMENT



E<small>XHIBIT</small> "7"



C

**Effective: September 1, 2003**

Vernon's Texas Statutes and Codes Annotated Currentness

  Business and Commerce Code (Refs & Annos)
    Title 1. Uniform Commercial Code (Refs & Annos)
      Chapter 1. General Provisions (Refs & Annos)
        Subchapter B. General Definitions and Principles of Interpretation (Refs & Annos)
        ➡➡   **§ 1.206. Presumptions**

Whenever this title creates a "presumption" with respect to a fact, or provides that a fact is "presumed," the trier of fact must find the existence of the fact unless and until evidence is introduced that supports a finding of its nonexistence.

CREDIT(S)

Amended by Acts 2003, 78th Leg., ch. 542, § 1, eff. Sept. 1, 2003.

Current through the end of the 2013 Third Called Session of the 83rd Legislature

(C) 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

END OF DOCUMENT

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.



EXHIBIT "8"


▷

**Effective:[See Text Amendments]**

Vernon's Texas Statutes and Codes Annotated Currentness

  Business and Commerce Code (Refs & Annos)
    Title 1. Uniform Commercial Code (Refs & Annos)
      Chapter 3. Negotiable Instruments (Refs & Annos)
        Subchapter C. Enforcement of Instruments
          **§ 3.302. Holder in Due Course**

(a) Subject to Subsection (c) and Section 3.106(d), "holder in due course" means the holder of an instrument if:

(1) the instrument when issued or negotiated to the holder does not bear such apparent evidence of forgery or alteration or is not otherwise so irregular or incomplete as to call into question its authenticity; and

(2) the holder took the instrument:

  (A) for value;

  (B) in good faith;

  (C) without notice that the instrument is overdue or has been dishonored or that there is an uncured default with respect to payment of another instrument issued as part of the same series;

  (D) without notice that the instrument contains an unauthorized signature or has been altered;

  (E) without notice of any claim to the instrument described in Section 3.306; and

  (F) without notice that any party has a defense or claim in recoupment described in Section 3.305(a).

(b) Notice of discharge of a party, other than discharge in an insolvency proceeding, is not notice of a defense under Subsection (a), but discharge is effective against a person who became a holder in due course with notice of the discharge. Public filing or recording of a document does not of itself constitute notice of a defense, claim in recoupment, or claim to the instrument.

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

(c) Except to the extent a transferor or predecessor in interest has rights as a holder in due course, a person does not acquire rights of a holder in due course of an instrument taken:

  (1) by legal process or by purchase in an execution, bankruptcy, or creditor's sale or similar proceeding;

  (2) by purchase as part of a bulk transaction not in ordinary course of business of the transferor; or

  (3) as the successor in interest to an estate or other organization.

(d) If, under Section 3.303(a)(1), the promise of performance that is the consideration for an instrument has been partially performed, the holder may assert rights as a holder in due course of the instrument only to the fraction of the amount payable under the instrument equal to the value of the partial performance divided by the value of the promised performance.

(e) If (i) the person entitled to enforce an instrument has only a security interest in the instrument, and (ii) the person obliged to pay the instrument has a defense, claim in recoupment, or claim to the instrument that may be asserted against the person who granted the security interest, the person entitled to enforce the instrument may assert rights as a holder in due course only to an amount payable under the instrument that, at the time of enforcement of the instrument, does not exceed the amount of the unpaid obligation secured.

(f) To be effective, notice must be received at a time and in a manner that gives a reasonable opportunity to act on it.

(g) This section is subject to any law limiting status as a holder in due course in particular classes of transactions.

CREDIT(S)

Amended by Acts 1995, 74th Leg., ch. 921, § 1, eff. Jan. 1, 1996.


Current through the end of the 2013 Third Called Session of the 83rd Legislature

(C) 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

END OF DOCUMENT


© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.



E<span>XHIBIT</span> "9"



▷

**Effective:[See Text Amendments]**

Vernon's Texas Statutes and Codes Annotated Currentness

  Business and Commerce Code (Refs & Annos)
    Title 1. Uniform Commercial Code (Refs & Annos)
      Chapter 3. Negotiable Instruments (Refs & Annos)
        Subchapter C. Enforcement of Instruments
          ➜➜    **§ 3.306. Claims to an Instrument**

A person taking an instrument, other than a person having rights of a holder in due course, is subject to a claim of a property or possessory right in the instrument or its proceeds, including a claim to rescind a negotiation and to recover the instrument or its proceeds. A person having rights of a holder in due course takes free of the claim to the instrument.

CREDIT(S)

Amended by Acts 1995, 74th Leg., ch. 921, § 1, eff. Jan. 1, 1996.

Current through the end of the 2013 Third Called Session of the 83rd Legislature

(C) 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

END OF DOCUMENT

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.



EXHIBIT "10"


▷

**Effective:[See Text Amendments]**

Vernon's Texas Statutes and Codes Annotated Currentness

  Business and Commerce Code (Refs & Annos)
    Title 1. Uniform Commercial Code (Refs & Annos)
      Chapter 3. Negotiable Instruments (Refs & Annos)
        Subchapter C. Enforcement of Instruments
          **§ 3.308. Proof of Signatures and Status as Holder in Due Course**

(a) In an action with respect to an instrument, the authenticity of, and authority to make, each signature on the instrument are admitted unless specifically denied in the pleadings. If the validity of a signature is denied in the pleadings, the burden of establishing validity is on the person claiming validity, but the signature is presumed to be authentic and authorized unless the action is to enforce the liability of the purported signer and the signer is dead or incompetent at the time of trial of the issue of validity of the signature. If an action to enforce the instrument is brought against a person as the undisclosed principal of a person who signed the instrument as a party to the instrument, the plaintiff has the burden of establishing that the defendant is liable on the instrument as a represented person under Section 3.402(a).

(b) If the validity of signatures is admitted or proved and there is compliance with Subsection (a), a plaintiff producing the instrument is entitled to payment if the plaintiff proves entitlement to enforce the instrument under Section 3.301, unless the defendant proves a defense or claim in recoupment. If a defense or claim in recoupment is proved, the right to payment of the plaintiff is subject to the defense or claim, except to the extent the plaintiff proves that the plaintiff has rights of a holder in due course that are not subject to the defense or claim.

CREDIT(S)

Added by Acts 1995, 74th Leg., ch. 921, § 1, eff. Jan. 1, 1996.

Current through the end of the 2013 Third Called Session of the 83rd Legislature

(C) 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

END OF DOCUMENT

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

EXHIBIT "11"



▷

**Effective:[See Text Amendments]**

Vernon's Texas Statutes and Codes Annotated Currentness

  Business and Commerce Code (Refs & Annos)
    Title 1. Uniform Commercial Code (Refs & Annos)
      Chapter 3. Negotiable Instruments (Refs & Annos)
        Subchapter D. Liability of Parties
          **§ 3.401. Signature**

(a) A person is not liable on an instrument unless the person:

  (1) signed the instrument; or

  (2) is represented by an agent or representative who signed the instrument and the signature is binding on the represented person under Section 3.402.

(b) A signature may be made (i) manually or by means of a device or machine, and (ii) by the use of any name, including a trade or assumed name, or by a word, mark, or symbol executed or adopted by a person with present intention to authenticate a writing.

CREDIT(S)

Amended by Acts 1995, 74th Leg., ch. 921, § 1, eff. Jan. 1, 1996.

Current through the end of the 2013 Third Called Session of the 83rd Legislature

(C) 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

END OF DOCUMENT

EXHIBIT "12"


▷

**Effective: September 1, 2007**

Vernon's Texas Statutes and Codes Annotated Currentness

  Business and Commerce Code (Refs & Annos)
    Title 1. Uniform Commercial Code (Refs & Annos)
      Chapter 3. Negotiable Instruments (Refs & Annos)
        Subchapter F. Discharge and Payment
          →→    **§ 3.605. Discharge of Secondary Obligors**

(a) If a person entitled to enforce an instrument releases the obligation of a principal obligor in whole or in part, and another party to the instrument is a secondary obligor with respect to the obligation of that principal obligor, the following rules apply:

  (1) Any obligations of the principal obligor to the secondary obligor with respect to any previous payment by the secondary obligor are not affected. Unless the terms of the release preserve the secondary obligor's recourse, the principal obligor is discharged, to the extent of the release, from any other duties to the secondary obligor under this chapter.

  (2) Unless the terms of the release provide that the person entitled to enforce the instrument retains the right to enforce the instrument against the secondary obligor, the secondary obligor is discharged to the same extent as the principal obligor from any unperformed portion of its obligation on the instrument. If the instrument is a check and the obligation of the secondary obligor is based on an indorsement of the check, the secondary obligor is discharged without regard to the language or circumstances of the discharge or other release.

  (3) If the secondary obligor is not discharged under Subdivision (2), the secondary obligor is discharged to the extent of the value of the consideration for the release, and to the extent that the release would otherwise cause the secondary obligor a loss.

(b) If a person entitled to enforce an instrument grants a principal obligor an extension of the time at which one or more payments are due on the instrument and another party to the instrument is a secondary obligor with respect to the obligation of that principal obligor, the following rules apply:

  (1) Any obligations of the principal obligor to the secondary obligor with respect to any previous payment by the secondary obligor are not affected. Unless the terms of the extension preserve the secondary obligor's recourse, the extension correspondingly extends the time for performance of

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

any other duties owed to the secondary obligor by the principal obligor under this chapter.

(2) The secondary obligor is discharged to the extent that the extension would otherwise cause the secondary obligor a loss.

(3) To the extent that the secondary obligor is not discharged under Subdivision (2), the secondary obligor may perform its obligations to a person entitled to enforce the instrument as if the time for payment had not been extended or, unless the terms of the extension provide that the person entitled to enforce the instrument retains the right to enforce the instrument against the secondary obligor as if the time for payment had not been extended, treat the time for performance of its obligations as having been extended correspondingly.

(c) If a person entitled to enforce an instrument agrees, with or without consideration, to a modification of the obligation of a principal obligor other than a complete or partial release or an extension of the due date and another party to the instrument is a secondary obligor with respect to the obligation of that principal obligor, the following rules apply:

(1) Any obligations of the principal obligor to the secondary obligor with respect to any previous payment by the secondary obligor are not affected. The modification correspondingly modifies any other duties owed to the secondary obligor by the principal obligor under this chapter.

(2) The secondary obligor is discharged from any unperformed portion of its obligation to the extent that the modification would otherwise cause the secondary obligor a loss.

(3) To the extent that the secondary obligor is not discharged under Subdivision (2), the secondary obligor may satisfy its obligation on the instrument as if the modification had not occurred, or treat its obligation on the instrument as having been modified correspondingly.

(d) If the obligation of a principal obligor is secured by an interest in collateral, another party to the instrument is a secondary obligor with respect to that obligation, and a person entitled to enforce the instrument impairs the value of the interest in collateral, the obligation of the secondary obligor is discharged to the extent of the impairment. The value of an interest in collateral is impaired to the extent the value of the interest is reduced to an amount less than the amount of the recourse of the secondary obligor, or the reduction in value of the interest causes an increase in the amount by which the amount of the recourse exceeds the value of the interest. For purposes of this subsection, impairing the value of an interest in collateral includes failure to obtain or maintain perfection or recordation of the interest in collateral, release of collateral without substitution of collateral of equal value or equivalent reduction of the underlying obligation, failure to perform a duty to preserve the value of collateral owed, under Chapter 9 or other law, to a debtor or other person secondarily liable, and failure to comply with applicable law in disposing of or otherwise enforcing the interest in collateral.

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

(e) A secondary obligor is not discharged under Subsection (a)(3), (b), (c), or (d) unless the person entitled to enforce the instrument knows that the person is a secondary obligor or has notice under Section 3.419(c) that the instrument was signed for accommodation.

(f) A secondary obligor is not discharged under this section if the secondary obligor consents to the event or conduct that is the basis of the discharge, or the instrument or a separate agreement of the party provides for waiver of discharge under this section specifically or by general language indicating that parties waive defenses based on suretyship or impairment of collateral. Unless the circumstances indicate otherwise, consent by the principal obligor to an act that would lead to a discharge under this section constitutes consent to that act by the secondary obligor if the secondary obligor controls the principal obligor or deals with the person entitled to enforce the instrument on behalf of the principal obligor.

(g) A release or extension preserves a secondary obligor's recourse if the terms of the release or extension provide that:

  (1) the person entitled to enforce the instrument retains the right to enforce the instrument against the secondary obligor; and

  (2) the recourse of the secondary obligor continues as if the release or extension had not been granted.

(h) Except as otherwise provided in Subsection (i), a secondary obligor asserting discharge under this section has the burden of persuasion both with respect to the occurrence of the acts alleged to harm the secondary obligor and loss or prejudice caused by those acts.

(i) If the secondary obligor demonstrates prejudice caused by an impairment of its recourse, and the circumstances of the case indicate that the amount of loss is not reasonably susceptible of calculation or requires proof of facts that are not ascertainable, it is presumed that the act impairing recourse caused a loss or impairment equal to the liability of the secondary obligor on the instrument. In that event, the burden of persuasion as to any lesser amount of the loss is on the person entitled to enforce the instrument.

CREDIT(S)

Amended by Acts 1995, 74th Leg., ch. 921, § 1, eff. Jan. 1, 1996; Acts 2005, 79th Leg., ch. 95, § 14, eff. Sept. 1, 2005; Acts 2007, 80th Leg., ch. 427, § 3, eff. Sept. 1, 2007.

Current through the end of the 2013 Third Called Session of the 83rd Legislature

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

(C) 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

END OF DOCUMENT